

Case No. _____

FILED

JUN 26 2017

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT OF THE
## NORTHERN DISTRICT OF OKLAHOMA

DeAndre Bethel,

      Petitioner-Appellant,

               **17 CV   367 JHP   FHM**

v.

JOE ALLBAUGH, DIRECTOR

      Respondent-Appellee.

### PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
### HABEAS CORPUS BY A PERSON IN STATE CUSTODY

### PETITIONER-APPLICANT'S OPENING BRIEF

DeAndre Bethel
#690424
Petitioner, Pro se
Lawton Correctional Facility
8607 SE Flowermound Road
Lawton, OK 73501

__ Mail   __ No Cert Svc   __ No Orig Sign
__ C/J   __ O/MJ   __ C/Ret'd   __ No Env
__ No Cpys  __ No Env/Cpys __ O/J   __ O/MJ

\* \* \*

## TABLE OF CONTENTS

| |
|---|
| INTRODUCTION |
| STATEMENT OF JURISDICTION |
| STATEMENT OF CASE |
| STANDARD OF REVIEW |
| EXHAUSTION OF REMEDIES |
| VIOLATION OF SIXTH AND FOURTEENTH AMENDMENTS |
| TABLE OF AUTHORITIES<br>  FEDERAL CASES<br>  STATE CASES<br>  CONSTITUTIONAL AUTHORITIES<br>  STATUTORY AUTHORITIES |
| **I.**     **PROPOSITION I. ACTUAL INNOCENCE ATTACHED TO THE SIXTH AMENDMENT CONSTITUTIONAL CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSELS** |
| **II.**     **THE STATE'S EVIDENCE WAS ILLEGALLY INSUFFICIENT TO PROVE ALL THE ELEMENTS OF ROBBERY WITH A FIREARM AND THEREFORE ALSO INSUFFICIENT TO SUPPORT MR. BETHEL'S CONVICTION FOR FIRST DEGREE FELONY MURDER BASED ON THAT UNDERLYING FELONY IN VIOLATION OF THE FOURTEENTH AMENDMENT** |
| **III.**     **ABUSE OF DISCRETION BY TRIAL COURT CAUSED MR. BETHEL'S TRIAL TO BE FUNDAMENTALLY UNFAIR BY ADMISSION OF IMPROPER LAW ENFORCEMENT OPINION TESTIMONY THAT INVADED THE PROVINCE OF THE JURY IN VIOLATION OF THE FOURTEENTH AMENDMENT** |
| **IV.**     **COUNTS III AND IV WERE IMPROPERLY JOINED AT MR. BETHEL'S TRIAL IN VIOLATION OF HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT** |
| CONCLUSION |
| SIGNATURE & VERIFICATION |

## INTRODUCTION

The petition of DeAndre Bethel respectfully presents:

Mr. Bethel is now and for the past 4 year has been unjustly and unlawfully imprisoned and restrained of his liberty under the authority of the State of Oklahoma, in the custody of Hector Rios, Warden of Lawton Correctional Facility, Comanche County, State of Oklahoma.

## STATEMENT OF JURISDICTION

Mr. Bethel was sentenced in the Tulsa County District Court, which presides in the Northern District of Oklahoma. The highest state court reviewed the arguments and denied relief. The district court has jurisdiction over Mr. Bethel's petition of writ of habeas corpus pursuant to 28 U.S.C. § 2254.

The sole claim and authority by which the said Hector Rios, Warden of Lawton Correctional Facility, so restrains and retains Mr. Bethel is a commitment of the Tulsa County District Court of the State of Oklahoma. Criminal docket # CF-2012-660.

Mr. Bethel is timely in compliance with 28 U.S.C. § 2244(d)(1).

## STATEMENT OF CASE

A jury convicted DeAndre Bethel, after a plea of not guilty in the District Court of Tulsa County, Case No. CR-2012-660, of First Degree Felony Murder 21 O.S. 2011, § 701.7 (Count 1); Robbery with a Firearm 21 O.S. 2011, § 801,(Count 2); Transporting Loaded Firearm in Motor Vehicle 1 O.S. 2011, § 1289.13 (Count 3); and Public Intoxication 37 O.S. 2011, § 8 (Count 4). The jury assessed punishment at life imprisonment with the possibility of parole on Count 1, five years imprisonment on Count 2, five months imprisonment and a $250.00 fine on Count 3, and thirty days imprisonment and a $100.00 fine on Count 4. The Honorable James M. Caputo presided at trial and sentenced Mr. Bethel accordingly and ordered the sentences on Counts 1 and 2 to be served consecutively with each other, but ordered Counts 3 and 4 to run concurrently with each other and concurrently with Counts 1 and 2.

Mr. Bethel perfected a direct appeal, F-2014-336, whereby the Oklahoma Court of Criminal Appeals dismissed the Robbery with a Firearm (Count 2) because of the separate conviction for Felony Murder and the predicate felony in this case violated the Double Jeopardy Clause.

October 6, 2016, Mr. Bethel filed an Application for Post-Conviction Relief to his conviction:

Proposition I. Actual Innocence attached to the Sixth Amendment constitutional error of Ineffective Assistance of Counsel.

## EXHAUSTION OF REMEDIES

Mr. Bethel directly appealed his conviction to the Oklahoma Court of Criminal appeals (F-2014-336) on grounds of:

Proposition I.
The state's evidence was illegally insufficient to prove all the elements of Robbery with a Firearm and therefore also insufficient to support Mr. Bethel's conviction for First Degree Felony Murder based on that underlying felony. Accordingly, Mr. Bethel's convictions and sentences on Counts 1 and 2 should be vacated as they are in violation of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article II, §§ 7 and 20 of the Oklahoma Constitution

Proposition II.
Mr. Bethel's conviction and sentence for Count 2, Robbery with a Firearm, must be vacated because the same charge served as the underlying felony for his conviction of Felony Murder, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article II, § 21 of the Oklahoma Constitution

Proposition III.
The trial court committed fundamental error by failing to instruct the jury on the lesser offenses of Second Degree Depraved Mind Murder, Second Degree Felony Murder, and Accessory After the Fact, in violation of Mr. Bethel's rights to due process and a fair trial under the Fifth and Fourteenth Amendments to the United States Constitution and Article II, §§ 7 and 20 of the Oklahoma Constitution

Proposition IV.
The trial court erred in failing to comply with the law governing contact with jurors during deliberations and by failing to advise deadlocked jurors not to surrender their honest convictions concerning the weight of the evidence in order to reach a verdict, in violation of Okla. Stat. Tit. 22, § 894 and Mr. Bethel's rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article II, §§ 7, 19 and 20 of the Oklahoma Constitution

Proposition V.
Mr. Bethel's trial was rendered fundamentally unfair by the admission of improper law enforcement opinion testimony that invaded the province of the jury in violation of his rights under the Fourteenth Amendment to the United States Constitution and Article II, §§ 7, and 20 of the Oklahoma Constitution

Proposition VI.
The admission of irrelevant and prejudicial evidence contained in state's Exhibit 28, a taped recording of a phone call between Mr. Bethel and his mother, resulted in a violation of his due process rights under the Fourteenth Amendment to the United States Constitution and Article II, §§ 7, and 20 of the Oklahoma Constitution

Proposition VII.
Improper victim impact testimony and evidence was admitted at trial, depriving Mr. Bethel of a fair trial in violation of his rights under the Fourteenth Amendment to the United States Constitution and Article II, §§ 7, 9 and 20 of the Oklahoma Constitution

Proposition VIII.
Counts 3 and 4 were improperly joined at Mr. Bethel's trial in violation of his right to a fair trial and due process of law under the Fourteenth Amendment to the United States Constitution and Article II, §§ 7, and 20 of the Oklahoma Constitution

Proposition IX.
The admission of evidence obtained as a result of an illegal search and seizure violated Mr. Bethel's rights under the Fourteenth Amendment to the United States Constitution and Article II, § 30 of the Oklahoma Constitution

Proposition X.
Mr. Bethel was deprived of the effective assistance of counsel in violation of the Sixth and Fourteenth Amendment to the United States Constitution and Article II, § §7 and 20 of the Oklahoma Constitution

Mr. Bethel filed an Application for Post-Conviction Relief to his conviction:

Proposition I. Newly Discovered Evidence Of Ineffective Assistance Of Appellate Counsel In Violation Of The Sixth Amendment To The United States Constitution And Article Ii, § 20 Of Oklahoma's Constitution For Failing To Discover Evidence And Failing To File Ineffective Assistance Of Trial Counsel For Failing To Interview, Investigate And Call Deandre Williams And Elza Riley To Testify At Trial

Proposition II. Appellate Counsel Was Ineffective For Failing To File Trial Counsel Was Ineffective For Not Subjecting The Prosecution's Case Of Robbery With A Firearm To Adversarial Testing And Conceded The Robbery Charge By Confessing Guilt Without Permission Of Appellant

## STANDARD OF REVIEW

Under the **Antiterrorism and Effective Death Penalty Act of 1996** (hereinafter "AEDPA"), in order to obtain federal habeas relief once a State court has adjudicated a

particular claim on the merits, Mr. Bethel must demonstrate that the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. **28 U.S.C. § 2254(d)(1-2).**

The Supreme Court has defined "contrary to" as a State court decision that is "substantially different from the relevant precedent of this Court." **Williams v. Taylor**, 529 U.S. 362, 405 (2000) (O'Connor, J., concurring and delivering the opinion of the Court). A decision can be "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Id*. at 405-06. The "unreasonable application" prong comes into play when "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id*. at 407. In ascertaining clearly established federal law, this Court must look to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decisions." **Yarborough v. Alvarado**, 541 U.S. 652, 660-61 (2004) (quoting *Williams*, 529 at 412.

The "AEDPA's purpose [is] to further the principles of comity, finality, and federalism. There is no doubt Congress intended AEDPA to advance these doctrines."

*Williams v. Taylor*, 529 U.S. 420, 436 (2000). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." **Schriro v. Landrigan**, 550 U.S. 465, 473 (2007). The deference embodied in Section 2254(d) "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." **Harrington v. Richter**, ___ U.S. ___, 131 S. Ct. 770, 786 (2011)(citation omitted).

## VIOLATION OF SIXTH AND FOURTEENTH AMENDMENT

The verdict of the jury, judgment of conviction, and sentence thereon, commitment, imprisonment, and restraint of Mr. Bethel are without due process of law, and in violation of the Sixth and Fourteenth Amendments of the Constitution of the United States by reason supported by the following Brief-in-Chief.

## TABLE OF AUTHORITIES
## FEDERAL CASES

*Adams v. Bertrand*, 453 F.3d 428, 437-38 (7th Cir. 2006)...............................9

*Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88, 11 S. Ct. 720, 35 L. Ed. 371 (1891)....39

*Allen v. United States*, 164 U.S. 492, 41 L. Ed. 528, 17 S. Ct. 154 (1896)..............21

*Bell v. Cone*, 535 U.S. 685, 697, 122 S. Ct. 1843, 152 L. Ed. 2D 914 (2002)............15

*Braun v. State*, 937 P.2d 505, n. 15 (Okl. Cr. 1997)............................................1

*Cole v. Trammell*, 755 F.3d 1142, 1161 (10th Cir. 2014)........................................8

*Coleman v. Brown*, 802 F.2d 1227, 1233-34 (10th Cir. 1986)...................................9

*Crawley v. Dinwiddie*, 584 F.3d 916, 922 n.8 (10th Cir. 2009)...............................13

*Darks v. Mullin*, 327 F.3d 1001, 1012 (10th Cir. 2003)……………………………………1

*Fisher v. Gibson*, 282 F.3d 1283, 1296 (10th Cir. 2002)…………………………………11

*Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999)…………………………………8

*Goodman v. Bertrand*, 467 F.3d 1022, 1030-31 (7th Cir. 2006)………………………9

*Grant v. Trammell*, 727 F.3d 1006, 1017 (10th Cir. 2013)………………………………8

*Gilbert v. Mullin*, 302 F.3d 1166, 1173 (10th Cir. 2002)………………………………23

*Hale v. Gibson*, 227 F.3d 1298, 1323 (10th Cir. 2000)…………………………………14

*Hall v. Bellmon*, 935 F.2d 1106, 1110………………………………………………43

*Hodgson v. Warren*, 622 F.3d 591, 600-01 (6th Cir. 2010)……………………………9

*House v. Bell*, 547 U.S. 518, 537, 126 S. Ct. 2064, 165 L. Ed. 2D 1 (2006)……………1

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008)…………………………………4

*Jackson v. State*, 2001 OK CR 37, ¶ 25, 41 P.3d 395, 400……………………………19

*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2D 560 (1979)………29

*Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965)……20

*Kimmelman v. Morrison*, 477 U.S. 365, 374, 91 L. Ed. 2d 305, 106 S. Ct. 2574 (1986)….8

*Lowenfield*, 484 U.S. at 237-38 & n.1……………………………………………21

*McQuiggin v. Perkins*, 133 S.Ct. 1924, 1933, 185 L.Ed.2d 1019 (2013)………………1

*Moore v. Newton-Embry,* 2011 U.S. Dist. Lexis 128383 W.D. ……………………………3

*Rompilla v. Beard*, 545 U.S. 374, 390, 125 S. Ct. 2456, 162 L. Ed. 2D 360 (2005)……9

*Rosemond v. United States,* 134 S.Ct. 1240, 188L.Ed.2d 248 (2014)……………………17

*Samara*, 643 F.2d at 705……………………………………………………40

*Schlup v. Delo*, 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1985)……………1

*Smith v. Mullin*, 379 F.3d 919, 942 (10th Cir. 2004)……………………………………9

*Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)………8

*Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2D 1003 (2010)...........4

*Trice v. Ward*, 196 F.3d 1151, 1161-62 (10th Cir. 1999).......................................14

*Turrentine v. Mullin*, 390 F.3d 1181, 1208 (10th Cir. 2004)...................................14

*United States v. Almaraz*, 306 F.3d 1031, 1037 (10th Cir. 2002)............................42

*United States v. Anderson*, 189 F.3d 1201, 1207 n.3 (10th Cir. 1999)....................35

*United States v. Andrews*, 953 F.2d 1312, 1327 (11th Cir. 1992)..............................9

*United States v. Arney*, 248 F.3d 984, 988 (10th Cir. 2001)...................................23

*United States v. Arutunoff*, 1 F.3d 1112, 1116 (10th Cir. 1993)..............................30

*United States v. Carter*, 130 F.3d 1432, 1439 (10th Cir. 1997)..............................30

*United States v. Charley*, 189 F.3d 1251, 1267(10th Cir. 1999)............................39

*United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2D 657 (1984).......13

*United States v. DeChristopher*, 695 F.3d 1082, 1091 (10th Cir. 2012)...................37

United States v. Delgado-Uribe, 363 F.3d 1077, 1084 (10th Cir. 2004)....................35

United States v. Dominguez Benitez, 542 U.S. 74, 83 n.9, 124 S. Ct. 2333, 159 L. Ed. 2D

157 (2009).................................................................................40

*United States v. Edgar*, 348 F.3d 867, 871 (10th Cir. 2003)..................................37

United States v. Espinosa, 771 F.2d 1382, 1392 (10th Cir. 1985)............................36

*United States v. Fox*, 902 F.2d 1508, 1513 (10th Cir. 1990)..................................30

*United States v. Frost*, 684 F.3d 963, 971 (10th Cir. 2012)...................................37

*United States v. Grissom*, 44 F.3d 1507, 1510 (10th Cir. 1995)............................30

*United States v. Gypsum Co.*, 438 U.S. 422, 459-62, 98 S.Ct. 2864, 57 L.Ed.2d 854(1978)

...................................................................................................20

*United States v. Hardwell*, 80 F.3d 1471, 1484 (10th Cir. 1996)............................38

*United States v. Hasan*, 526 F.3d 653, 665 (10th Cir. 2008)..................................40

*United States v. Hill*, 749 F.3d 1250 (10th Cir. 2014)............................................38

*United States v. McElhiney*, 275 F.3d 928, 935 (10th Cir. 2001).............................22

*United States v. Porter*, 881 F.2d 878, 888 (10th Cir. 1989)....................................23

*United States v. Rangel-Arreola*, 991 F.2d 1519, 1524 (10th Cir. 1993).....................38

*United States v. Shahane*, 517 F.2d 1173, 1178 (8th Cir. 1975)...............................34

*United States v. Shepard*, 396 F.3d 1116, 1123 (10th Cir. 2005)............................35

*United States v. Smith*, 133 F.3d 737, 742 (10th Cir. 1997)....................................30

*United States v. Smith*, 857 F.2d 682, 683-84 (10th Cir. 1988)...............................22

United States v. Starnes, 109 F.3d 648, 650 (10th Cir. 1997)................................36

*United States v. Trujillo-Terrazas*, 405 F.3d 814, 818 (10th Cir. 2005).....................40

*United States v. Toledo*, 985 F.2d 1462 (10th Cir. 1993).......................................38

*United States v. Toro-Pelaez*, 107 F.3d 819, 827 (10th Cir. 1997)............................40

*United States v. Williamson*, 53 F.3d 1500, 1511 (10th Cir. 1995)...........................14

*Wallace v. Lockhart*, 12 F.3d 823, 827 (8th Cir. 1994)..........................................1

*Wiggins v. Smith*, 539 U.S. 510, 536, 123 S. Ct. 2527, 156 L. Ed. 2D 471 (2003).............9

*Wingfeild v. Massie*, 122 F.3d 1329, 1332 (10th Cir. 1997).....................................17

Williams v. Taylor, 529 U.S. 362, 390, 120 S. Ct. 1495, 146 L. Ed. 2D 389 (2000).........4

*Williams v. Trammell*, 782 F.3d 1184 (10th Cir. 2015) ........................................17

*Williamson v. Ward*, 110 F.3d 1508, 1513 (10th Cir. 1997).....................................8

*Wright v. Van Patten*, 552 U.S. 120, 124, 128 S. Ct. 743, 169 L. Ed. 2D 583 (2008).....14

## STATE CASES

*Harmon v.* State, 248 P.3d 918. 937 (Okl. Cr. 2011)............................................39

*Postelle v.* State, 267 P.3d 114, 131 (Okl. Cr. 2011)............................................39

*Shouquette v. State*, 1923 OK CR 311......................................................32

**Smith v. State**, 462 P.2d 328 (Okl. Cr. 1969)..................................................28

## CONSTITUTIONAL AUTHORITY

**FIFTH AMENDMENT**................................................................1, 5
**SIXTH AMENDMENT**..............................................................5
**FOURTEENTH AMENDMENT**......................................................23

## STATUTORY AUTHORITIES

**25 Okla. Crim. 187**...........................................................32

**25 Okla. Crim. 169, 219 P. 727**.............................................32

**28 U.S.C. § 2254(d)(1)**......................................................4

Fed. R. Crim. P. 52(b)........................................................37

Fed. R. Evid. 702(a)..........................................................38

Fed. R. Evid. 702(b)-(d)......................................................38

**Okla. Stat. tit. 21, § 791**...................................................30

**Okla. Stat. tit. 21, § 801**...................................................31

**Rule 1.2, Rules of Professional Conduct, 5 O.S.1991, Ch.1, App. 3-A**..........19

**Rule 1.4(b), Rules of Professional Conduct, 5 O.S.1991, Ch.1, App. 3-A**......19

# BRIEF-IN-CHIEF

**PROPOSITION I.** **UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED LAW ESTABLISHED BY THE SUPREME COURT IN *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1933, 185 L.Ed.2d 1019 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1985)**

The state made an unreasonable application of clearly established federal law in determining the actual innocence of Mr. Bethel. The Oklahoma Court of Criminal Appeals decided this issue on state law grounds only. Since the state court did not address the constitutional claims, this Court must address the issue de novo. *Darks v. Mullin*, 327 F.3d 1001, 1012 (10th Cir. 2003) and cases cited therein.

Mr. Bethel claimed that the standard of review by the State of Oklahoma is contrary to clearly established federal law and the application of said law was an unreasonable application of clearly established federal law as established by the United States Supreme Court.

1.  Mr. Bethel cites *House v. Bell*, 547 U.S. 518, 537, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006) (citing *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)); see also *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1936, 185 L. Ed. 2d 1019 (2013) ("The [actual-innocence] gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" (quoting *Schlup*, 513 U.S. at 316)). "The miscarriage of justice exception... [a]pplies to a severely confined category; cases in which new evidence shows '*it is more likely than not* that no reasonable juror would have convicted [the Petitioner]." (emphasis added)

The case law the state court relied upon:

"To fall within this exception, a petitioner must show by '*clear and convincing evidence*' that, but for the alleged error, 'no reasonable juror would have found the petitioner guilty of the crime of which he was convicted.' *Wallace v. Lockhart*, 12 F.3d 823, 827 (8th Cir. 1994)." *Id. Braun v. State*, 937 P.2d 505, n. 15 (Okl. Cr. 1997). (emphasis added).

The state requirement of *"clear and convincing evidence"* is contrary to *McQuiggins* and *Schulp*, which cites the requirement as *"it is more likely than not."* The *more likely than not* standard is clearly established federal law by the Supreme Court. The cited *"clear and convincing evidence"* standard is taken from an 8th Circuit Appeals case that is not clearly established federal law established by the Supreme Court. The recharacterization of the standard requiring *clear and convincing evidence* is contrary to clearly established federal law.

Mr. Bethel made this claim on post-conviction that the state was using the incorrect standard. See **Appeal of Denial of Post-Conviction Brief** at 2. The state continued to use the incorrect standard when deciding the **Appeal of Denial of Post-Conviction Relief**. Mr. Bethel claims that the Oklahoma standard is contrary to clearly established federal law and the state unreasonably applied this standard in determining his actual innocence.

2.    The state held that:

"Petitioner ignores that the evidence presented at trial contradicts his version of events." *Id.* **Affirming of Denial of Post-Conviction** at 3.

Meaning that the evidence Mr. Bethel presented on appeal to establish his actual innocence contradicts the evidence presented at trial. This is precisely the reason that the court should not have confidence in the jury's verdict absent the evidence that was not presented at trial. Because had the jury heard the contradictory evidence it would not have convicted Mr. Bethel. This is the essence of the actual innocence claim, where the Petitioner makes a colorable showing that he is actually innocent of the crime for which he is convicted.

The ruling by the state that because Mr. Bethel's evidence contradicts the evidence at trial that it is without merit is contrary to and an unreasonable application of clearly established federal law. For Mr. Bethel to claim actual innocence his evidence must contradict the evidence at trial to demonstrate his innocence. What actual innocence claim will not be contrary to the evidence at trial. Otherwise, it would

not be a *"colorable showing."* The state's ruling that because Mr. Bethel's evidence contradicts the evidence at trial deems the evidence to be without merit is contrary to and an unreasonable application of clearly established federal law.

3.      The state court was required to weight the evidence that was not presented at trial against the circumstantial evidence that was presented at trial to determine if there still remained confidence in the jury's verdict. The court failed to do this and ruled that the new evidence contradicts the evidence presented at trial. This is also contrary to clearly established federal and an unreasonable application of *McQuiggin* and *Schlup*. The state failed to rule upon whether there was confidence in the jury's verdict verses the additional evidence. The state's ruling is contrary to clearly established federal law and an unreasonable application of determining actual innocence.

4.      The state dismissed Mr. Bethel's evidence of actual innocence by opining that it did not reach the level of newly discovered evidence. This is contrary to clearly established federal law.

See, also *Moore v. Newton-Embry,* 2011 U.S. Dist. Lexis 128383 W.D.

> "Starr did involve a claim of ineffective assistance. But the court addressed the claim with circular logic. The newly presented evidence was downplayed as proof of ineffective assistance and such a claim was considered untimely. By dismissing the evidence as mere proof of ineffectiveness, the court avoided consideration of whether it had constituted "new evidence." ... Schlup does not say that the evidence must have been unavailable when the trial had taken place. Indeed, such a requirement would create a "Catch 22" whenever a petitioner claims actual innocence and ineffective assistance for failure to use the proof of innocence. In this situation the lawyer might have been incompetent, but his incompetence would prevent the petitioner from showing his innocence. This nonsensical result is not required by any of the language in Schlup or any other precedential decision."

*McQuiggin v. Perkins,* 133 S. Ct. 1924, 1936, 185 L. Ed. 2d 1019 (2013) ("The [actual-innocence] gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" (quoting *Schlup,* 513 U.S. at 316)). "The miscarriage of justice exception... [a]pplies to a severely confined category; cases in which new evidence shows '*it is*

3

*more likely than not* that no reasonable juror would have convicted [the Petitioner]." (emphasis added). The standard of review is for *new evidence* to demonstrate the actual innocence.

The state denied the use of Mr. Bethel's evidence, stating that it did not meet the criteria of newly discovered evidence. This is contrary to clearly established federal law and an unreasonable application of *McQuiggin* and *Schlup*. The state failed to permit expansion of the record to establish actual innocence, asserting that the new evidence did not meet the criteria of newly discovered evidence. Again this is contrary to clearly established federal law and an unreasonable application. It was imperative that the state acknowledge and consider the affidavits presented. The state did not reference the affidavits on direct appeal or in the post-conviction. How can it be determined if Mr. Bethel is actually innocent if the state refuses to consider Mr. Bethel's innocence.

5.      The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Bethel seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. See *Williams v. Taylor*, 529 U.S. 362, 390, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."Clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case sub judice. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context. *House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). A legal principle is "clearly established" within the meaning of this provision only when it is embodied in a holding of the Supreme Court. *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010).

The rule of actual innocence in which new evidence shows '*it is more likely than not* that no reasonable juror would have convicted [the Petitioner]" was established during the period of the state court's ruling. The state court unreasonably applied clearly established federal law. For this reason

4

Petitioner requests that the writ be granted.

The state's review of actual innocence is contrary to clearly established federal law and applies an unreasonable standard in determining actual innocence.

## PROPOSITION II. ACTUAL INNOCENCE ATTACHED TO THE SIXTH AMENDMENT CONSTITUTIONAL CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSELS

Mr. Bethel's state post-conviction demonstrated the issues raised under Actual Innocence with the attachment of ineffective assistance of trial counsel were meritorious and thus his appellate counsel's failure to raise those claims fell below the level of objectively reasonable performance and his appeal was prejudiced, violating his *Sixth Amendment* right to effective assistance of counsel. Likewise, Mr. Bethel demonstrates herein that the OCCA's conclusion was contrary to or was an unreasonable application of *Strickland* and the state's procedure for determining ineffective assistance for appellate counsel was inadequate. See **Ex. 1.**

The state attempts to avoid Mr. Bethel's evidence of the affidavits by claiming that it does meet the standard of newly discovered evidence. However, newly discovered evidence is not the Supreme Court standard, The Court only requires new evidence. See above. Mr. Bethel claims that his trial and appellate counsel's were ineffective for failing to investigate, interview and present said evidence at trial and direct appeal. See below.

## BACKGROUND

February 4, 2012, Byron Ivory was driving his vehicle with Ernest Roberts, and Bradley Jarrett as passengers and pulled into the parking lot of Club Pink at approximately 1:40 a.m. As the men sat in their vehicle, another car pulled into the parking lot, parking behind the victims with their lights on. One individual approached the vehicle, while Mr. Roberts was exiting the passenger side of the vehicle, the person that approached the vehicle repeatedly asked Mr. Roberts, "Do you know me?" and Mr. Roberts

said, "No." The assailant pulled a gun and stuck it in Mr. Roberts' ribs. Mr. Roberts took out his wallet and cell phone, offered the wallet and cell phone to the assailant as an escape mechanism, then turned and ran. Roberts' jumped over a four-foot wall with a five-foot drop-off on the other side. Mr. Jarrett also exited the vehicle from the back seat and ran, but before running saw another individual standing beside the car parked behind them. Mr. Jarrett ran so hard that he ran out of his Nikes. Shooting started immediately and a short time later Mr. Ivory was discovered dead outside the vehicle from gun shot wounds.

Several Tulsa Firefighters in a fire station across from the club, witnessed two cars leaving the parking lot in a hurry. They described one of the vehicles as a white Chevy Cobalt. Several the next morning Mr. Bethel was discovered asleep at an intersection traffic light in a white Chevy Cobalt and a gun in the passenger seat. Mr. Bethel was arrested for Public Intoxication and Possession of a Firearm and bonded out of jail. Police later tested the weapon and discovered that it was one of the weapons used in the shooting of Mr. Ivory and re-arrested Mr. Bethel. During and after both arrests Mr. Bethel consistently proffered to police officers that he had just purchased the gun that morning from someone named Rio. Mr. Bethel was charged and convicted by a jury of Felony Murder with the underlying felony of First Degree Robbery with a Firearm. Mr. Bethel was sentenced to life in prison. From this sentence Mr. Bethel request habeas relief.

During his time of incarceration, Mr. Bethel did his own investigation as to what happened at Club Pink that night. He discovered that the incident was not a robbery, but retaliation of an ongoing feud between Byron Ivory and Laharry Myers, Jr. He also discovered that there were witnesses present that could testify that Mr. Bethel was not present.

## A. ACTUAL INNOCENCE ATTACHED TO THE SIXTH AMENDMENT CONSTITUTIONAL CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Mr. Bethel claims actual innocence to the charges in which he was convicted. He specifically demonstrates that but for the unprofessional errors made by court appointed trial defense counsel, the case

would not have gone to trial. Further, defense counsel's ineffectiveness during trial affected the outcome of the jury's verdict. The state's determination that trial counsel was effective was an unreasonable application of clearly established federal law. The state's failure to recognize the ineffectiveness of Mr. Bethel's counsel, means that the state has unreasonably disregarded the federal standard for determining ineffective assistance of counsel. Mr. Bethel's *appellate* counsel discovered witnesses that would have caused the state to dismiss charges against Mr. Bethel, however, appellate counsel also failed to submit the witnesses on direct appeal. Further, appellate counsel discovered that Mr. Bethel and his family communicated this information to trial counsel and trial counsel failed to utilize the available witnesses.

Petitioner presents reliable evidence supporting the allegation of constitutional error of ineffective assistance of trial counsel for failing to research, interview and call Wanda Janell Smith, DeAndre Williams and Elza Riley as witnesses to testify at trial. Mr. Riley would testify at trial that he was present at the scene and Mr. Bethel was not present and did not participate in an armed robbery and that there was no robbery, but that the crime was retaliation for a previous altercation between the two men. See **Ex. 2**. Ms. Smith would testify that Mr. Bethel left her presence in the early morning hours to go and purchase the firearm used in the crime that police found in the possession of Mr. Bethel the next morning. See **#Ex. 3**. Mr. Williams would testify that he was present when LaHarry Myers, Jr. sold the gun to Mr. Bethel. See **Ex. 4**.

## 1. DEFICIENT PERFORMANCE OF TRIAL COUNSEL BY FAILURE TO CALL CRITICAL DEFENSE WITNESSES TO TESTIFY

Defense counsel failed to present the testimony of three (3) critical witnesses. One an alibi witness, who would testify that Mr. Bethel was with her during the time of the crime. Another eyewitness, who would testify that he was present at the scene and witnessed the crime and that Mr. Bethel was not present. And another eyewitness, who would testify that he was present at the crime, was convicted as an accessory after the fact and witnessed Mr. Bethel buy the handgun used in the crime after the fact. These witnesses

would have corroborated Mr. Bethel's testimony during trial that he was not involved in the crime and bought the weapon in the early morning hours before he was arrested.

## STANDARD OF REVIEW

A claim of ineffective assistance of counsel presents a mixed question of fact and law, which the Court reviews de novo. *Williamson v. Ward*, 110 F.3d 1508, 1513 (10th Cir. 1997). "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Williamson*, 110 F.3d at 1513-14 (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 374, 91 L. Ed. 2d 305, 106 S. Ct. 2574 (1986)). As the Supreme Court established in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), to succeed on this claim, Defendant Bethel must show that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced thereby, which means that he must show a reasonable probability that the outcome of the trial would have been more favorable to him, absent the errors of trial counsel. See, e.g., *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999). In evaluating claims of this nature, we "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' *Strickland*, 466 U.S. at 689." *Id. Grant v. Trammell*, 727 F.3d 1006, 1017 (10th Cir. 2013) (internal quotation marks omitted) (citing *Strickland*, 466 U.S. at 694).

As for the claim involving uncalled witnesses the Court should resolve this claim under the prejudice-prong of Strickland. See *Rompilla v. Beard*, 545 U.S. 374, 390, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005). In doing the Court should assume that Petitioner satisfies *Strickland's* first prong (deficient performance) because his trial lawyers did not investigate or interview critical witnesses. *See Cole v. Trammell*, 755 F.3d 1142, 1161 (10th Cir. 2014). (This is one of the crucial areas of investigation emphasized in the ABA Guidelines") (internal quotation marks omitted). When a witness is "crucial" to the

defense, failure to secure that witness is often both unreasonable and prejudicial. This is especially true when the witness is an alibi witness or a disinterested bystander with exculpatory information, or when the government's case rests primarily on circumstantial evidence that would have been directly refuted by the witness's own testimony. See *Hodgson v. Warren*, 622 F.3d 591, 600-01 (6th Cir. 2010); *Adams v. Bertrand*, 453 F.3d 428, 437-38 (7th Cir. 2006); *Goodman v. Bertrand*, 467 F.3d 1022, 1030-31 (7th Cir. 2006); *United States v. Andrews*, 953 F.2d 1312, 1327 (11th Cir. 1992); *Coleman v. Brown*, 802 F.2d 1227, 1233-34 (10th Cir. 1986). To show prejudice, Petitioner must show that his lawyers' failures mattered-"namely, that there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Grant*, 727 F.3d at 1018 (citing Strickland, 466 U.S. at 694). When a petitioner alleges ineffective assistance of counsel stemming from a failure to investigate, "we evaluate the totality of the evidence both that adduced at trial, and the evidence adduced in habeas proceedings." *Smith v. Mullin*, 379 F.3d 919, 942 (10th Cir. 2004) (quoting *Wiggins v. Smith*, 539 U.S. 510, 536, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003).

a.  **DEFICIENT PERFORMANCE BY FAILURE TO INVESTIGATE, INTERVIEW AND CALL CRITICAL WITNESSES**

Trial counsel was ineffective for failing to call DeAndre Williams, Elza Riley and Janell Smith as witnesses. Due to discovered evidence of affidavits from Mr. Williams,  Mr. Riley and Ms. Smith (See **Ex. 1, 2, 3, & 4**) where they state that they would had testified at trial that Mr. Bethel was not present at the night club at the time of altercation.

These witnesses had specific facts that could only be obtained if they witnessed the events of the crime. The witness's testimonies were crucial to the determination of guilt or innocence of Mr. Bethel. However, neither of the eyewitnesses were interviewed, investigated, or called as a witness by trial counsel or their information used in the direct appeal.

The extent to which counsel will be obligated to investigate in order to perform at a

constitutionally adequate level of competency will vary case by case. In the instant matter, counsel did not call any witnesses on behalf of Petitioner. The only witness that testified for the defense was Mr. Bethel. Defense counsel had a duty to investigate all strategies of defense and to call all relevant witnesses to testify on behalf of the defense of Petitioner. Defense counsel did not interview, investigate, or call Mr. Williams, Mr. Riley nor Ms. Smith as witnesses. This establishes the first prong of *Strickland.* The testimony of Mr. Williams coupled with the testimony of Mr. Riley and Ms. Smith are surprisingly missing from the trial and appeal and is evidence of ineffective assistance of counsel.

It cannot be said that trial counsel made a strategic decision not to call these witnesses or that he was unaware of these witnesses, because Mr. Williams was a co-defendant of Mr. Bethel's and the cases were severed. It cannot be said that appellate counsel was unaware of Mr. Williams. Further, Mr. Bethel's mother contacted trial counsel prior to trial with the witnesses information. See **Ex. 1**.

Had Mr. Williams testified that he saw Mr. Myers commit the crime and did not see Mr. Bethel would have effected the jury's verdict. The same is true involving the testimony of Mr. Riley. What the jury should have heard was three (3) eyewitnesses (Williams, Riley and Smith) testify that Petitioner was not at the scene of the crime. Verses circumstantial evidence of Mr. Bethel ending up with one of the weapons used in a crime the following morning. The jury should of heard testimony from these eyewitnesses that there was not a robbery, but there was an ongoing feud between the two men and they both had guns and further testimony that Mr. Bethel was not present. The additional testimony from Mr. Williams, Mr. Riley and Ms. Smith was crucial to the determination of the jury's verdict.

The failure of trial counsel counsel to interview, investigate, and call to testify Mr. Williams, Mr. Riley and Ms. Smith is ineffective assistance of counsel. A criminal defense lawyer has a duty to conduct reasonable investigations into his client's case, which extends to the law as well as the facts. See *Strickland*, 466 U.S. at 690-91. As that duty pertains to investigation of the law, counsel is obligated to research relevant law to make an informed decision whether certain avenues will prove

fruitful." ***Rompilla v. Beard***, 545 U.S. 374, 387, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005). But "[a] decision not to investigate cannot be deemed reasonable if it is uninformed." ***Fisher v. Gibson***, 282 F.3d 1283, 1296 (10th Cir. 2002). Trial counsel was uninformed and failed to reasonably investigate and call crucial eyewitnesses to testify to Mr. Bethel's innocence. Both counsel's performance by precedent is below professional norms, which satisfies the first prong of ***Strickland***.

### b.    PREJUDICE

The jury's failure to hear contrary testimony to unreliable circumstantial evidence prejudiced Mr. Bethel. Had the jury heard from Mr. Williams (an accessory after the fact), Mr. Riley and Ms. Smith eyewitnesses to contradict the circumstantial evidence, it would have caused the jury to determine the truth and that Mr. Bethel was not present during the time of the crime, whereby determining his actual innocence. Mr. Williams had nothing to gain or lose by testifying that Petitioner was not present. Mr. Riley had nothing to gain by volunteering his testimony as a innocent bystander either and nor did Ms. Smith. On the other hand, the absence of these eyewitnesses caused Mr. Bethel prejudice. This is demonstrated by Williams', Riley's and Ms. Smith's affidavits, swearing that Mr. Bethel was not present at the crime.

It was imperative that the jury heard the testimony of Mr. Williams, Mr. Riley and Ms. Smith. The absence of the testimony prejudiced Petitioner, because the jury was not allowed to judge between the testimony of the eyewitnesses and the circumstantial evidence. Only Mr. Williams and Riley could truly say what happened and who was there that night and that trial counsel nor appellate counsel interviewed, investigated or called either of the witnesses. This is crucial testimony that was necessary for the determination of guilt or innocence. This determination is the essence and only factor of Mr. Bethel's conviction.

Whereby, the absence of the testimony of Mr. Williams testifying that he did not witness Mr. Bethel at the crime scene and later witnessed Mr. Bethel purchase the gun, the absence of the testimony

of Mr. Riley that he also failed to witness Mr. Bethel at the crime scene and the testimony of Ms. Smith that Mr. Bethel was present with her that night prejudiced Mr. Bethel and affected the outcome of the trial.

Both counsels did not complete and analyze the evidence likely to be introduced at trial or on appeal. If counsels had made a complete investigation, they would of interviewed Mr. Williams, Mr. Riley and Ms. Smith and known that they were willing to testify at trial that Petitioner was not present at the crime scene. The extent to which counsel will be obligated to investigate in order to perform at a constitutionally adequate level of competency will vary case by case: as the Supreme Court observed in *Strickland*, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. But "[a] decision not to investigate cannot be deemed reasonable if it is uninformed." *Fisher v. Gibson*, 282 F.3d 1283, 1296 (10th Cir. 2002). Counsels' failures to investigate, interview, or call Williams, Riley and Smith as witnesses can not be considered reasonable. There is no evidence that counsels had reasons not to investigate the aforementioned witnesses. Here, the only evidence against Mr. Bethel is that he possessed a weapon used the night of the crime. The calling of eyewitnesses Williams, Riley and Smith in contradiction to the circumstantial evidence was reasonable and would had changed the outcome of the verdict.

Therefore, counsels were unreasonable for not interviewing, investigating, and calling Williams, Riley and Smith to testify on behalf of the defense or using the information in the appeal. The testimony of the absent eyewitness would had affected the verdict, effected the appeal and demonstrated that Mr. Bethel is actually innocent. Therefore Mr. Bethel is prejudiced.

Petitioner has demonstrated that he is actually innocent of Robbery with a Firearm and Felony Murder because he was not present at the crime scene as sworn to by the eyewitnesses. The affidavit from Mr. Williams demonstrates that Mr. Bethel was not present at the scene of the crime. The affidavit

of Riley also demonstrates that Mr. Bethel was not present at the crime scene. The affidavit of Ms. Smith demonstrates that Mr. Bethel was not present at the crime scene. The affidavit of Jolene Perham demonstrates that trial counsel was notified of the witnesses. The jury was uninformed of Mr. Williams', Mr. Riley's and Ms. Smith's testimonies. All the testimonies were crucial to the defense of Mr. Bethel. Trial and appellate counsels' failure interview and call Mr. Williams, Mr. Riley or Ms. Smith as witnesses were unprofessional errors. Mr. Bethel has satisfied both prongs in regards to ineffective assistance of trial and appellate counsel. The missing eyewitnesses satisfies the first prong of *Strickland*. The second prong of *Strickland* is satisfied by had the eyewitnesses been called it would have changed the outcome of both trial and the appeal. Wherefore, Petitioner has satisfied both prongs of *Strickland* in regards to ineffective assistance of trial and appellate counsel.

Petitioner further claims his actual innocence, because this case is a case in which evidence shows it is more likely than not that no reasonable juror would have convicted Mr. Bethel after the aforementioned evidence was presented before a jury.

Wherefore, Petitioner request that the sentence be vacated and the case remanded back with instructions to dismiss.

Petitioner also requests that Mr. Williams, Mr. Riley and Ms. Smith be called as witnesses at an evidentiary hearing to determine the efficiency of trial and appellate counsels' effectiveness.

**B.    ACTUAL INNOCENCE ATTACHED TO APPELLATE COUNSEL WAS INEFFECTIVE IN VIOLATION OF THE SIXTH AMENDMENT FOR FAILING TO FILE TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO   SUBJECT THE PROSECUTION'S CASE OF ROBBERY WITH A FIREARM TO ADVERSARIAL TESTING AND CONCEDED THE ROBBERY CHARGE BY CONFESSING GUILT WITHOUT PERMISSION OF APPELLANT**

### STANDARD OF REVIEW

In *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), the United States Supreme Court "recognized a limited exception to *Strickland*," *Crawley v. Dinwiddie*, 584 F.3d

916, 922 n.8 (10th Cir. 2009), by holding that "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of *Sixth Amendment* rights that makes the adversary process itself presumptively unreliable." 466 U.S. at 659. In other words, "*Cronic* held that a *Sixth Amendment* violation may be found without inquiring into counsel's actual performance or requiring the defendant to show the effect it had on the trial, when circumstances [exist] that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified . . . ." *Wright v. Van Patten*, 552 U.S. 120, 124, 128 S. Ct. 743, 169 L. Ed. 2d 583 (2008) (per curiam) (internal quotation marks and citations omitted; brackets in original). Importantly, the Court has since "made clear that . . . 'the attorney's failure [to subject the prosecution's case to meaningful adversarial testing] must be complete.'" Id. at n.* (quoting *Bell v. Cone*, 535 U.S. 685, 697, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002)). Thus, although we have held that "the admission by counsel of his client's guilt to the jury . . . represents a paradigmatic example of the sort of breakdown in the adversarial process that triggers a presumption of prejudice" under *Cronic, United States v. Williamson*, 53 F.3d 1500, 1511 (10th Cir. 1995), it is clear that, in order to implicate the *Cronic* presumption, any such admission by counsel must be complete. E.g., *Hale v. Gibson*, 227 F.3d 1298, 1323 (10th Cir. 2000) (concluding that *Cronic* was not implicated where defense counsel "made a reasonable strategic decision to concede some guilt by [petitioner], given the overwhelming evidence presented at trial, and focused on the extent of [petitioner's] involvement and whether others could have been involved."); *Trice v. Ward*, 196 F.3d 1151, 1161-62 (10th Cir. 1999) (same). We "have found a complete absence of meaningful adversarial testing only where the evidence overwhelmingly established that [the] attorney abandoned the required duty of loyalty to his client, and where counsel acted with reckless disregard for his client's best interests and, at times, apparently with the intention to weaken his client's case." *Turrentine v. Mullin*, 390 F.3d 1181, 1208 (10th Cir. 2004) (internal quotation marks omitted; brackets in original).

## ARGUMENT AND AUTHORITIES

The states determination that appellate counsel was not ineffective for failing to submit that trial counsel was ineffective for failing to subject the prosecution's case of First Degree Robbery with a Firearm to adversarial testing and conceded the robbery charge by confessing guilt without permission of appellant was an unreasonable application of *Strickland*.

Defense counsel was ineffective for failing to subject the prosecution's case of First Degree Robbery with a Firearm the underlying felony to Felony Murder to adversarial testing. Mr. Bethel conceded guilt to Public Intoxication and Possession of a Firearm. However, trial counsel also conceded guilt to the First Degree Robbery With a Firearm charge during trial without consent from Mr. Bethel. See **Ex. 5**.

Defense counsel on several occasions during trial conceded that this was an intentional robbery instead of challenging with adversarial testing the prosecution's case of robbery with a firearm. Had counsel challenged that the suspects had no intentions of taking away property (which is a required element of robbery) then the Petitioner could not have been convicted of the underlying felony of First Degree Robbery With a Firearm. Contrary to defense counsel's professional duty, his performance fell below the objective standard of reasonableness required by the *Sixth Amendment*. Instead of challenging the First Degree Robbery With Firearm charge, counsel stated that it was an intentional robbery, even though the assailant's had no intention of taking away property.

Petitioner will prove that the oversight of appellate counsel prejudiced the appeal, by demonstration that trial counsel was ineffective for failing to uphold the constitutional level of representation as determined by the *Sixth Amendment* of the United States Constitution. See below:

a. **DEFICIENT PERFORMANCE**

The murder of Byron Ivory was retaliation for a previous altercation between the two (2) men. The driver of the white car (identified as Rio) knew Mr. Ivory and called Mr. Ivory to Club Pink so that LaHarry Myers could retaliate from the previous altercation. See Affidavits **1 & 2**, Affidavit from Elza

Rily and DeAndre Williams, who were present at Club Pink and witnessed the incident between the two (2) men. Mr. Williams later plead guilty in the Murder as an accessory after the fact in the instant matter. The altercation was not a robbery and was never intended to be a robbery. The underlying felony of First Degree Robbery With a Firearm did not occur, evidenced by that amount of guns involved in the crime scene and the lack of taking of property.

*First,* there was an altercation between (2) rival groups of black males inside the Club Pink that caused a ruckus (Tr. 335-39).

*Second,* there was only one suspect thought to have a gun in the parking lot witnessed by the victims (Tr. 367-68). There was video of *three* (3) suspects leaving in a white car (Tr. 797), but evidence of four (4) guns being fired (Tr. 715). The suspect shooter, identified as LaHarry Myers a/k/a L.J. by Mr. Williams and Mr. Riley as the person holding the gun on one of the victims was in an ongoing feud with the deceased victim. The hypothesis that Mr. Ivory possessed the fourth weapon and this was a shootout between two (2) rivals was never presented or considered by the jury. The jury was unaware that the two (2) men knew each other and that there was an ongoing feud between the two.

It is conceivable that one of the four guns belonged to the victim. There is also evidence that this was not a robbery, through the testimony of Mr. Roberts that his property (cell phone and wallet) were not demanded, but that when he felt a gun on his torso that he volunteered his property without provocation to institute an escape (Tr. 370, 384). Factually, the robbery victim volunteered his property as an escape mechanism -- part of the property [his wallet] was found under Mr. Ivory (Tr. 801). The robbery victim threw the property and turned and ran, jumping a four-foot wall with a five-foot drop, in a nightclub parking lot with people milling around. The cell phone could have been lost and/or recovered by anyone. Further evidence indicates that Mr. Ivory, the only victim that did not run was not robbed and the wallet of the fleeing victim was found under Mr. Ivory. The death of Mr. Ivory was not the result of a robbery, but retaliation of an ongoing feud between the two (2) men.

16

Defense counsel was ineffective for not subjecting the prosecution's case of First Degree Robbery with a Firearm to adversarial testing and conceding that there was a robbery. Defense counsel conceded the Public Intoxication, Possession of a Firearm and on several occasions conceded that this was an intentional First Degree Robbery with a Firearm without the consent of Mr. Bethel. Had counsel challenged that the suspects had no intention of taking away property, then the appellant could not be convicted of the underlying felony of Robbery With a Firearm. Contrary to his professional duty, defense counsel's performance fell below the objective standard of reasonableness required by the *Sixth Amendment*. Defense counsel gave the motive and demonstrated before the jury the vulnerableness of the victims. If there was a robbery, which is hard to determine and would be hard for a jury to determine if the charge was challenged, because the only alleged property taken is an absent cell phone, from a person that jumped a four-foot wall with a five-foot drop-off and ran out his shoes in a crowded nightclub parking lot. No one knows what actually happened to the cell phone.

*Third,* the volunteering of his property by the robbery victim does not indicate that the other suspects had prior knowledge that anything would be taken or knowledge that anything was taken. Prior knowledge and the intention to take away property are elements of First Degree Robbery. Due to the spontaneity of the victim throwing his property [which might of saved his life, because it distracted the man with the gun long enough for him to run] it could not be proven beyond a reasonable doubt that the other suspects had knowledge or consented to taking of property. See *Rosemond v. United States,* 134 S.Ct. 1240, 188L.Ed.2d 248 (2014), the Supreme Court held, in order to aid and abet, a defendant must have advance knowledge that a crime will be committed. One of the "basics" of aiding and abetting robbery [in addition to taking away is the requisite act of intent] when he intends to facilitate that offense's commission." See also *Williams v. Trammell,* 782 F.3d 1184 (10th Cir. 2015), citing *Rosemond,* "Some mutual state beyond "mere assent" or "acquiescence" is also required. *Id. Wingfeild v. Massie,* 122 F.3d 1329, 1332 (10th Cir. 1997). Whereby, if there was a robbery, which it could not be

17

proven that there was without defense counsel's concession. There may have been a spontaneous giving up of property, which did not elevate the other suspects of premeditation consensus that a robbery would be committed. The only person that offered any evidence of premeditated robbery or confessed culpability to the robbery was defense trial counsel.

Factually, defense counsel acknowledged the robbery, gave motive, opportunity and scenarios, whereby, robbery could be accomplished. Defense counsel admitted on two (2) occasions that the gun Bethel possessed was the murder weapon (Tr. 1020). Defense counsel further demonstrated motive, "And so from about 1:30 to 2:00 a.m. in the morning, you have what is called a target-rich environment, if you're a crook. You have lots of people, many of whom are inebriated, getting out of the bar at the same time, going to their cars, and they often have money and stuff and they have their keys. So predators tend to wander by at such times." (Tr. 1021). Further, defense counsel iterated, "Robbery crews are working the area at this time…" (Tr. 1022). Defense counsel concedes that there was a robbery and that it was intentional, which he was the only person to offer any evidence or confess culpability to robbery. Defense counsel's concession may not have been directly confessing the robbery, but overtly confessed that the victims were seasoned for a robbery and that robbery crews were working the area and that they were robbed. The evidence introduced through affidavits supports the evidence that this was not a robbery. This demonstrates deficient performance of trial counsel. Mr. Bethel had not intended to confess to guilt of robbery and counsel's confession was without Petitioner's consent. See **Ex. 5.**

### b.    PREJUDICE

The Oklahoma rules of Professional Conduct govern attorney conduct in this state. These rules do not lay the groundwork for claims of ineffectiveness, but they are pertinent to any discussion of attorney conduct when the rules touch on subjects raised in a claim of ineffectiveness. The rules set forth the necessity of open consultation between attorneys and clients; furthermore, some decisions are

left to the client after such consultation. "In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify." Rule 1.2, Rules of Professional Conduct, 5 O.S.1991, Ch.1, App. 3-A. "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Rule 1.4(b), Rules of Professional Conduct, 5 O.S.1991, Ch.1, App. 3-A. Likewise, the decision to concede guilt must be the client's ultimate decision.

The prosecution was required to prove robbery. Whereby, defense counsel's declaration of robbery proved the prosecution's case determining guilt to the robbery. Defense counsel gave motive and situations whereby the robbery could be accomplished. Had counsel not conceded that the victims were primed and ready to be robbed and that there was a robbery, whether directly or overtly, then the state was required to prove the robbery. The concession allowed the jury to agree with counsel that a robbery had occurred and convicted Mr. Bethel of First Degree Robbery with a Firearm. This prejudiced Mr. Bethel. See *Jackson v. State*, 2001 OK CR 37, ¶ 25, 41 P.3d 395, 400 ("[a] complete concession of guilt is a serious strategic decision that must only be made after consulting with the client and after receiving the client's consent or acquiescence.") Defense counsel's declaration of robbery prejudiced Mr. Bethel. Had counsel not made the declaration that a robbery was committed then there is a reasonable probability that the outcome of the trial would have been different.

Under *Strickland*, Mr. Bethel proves both (1) deficient performance, by demonstrating that his counsel's conduct was objectively unreasonable by conceding the robbery, and (2) resulting prejudice by Mr. Bethel being convicted of the robbery by counsel's concession. Wherefore there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-89, 104 S.Ct. at 2064-66.

Wherefore, Mr. Bethel was prejudice by counsel's concession to robbery. Therefore, ineffective

assistance of trial counsel has been established and the court should remand Mr. Bethel's case, because his *Sixth Amendment* right to effective assistance was violated.

In determining ineffective assistance of appellate counsel, the failure to call witnesses established by trial counsel satisfies the first prong of *Strickland*. Further, the inability to subject the state's case to adversarial testing and the concession of the robbery without Mr. Bethel's consent satisfies the first prong of *Strickland*. There is also the presumption of prejudice, for Mr. Bethel demonstrates his actual innocence had the absent eyewitnesses been called to testify. Both prongs of *Strickland* are met, affecting the outcome of the appeal. Whereby, appellate counsel was ineffective for failure to raise the issue. There is "reasonable probability that, but for counsel's unreasonable failure" to raise the claim, Mr. Bethel "would have prevailed on his appeal." Therefore, OCCA's rejection of the ineffective assistance of appellate counsel issue was an unreasonable application of *Strickland*. Mr. Bethel request that his sentence be voided and he be immediately released.

## C. ACTUAL INNOCENCE ATTACHED TO INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILURE TO OBJECT TO IMPROPER JURY INSTRUCTION

The OCCA's review of Mr. Bethel's claim of ineffective assistance of counsel by failing to object to the district court's response to jury note #2, deviated from the federal standard; was deficient; and was an unreasonable application of clearly established federal law.

In direct appeal **Proposition IV.**, Mr. Bethel claimed that he was denied a fair trial, when the district court judge failed to comply with the law governing contact with jurors during deliberations and failed to advise the deadlocked jurors not to surrender their honest convictions concerning the weight of the evidence in order to reach a verdict. *Id. Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965); *United States v. Gypsum Co.*, 438 U.S. 422, 459-62, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978).

The OCCA opined that there was not prejudice, because Mr. Bethel's counsel "sanctioned" the

20

unconstitutional contact.

In **Proposition X**. Mr. Bethel claimed that defense counsel allowing/sanctioning the impermissible contact was deficient in performance and caused Mr. Bethel prejudice. The OCCA opined in Proposition X. that Mr. Bethel could not show prejudice under ineffective assistance of counsel claim, because the issue was held nonprejudicial in Proposition IV. However, Proposition IV. and Proposition X. are two (2) completely different arguments and the OCCA's answer in Proposition IV. that there was no prejudice, because defense counsel sanctioned the contact cannot serve to satisfy Proposition X. Where Mr. Bethel argued counsel by allowing/sanctioning the unconstitutional contact was deficient in performance and caused Mr. Bethel prejudice. Therefore, the OCCA's failure to review the claim in Proposition X. deviated from the federal standard and was an unreasonable application of *Strickland*, because the court refused to review the underlying issue for merit for the ineffective assistance claim. See below:

### STANDARD OF REVIEW

The Oklahoma Court of Criminal Appeals decided this issue on state law grounds only, holding whether or not to give an Allen instruction remains a question best directed to the sound discretion of the trial judge and it was not error to refuse to define what the jury was to do if the jury was deadlocked. Since the state court did not address the constitutional claims, this Court must address the issue de novo. *Darks v. Mullin*, 327 F.3d 1001, 1012 (10th Cir. 2003) and cases cited therein.

In *Allen v. United States*, 164 U.S. 492, 41 L. Ed. 528, 17 S. Ct. 154 (1896), the Supreme Court upheld the giving of a supplemental instruction to a jury unable to reach a consensus. The instruction at issue in *Allen* directed those jurors holding minority views to reconsider their views in light of the contrary views held by the majority of jurors, but stated that the verdict must be that of each individual juror. See id. at 501; see also *Lowenfield*, 484 U.S. at 237-38 & n.1 (citing *Allen* and again approving use of supplemental jury charge when jury is deadlocked).

21

The Allen instruction's purpose is "to encourage unanimity (without infringement upon the conscientious views of each individual juror) by urging each juror to review and reconsider the evidence in the light of the views expressed by other jurors, in a manner evincing a conscientious search for truth rather than a dogged determination to have one's way in the outcome of the deliberative process." *Gilbert v. Mullin*, 302 F.3d 1166, 1173 (10th Cir. 2002) (quoting *United States v. Smith*, 857 F.2d 682, 683-84 (10th Cir. 1988)), petition for cert filed, (U.S. Feb. 27, 2003) (No. 02-9334); see also *United States v. McElhiney*, 275 F.3d 928, 935 (10th Cir. 2001) ("An Allen instruction is, in effect, a charge given by a trial court that encourages the jury to reach a unanimous verdict so as to avoid a mistrial.").

The supplemental instruction here is somewhat different than a traditional Allen charge, and the court must decide whether it improperly coerced a jury verdict. *Lowenfield* and other federal cases addressing an Allen charge provide an instructive framework for determining whether the instruction was impermissibly coercive. Cf. *McElhiney*, 275 F.3d at 941 ("Even if the district court's comments did not constitute an instruction (Allen or otherwise), its remarks still had the potential to coerce the jury, and, as coercion is the primary concern with the giving of an Allen instruction, the overall Allen analysis would still be applicable."). In conducting this analysis, we are mindful that "whether a jury has been improperly coerced by a judge is a mixed question of law and fact." *Gilbert*, 302 F.3d at 1171.

In deciding whether a supplemental instruction is coercive, "the Supreme Court has held that a reviewing court must look at the supplemental charge given by the judge 'in its context and under all the circumstances.'" Id. at 1173 (quoting *Lowenfield*, 484 U.S. at 237 (quotation omitted)); see also *McElhiney*, 275 F.3d at 941 (examining trial court's comments under all circumstances to decide if jury's verdict was product of impermissible coercion). Factors reviewing courts consider in making a coercion determination include: "'(1) the language of the instruction, (2) whether the instruction is presented with other instructions, (3) the timing of the instruction, and (4) the length of the jury's

22

subsequent deliberations.'" *Gilbert*, 302 F.3d at 1173 (quoting *United States v. Arney*, 248 F.3d 984, 988 (10th Cir. 2001)); see also *United States v. Porter*, 881 F.2d 878, 888 (10th Cir. 1989) (considering, in addition to first three factors listed above, whether trial court gave instruction before jury reached deadlock).

## <u>ARGUMENT AND AUTHORITIES</u>

The Oklahoma Court of Criminal Appeals decided this issue on state law grounds only, holding whether or not to give an Allen instruction remains a question best directed to the sound discretion of the trial judge and it was not error to refuse to define what the jury was to do if the jury was deadlocked. Since the state court did not address the constitutional claims, this Court must address the issue de novo. *Darks v. Mullin*, 327 F.3d 1001, 1012 (10th Cir. 2003) and cases cited therein.

The trial court erred in failing to comply with the law governing contact with jurors during deliberations and failing to advise deadlocked jurors not to surrender their honest convictions concerning the weight of the evidence in order to reach a verdict, in violation of Mr. Bethel's rights under the *Sixth* and *Fourteenth Amendments* of the United States Constitution. The trial court handled questions during jury deliberations in a manner contrary to the clear command of statute and directives by this Court. The law dictates that prejudice be presumed and facts of this case do not overcome that presumption. Accordingly Mr. Bethel's conviction must be overturned.

After the jury retired to deliberate Mr. Bethel's fate at 6:04 p.m., they sent out four separate notes to the trial court (Tr. 1056). At 7:20 p.m. the jury sent out its first note requesting a DVD player and a television (Tr. 1062). At 11:06 p.m. the jury sent a second note, which contained two questions: 1.) "What should we do if we can not come to a unanimous (sic) decision?" and 2.) "If we have a unanimous (sic) decision on some counts—how do we proceed?" (Tr. 1059). The trial court responded in writing at 11:30 p.m., telling the jury, "Please continue to deliberate on those counts which you have not yet reached a unanimous decision." (Tr. 1060). At 12:14 a.m., the trial court received another note

form the jury that said, "Can the court contact family members of the jury to let them know we are ok and still on duty?" (Tr. 1060). The trial court again responded in writing, informing the jury that "You were all advised to alert your families that you would be in deliberations until complete." (Tr. 1060). The trial court later told counsel that he did not notify the parties about the is note because he did not believe it was anything "germane" to the facts of the case (Tr. 1060-61). The jury sent a final not at 12:55 a.m., indicating it had "reached a verdict" (Tr. 1061).

### a.    DEFICIENT PERFORMANCE

In note #2 from the jury, the jury asked what the jury should do if it could not reach a unanimous decision on some counts and how to proceed on the counts on which there was no unanimity? The district court instructed the jury to continue to deliberate until they reached a unanimous decision. The jury then sent out note #3 asking to contact there families and tell their families that the jury was still deliberation at the late hour, it was past midnight. The court responded "You were all advised to alert your families that you would be in deliberations until complete." Trial defense counsel agreed with the court's response to the jury's deadlock instruction. This was deficient performance by trial counsel. Further, following the note #2 instruction, at approximately 12: 20 a.m. the court told the jurors that they could not contact their families and that the jury would not be leaving until they were through with deliberations, which according to the answer to note #2, was when the jury reached a unanimous decision. The jury was held hostage until they reached a unanimous decision and thirty-five (35) minutes later at 12:55 a.m. returned a unanimous guilty verdict.

The proper response to a deadlocked jury was for the court to admonish the complete and correct answer to the jury's question about unanimity, which was two-fold: if jurors could not reach a unanimous verdict, a mistrial would be declared and the deadlocked jurors are not to give up their honest convictions concerning the weight of the evidence in order to reach a verdict. The court's response was in violation of clearly established federal law. The Supreme court has insisted that special

care be taken to prevent coercion of a verdict. As in this case or any case a judge cannot tell the jury it must reach a unanimous decision or emphasize the importance of reaching a unanimous decision without also emphasizing that no juror should surrender his honest conviction or concur in a verdict he believes is untrue solely because of the opinions of other jurors or because of the importance of arriving at a decision. *Id. Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965); *United States v. Gypsum Co.*, 438 U.S. 422, 459-62, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). In *Jenkins*, after the jury deliberated for two hours, it sent out a note to the trial judge advising that it had been unable to agree upon a verdict. The judge brought the jury into the courtroom and told them, "You have got to reach a decision in this case." Id. 380 U.S. at 466. The Supreme Court held that the judge's statement had a coercive effect on the jury and thus reversed the conviction for a new trial. *Id.* The judge's response was coercive, especially to jurors who were in the minority, because it indicated there was no way for the trial to conclude other than by unanimous verdicts. Simply ordering the jury to continue deliberating indicated the only way for the trial to conclude was with a unanimous verdict. It was ineffective assistance of trial counsel to allow such an instruction.

Defense counsel's lack of knowledge of the law of the proper instruction for the jury was deficient performance. The proper instruction was not given and it is obvious by the jury's remaining notes and their actions following the notes that some jurors relinquished their honest convictions because they wanted to go home to their families at the late hour.

The law is specific for a reason, because such communication between the jury and the judge after the jury has retired for deliberations arises to a presumption of prejudice. Defense counsel was deficient, because counsel did not object to the court's improper instruction which is contrary to the law. Whereby, counsel agreed with the coercive instruction. Counsel's inaction and failure to know the law establishes deficient performance.

     **b.     PREJUDICE**

Mr. Bethel was on trial with the whole of the evidence against him being circumstantial. The jury was deadlocked on certain counts and it was approaching midnight. The jury informed the judge that it was deadlocked on certain counts and what should it do if they could not come to unanimity on certain counts. The judge instructed the jurors to keep deliberating until they reached a unanimous decision. The jury then requested to contact their families, because of the late hour. The judge responded that they could not contact their families until they were through deliberating. This made the jury believe that they could not leave or contact their families until they reached a unanimous decision. Causing some of the jurors to give up their honest convictions concerning the weight of the evidence in order to reach a verdict, so they could leave at the late hour and go home to their families.

Had the judge responded correctly that the jurors should not give up their honest convictions concerning the weight of the evidence in order to reach a unanimous decision and that the court would declare a mistrial on the undecided counts, there is a strong probability that the jury would have remained deadlocked causing a different outcome in the proceedings. As to the question about whether the court would contact their families, the court failed to give the jurors any indication of how late into the night they would be required to deliberate and failed to alleviate their concerns about contacting family members (Tr. 1061). When the trial judge refused to request to contact their family members it was clear to the jurors that reaching a unanimous decision was the only way they could go home. It is hard to believe that this verdict, rendered approximately 35 minutes after jurors were told they could not contact their family members, was the result of legitimate deliberations rather than pressure on the minority jurors to end the deadlock. Due to defense counsel's deficient performance, the judge was allowed to coerce the holdout jurors into giving up there honest convictions concerning the weight of the evidence in order to reach a verdict. The habeas court should not have confidence in such a verdict that is the result jury instructions that were coercive and contrary to clearly established federal law by the Supreme Court that was sanctioned by a deficient defense counsel's lack of knowledge of the law

and deficient performance. But for the coercion by the judge, there is a strong probability that the jury would have remained deadlocked on the undecided counts. Resulting in a different outcome in the proceedings. This establishes prejudice.

Mr. Bethel has met both prongs of *Strickland*: 1.) it was deficient performance for defense counsel to allow the judge to coerce the jury with improper instructions that were contrary to the law and sanctioning the instructions, which made the jury believe that they were held hostage until they reached a unanimous decision; and 2.) Mr. Bethel was prejudiced by the jurors giving up their honest convictions concerning the weight of the evidence in order to reach a verdict thirty-five (35) minutes after the judges final response to the jury's note requesting to contact their family. Voting for convictions in a wholly circumstantial case. Had counsel requested the proper instruction be given there is a strong probability that the jury could have remained deadlocked. Further, the habeas court cannot defer to the state's decision on Proposition X., because the state failed to review the claim for merit, again unreasonably applying clearly established federal law. The OCCA responded in Mr. Bethel's direct appeal that the judge's "response was sanctioned by both parties." However, the OCCA failed to determine under *Strickland* whether counsel's agreement to allow the court to give the wrong instruction was deficient performance and cause prejudice. The court initially ruled, because counsel sanctioned the response that there was no prejudice. However, the state did not review whether counsel's acquiescence to allow the judge to give the wrong instruction was deficient performance causing prejudice. After de novo review by the habeas court on the issue, the court should determine Mr. Bethel was prejudiced by counsel's deficient performance by allowing the unconstitutional instruction by the judge. Mr. Bethel presented evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error. *Id. Schlup*, 513 U.S. at 316. The new evidence shows '*it is more likely than not* that no reasonable juror would have convicted Mr. Bethel. *Id. McQuiggin*, 133 S. Ct. at 1936.

**D. ACTUAL INNOCENCE ATTACHED TO INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILURE TO ESTABLISH THE PROPER CONTEXT OF CULPABLE TELEPHONE CALL**

**a. STATE'S RELIANCE ON QUESTIONABLE PHONE CALL**

The state court contributed its denial of Mr. Bethel's innocence claim on "Petitioner also admitted on a phone call to his father during that [sic] he was present at the crime scene, despite his many protestations at trial and within his post-conviction application that he was not. Trial Tr. 854; States Ex. 76."

The proper context for the alleged admission of guilt has yet to be established by a court and due to ineffective assistance of trial counsel it was not established at trial. First, Detective White testified at Tr. 819:

Q: And let me ask you about whenever you're doing interviews. Do you have tactics, whenever you're interviewing a suspect in a homicide?
A.: Yes.

(Tr. 821)
Q.: Can you give an example of that?
A.: Like, for instance, I've got video, when in fact we may not actually have them on video.

Det. White used this tactic on Mr.. Bethel, telling Mr. Bethel that he had video of him at the crime scene being kicked out of the club. The information Mr. Bethel gave his father was false and said video was not produced in discovery or at trial. This is the information that Mr. Bethel conveyed to his irate father. Mr. Bethel was young male responding to his irate father.

See Tr. 854:
Voice of Father: Were you there at the club?

Mr. Bethel: They said I'm on camera being kicked out the club.

In response to his father's irate demands, Mr. Bethel repeated what Det. White told him. That he was at the club that night. Mr. Bethel stated during Det. White's interview that the night was a blur and he had a hard time remembering anything, but he was not at the club (Tr. 822). Mr. Bethel was found the next morning at a busy intersection, asleep at the wheel, while the signal lights cycled. He was

28

dazed and confused.

Mr. Bethel phoned his mother immediately after talking to his father and told her, "They tried to tell me I was at this club and I told them I wasn't there." (Tr. 861). This was an issue Mr. Bethel could not explain or discuss with his irate father, who would not understand and would become more upset by Mr. Bethel's attempt to challenge the police statement that he was on video. Due to Det. White's deceptive tactics of telling Mr. Bethel there was video of him being expelled from the club, it resulted in the false admission to his father. Mr. Bethel made no such claim to anyone else.

The admission of a child to an irate father of what was told by a deceptive detective in not a reliable confession of being at the scene. The district court's reliance upon disputable evidence to establish guilt is unfounded and without merit. Wherefore, due to the consideration of the proper context of the alleged admission. Mr. Bethel requests the phone call be deemed unreliable due to ineffective assistance of trial counsel.

For the aforementioned reasons of counsel's deficient performance caused prejudice and the OCCA's failure to review the issue for merit is an unreasonable application of *Strickland*, Mr. Bethel requests that the habeas petition be granted and he be immediately released.

**PROPOSITION III. THE STATE'S EVIDENCE WAS ILLEGALLY INSUFFICIENT TO PROVE ALL THE ELEMENTS OF ROBBERY WITH A FIREARM THE UNDERLYING FELONY AND THEREFORE ALSO INSUFFICIENT TO SUPPORT THE CONVICTION FOR FIRST DEGREE FELONY MURDER IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION**

The state's ruling that the evidence was sufficient to convict Mr. Bethel of the elements of Felony Murder is contrary to clearly established Federal Law resulting in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court.

## STANDARD OF REVIEW

In reviewing the sufficiency of evidence to support a conviction, "the relevant question is

whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

Sufficiency of evidence is a question of law that we review de novo. *United States v. Carter*, 130 F.3d 1432, 1439 (10th Cir. 1997), cert. denied, 523 U.S. 1144, 118 S. Ct. 1856, 140 L. Ed. 2D 1104 (1998). To determine whether evidence is sufficient to uphold a conviction, "we examine, in a light most favorable to the government, all of the evidence together with the reasonable inferences to be drawn therefrom and ask whether any rational juror could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Arutunoff*, 1 F.3d 1112, 1116 (10th Cir. 1993). Moreover, we "accept the jury's resolution of conflicting evidence . . . . As long as the possible inferences are reasonable, it was for the jury, not the court, to determine what may have occurred." *United States v. Grissom*, 44 F.3d 1507, 1510 (10th Cir. 1995). We will not uphold a conviction, however, that was obtained by nothing more than "piling inference upon inference," *United States v. Fox*, 902 F.2d 1508, 1513 (10th Cir. 1990), or where the evidence raises no more "than a mere suspicion of guilt," *United States v. Smith*, 133 F.3d 737, 742 (10th Cir. 1997).

## ARGUMENTS AND AUTHORITIES

a.    **INSUFFICIENT EVIDENCE TO SUPPORT ROBBERY WITH A FIREARM**

First Degree Robbery with a Firearm was the underlying felony to the Felony Murder conviction. Mr. Bethel contends that any rational trier of fact could not have found him guilty beyond a reasonable doubt for the purported First Degree Robbery With a Firearm.

No rational trier of fact could have legitimately found that Mr. Bethel participated in the robbery or that he aided and abetted anyone in the commission of that crime. In this case, the sufficiency of the evidence inquiry is based on *Jackson*, 443 U.S. at 309, 324 n.16. Robbery is defined

30

in Oklahoma as "a wrongful taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." **Okla. Stat. tit. 21, § 791**. Robbery with a dangerous weapon is any robbery committed with "any firearms or any other dangerous weapons...." **Okla. Stat. tit. 21, § 801**.

Applying the *Jackson* standard, the OCCA found that the evidence presented at trial was sufficient to prove the elements of the Robbery with a Firearm offense. However, the testimony of the robbery victim, as summarized earlier, did not provide sufficient evidence for a rational jury to have found Petitioner guilty of the Robbery with a Firearm offense beyond a reasonable doubt. The robbery victim did not identify Mr. Bethel and factually there was not a robbery. Even taking the evidence in the light most favorable to the state, the evidence adduced at trial failed to establish beyond a reasonable doubt that a robbery was made against the victim in this case, much less that Mr. Bethel was involved. Mr. Roberts admitted that during the incident there were no declarations of robbery or demands made for property (Tr. 384). Mr. Roberts testified that as he was getting out of the car, a man approached him and asked, "Do you know me?" (Tr. 366, 392, 420). Mr. Roberts claimed the man put a gun to his right side. Mr. Roberts raised his hands and threw at the man his cell phone and wallet (Tr. 368, 370. 392). Mr. Roberts clarified that the man never demanded his property, he just assumed he was being robbed (Tr. 384). Mr. Roberts wallet was later found on the ground beside the vehicle. Further, evidence indicates that Mr. Ivory, the only victim that did not run was not robbed. Factually, the robbery victim, Mr. Roberts, volunteered his property as an escape mechanism. The robbery victim threw the property, turned, and ran, jumping a four-foot wall with a five-foot drop, in a nightclub parking lot with people milling around. The cell phone could have been lost and/or recovered by anyone.

The evidence did not prove Mr. Bethel guilty of Robbery with a Firearm. There was no evidence anyone ever demanded any money or property from the victim. The person who walked up to

Mr. Roberts never said give me your cell phone or wallet. Mr. Roberts admitted he was scared and volunteered these items to the man. The evidence shows that someone walked up to the car, and asked the occupants a question, put the firearm to Mr. Robert's side, and then started firing. In short, there was no evidence anyone performed an act of demanding property, which was a substantial step toward the commission of a robbery. See *Shouquette v. State*, 1923 OK CR 311, 25 Okla. Crim. 169, 219 P. 727 "The authorities are all agreed that where property is taken by the consent of the owner, such taking does not constitute robbery..." *Id.* 25 Okla. Crim. 187.

It was just as likely that this was a shooting in retaliation and the evidence does not support a finding beyond a reasonable doubt that there was a forceful "taking" or "carrying away" nor that the property was taken by "force or fear". Mr. Roberts willfully volunteered up his property as an escape mechanism to possibly save his life. The willfully giving of property does not constitute robbery with a firearm or fulfill the elements of the crime. *Id.* 25 Okla. Crim. 187.

The second problem with the state's proof on these charges is that no rational trier of fact could have found beyond a reasonable doubt that Mr. Bethel was present during the events that lead to Mr. Ivory's death. No one identified Mr. Bethel or even described anyone remotely close to matching his description. The description given of the perpetrator who approached the vehicle could not have been Mr. Bethel, who is 6'6" and 240 pounds (Tr. 739). Mr. Roberts testified that the man who approached the vehicle was short, thin, African American, and wearing a black or navy hoodie (Tr. 366-67, 378, 380-81, 419, 423-24, 443). Mr. Roberts estimated the perpetrator was approximately 5'6" or 5'8" (Tr. 380). Mr. Jarrett, also, thought the perpetrator was approximately 5'5" (Tr. 441). There was absolutely no evidence identifying Mr. Bethel.

Finally, even assuming Mr. Bethel was present at the scene when this incident occurred, there is absolutely no evidence that he directly and actively committed the acts constituting the robbery at issue. It is true that a conviction for Robbery with a Firearm does not require the state to prove Mr.

Bethel was the triggerman. However, it does require the state to prove he shared in his co defendants' knowledge and intent. Aiding and abetting a crime involves acts, words or gestured encouraging the commission of the offense, either before or at the time of the commission of the offense. The volunteering of property by the robbery victim does not indicate that the other suspects had prior knowledge that anything would be taken or knowledge that anything was taken. Prior knowledge and the intention to take away property are elements of First Degree Robbery. Due to the spontaneity of the victim volunteering his property [which might of saved his life, because it distracted the man with the gun long enough for him to run] it could not be proven beyond a reasonable doubt that the other suspects had knowledge or consented to taking of property. See *Rosemond v. United States,* 134 S.Ct. 1240, 188L.Ed.2d 248 (2014), the Supreme Court held, in order to aid and abet, a defendant must have advance knowledge that a crime will be committed. One of the "basics" of aiding and abetting robbery [in addition to taking away is the requisite act of intent] when he intends to facilitate that offense's commission." See also *Williams v. Trammell*, 782 F.3d 1184 (10th Cir. 2015), citing *Rosemond*, "Some mutual state beyond "mere assent" or "acquiescence" is also required. *Id. Wingfeild v. Massie*, 122 F.3d 1329, 1332 (10th Cir. 1997). Whereby, if there was a robbery, which it could not be proven that there was, may have been a spontaneous robbery, which did not elevate the other suspects of premeditation consensus that a robbery would be committed.

No rational jury could have found beyond a reasonable doubt that Mr. Bethel aided and abetted anyone in the Robbery with a Firearm. No evidence was presented that Mr. Bethel told anyone to rob Mr. Ivory and his cohorts or that Mr. Bethel encouraged anyone to do so by word or gesture. Moreover, to prove Mr. Bethel aided and abetted in the robbery and shooting, the state had to prove Mr. Bethel *knowingly* and with *criminal intent* aided and abetted another in this enterprise. The "knowingly" requirement ment the state had to prove that Mr. Bethel was "personally aware of the facts." See Instruction 30; OUJI-CR 6-45 (O.R. 348). The state presented no evidence that Mr. Bethel was going to

rob Mr. Ivory.

Mr. Bethel challenges the sufficiency of the circumstantial case underlying his conviction. Because of the circumstantial nature of the evidence, the OCCA applied its stringent standard of review to consider whether the evidence was inconsistent with any reasonable hypothesis other than guilt. The evidence established the following: Mr. Bethel's vehicle matched the vehicle describe at the crime scene and Mr. Bethel was discovered some hours later in possession of a weapon that was fired at the scene. Considered in the light most favorable to the state, see *Jackson*, 443 U.S. at 319, this evidence was insufficient for a rational trier of fact to find the existence of all the elements of first degree robbery beyond a reasonable doubt. The Court should not reject the argument by Petitioner that he is entitled to habeas corpus relief because he can posit other reasonable theories consistent with the circumstantial evidence presented during his trial and for that reason, the evidence was insufficient to support his conviction. The Court should conclude that the evidence presented at Petitioner's trial was insufficient to sustain Petitioner's conviction. Therefore, Petitioner has satisfy the § 2254(d) standard and his request for habeas corpus relief based on a challenge to the insufficiency of the evidence for the conviction should be granted for the state's decision was an unreasonable application of *Jackson*.

### b.    INSUFFICIENT EVIDENCE TO SUPPORT FELONY MURDER

The rule that prohibits the stacking of inference upon inference merely indicates that at some point along a rational continuum, inferences may become so attenuated from underlying evidence as to cast doubt on the trier of fact's ultimate conclusion. In other words, "the chance of error or speculation increases in proportion to the width of the gap between underlying fact and ultimate conclusion where the gap is bridged by a succession of inferences, each based upon the preceding one." *United States v. Shahane*, 517 F.2d 1173, 1178 (8th Cir. 1975).

In the context of the instant case, the Court should have little difficulty in concluding that Mr. Bethel's conviction runs afoul of the rule. At trial, the state advanced the theory that Mr. Bethel acted in

34

concert with the robbery/murder. To convict Mr. Bethel on Felony Murder, the state was required to demonstrate beyond a reasonable doubt that Mr. Bethel (1) willfully associated with the charged criminal venture and (2) aided the venture through affirmative action. United States v. Delgado-Uribe, 363 F.3d 1077, 1084 (10th Cir. 2004). With respect to the charge of conspiracy, the government was required to prove (1) an agreement between two or more persons to break the law, (2) an overt act in furtherance of the conspiracy's objects, and (3) that the defendant willfully joined in the conspiracy. *United States v. Shepard*, 396 F.3d 1116, 1123 (10th Cir. 2005).

Turning to the aiding and abetting charge, to convict on the government's theory the jury must have first inferred that because Mr. Bethel was in possession of a firearm at the time of his arrest, he was guilty of felony murder. This despite the fact that there were no witnesses that put him at the scene Nor any witnesses who positively identify Mr. Bethel. The jury then must have inferred that Mr. Bethel was previously present at the night club despite the fact that no witness could place Mr. Bethel or recall seeing him at the club. Finally, the jury must have inferred that Mr. Bethel was a third occupant of the white car and facilitated the robbery and getaway, again despite the fact that the witness who testified that the white car was moving and no one was identified and the witness was unable to identify or testify to the presence of any of the occupants. Moreover, no fingerprints or evidence were found at the scene belonging to Mr. Bethel.

The first inference was arguably reasonable given the fact that video observed three individuals leave club, enter the white vehicle, and subsequently leave the club parking lot. Of course, the next morning Mr. Bethel was taken into custody in a white vehicle and in possession of the firearm involved in the crime. However, even if the first inference was reasonable, the "gap" between the evidence admitted in the case and the jury's ultimate conclusion appears to be far too wide to uphold Mr. Bethel's conviction. The defendant's mere possession of the firearm from a crime and in a white car is insufficient to support a conviction under an aiding and abetting theory. *Delgado-Uribe*, 363 F.3d at

1084; *United States v. Anderson*, 189 F.3d 1201, 1207 n.3 (10th Cir. 1999). Investigators were unable to find fingerprints or any other evidence at the crime scene that linked to Mr. Bethel. Absent any evidence tying Mr. Bethel to the club parking lot or establishing his presence with the robbers outside the club parking lot, the probability that Mr. Bethel acted in the robber does not appear reasonable.

Similarly, the court should not be persuaded that sufficient evidence exists to uphold Mr. Bethel's felony murder conviction. Assuming the existence of both an agreement between his co-defendants and overt acts in furtherance of a conspiracy, there is insufficient evidence to adduce that Mr. Bethel willfully joined or participated in the conspiracy. Although the jury might have inferred Mr. Bethel's presence at the club parking lot prior to the murder, there was simply no evidence to link Mr. Bethel to the shooting or taking of property post-robbery activities therein. Mere presence in the club or association with a white car is insufficient to support a felony murder conviction. *United States v. Starnes*, 109 F.3d 648, 650 (10th Cir. 1997); *United States v. Espinosa*, 771 F.2d 1382, 1392 (10th Cir. 1985). There was no evidence establishing communication between Mr. Bethel or anyone to relate him to the crime. Unlike his co-defendant Mr. Williams, officers failed to discover any testimony linked to the robbery/murder. While evidence connected with the robbery/murder was found in Mr. Bethel's car. his proximity to the parking lot and other evidence, even coupled with possession of the firearm prior to detention, is simply insufficient to permit a reasonable inference of his willful participation in the robbery/murder absent some other showing.

Finally, having carefully considered the state court's order denying Mr. Bethe's post-conviction motion for judgment of acquittal, the court should find its consideration of the evidence adduced at trial unpersuasive. The district court apparently believed that evidence affirmatively established Mr. Bethel's presence in the parking lot. However, as noted above, no one could identify Mr. Bethel at the scene of the crime or as one of the individuals in the parking lot. The district court also relied on evidence regarding suspicious behavior observed in a telephone recording, the proximity of evidence

linked to the murder/robbery later found in Mr. Bethel's car and the identifying of a white car leaving

the scene. Even taken collectively, this evidence remains insufficient to support Mr. Bethel's

conviction. While the defendant's reactions to police telling him he was observed on video at the club

may provide some evidence, such reactions are far from conclusive. Beyond general proximity of the

firearm, no evidence was adduced linking Mr. Bethel to the parking lot during the time of the crime.

While it is true that the jury may take into consideration a defendant's statements during the phone call

following the commission of a crime in determining guilt or innocence, the court have likewise noted

that "evidence of mere association or presence, even when coupled with evidence of flight, is not

enough to support a conviction." Espinosa, 771 F.2d at 1393 (emphasis added). Such is the case here.

Wherefore the court should conclude that Mr. Bethel's conviction was not supported by sufficient

evidence and should be reversed. Whereby, the state unreasonably applied *Jackson*.

**PROPOSITION IV. MR. BETHEL WAS DENIED A FAIR TRIAL BY THE ADMISSION OF IMPROPER LAW ENFORCEMENT OPINION TESTIMONY THAT INVADED THE PROVINCE OF THE JURY**

Mr. Bethel advanced the argument on appeal: that the state court erred in permitting Detective

White to provide expert opinion testimony as to Mr. Bethel's credibility. Because Mr. Bethel did not

object to *all* of the opinion testimony, the court should review only for plain error. See *United States v.*

*Frost*, 684 F.3d 963, 971 (10th Cir. 2012). "Plain error occurs when there is (1) error, (2) that is plain,

which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public

reputation of judicial proceedings." Id. (quotation omitted); see also Fed. R. Crim. P. 52(b) ("A plain

error that affects substantial rights may be considered even though it was not brought to the court's

attention.").

"Error is 'plain' if it is obvious or clear, i.e., if it is contrary to well-settled law." *United States v.*

*Edgar*, 348 F.3d 867, 871 (10th Cir. 2003) (quotation omitted). "In general, for an error to be contrary

to well-settled law, either the Supreme Court or this court must have addressed the issue." *United*

*States v. DeChristopher*, 695 F.3d 1082, 1091 (10th Cir. 2012) (quotation omitted). However, in certain circumstances, the "weight of authority from other circuits" may make an error plain even absent a holding from this court or the Supreme Court. *United States v. Hardwell*, 80 F.3d 1471, 1484 (10th Cir. 1996). The court should conclude that the admission of White's opinion testimony was error, and that it was plain.

As a general matter, expert opinion testimony may be introduced at trial if it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). An expert may provide opinion testimony if: "the testimony is based upon sufficient facts or data" and "is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d). "The touchstone of admissibility under Rule 702 is the helpfulness of the evidence to the trier of fact." *United States v. Rangel-Arreola*, 991 F.2d 1519, 1524 (10th Cir. 1993).

Mr. Bethel does not argue that White was unqualified to offer the opinion he provided, but instead that the subject matter of his testimony-the credibility of another person-may not be addressed by an expert testifying under Rule 702. As this court made clear in *United States v. Toledo*, 985 F.2d 1462 (10th Cir. 1993), "[t]he credibility of witnesses is generally not an appropriate subject for expert testimony." Id. at 1470. There are several reasons for the prohibition against expert testimony on other witness' credibility. Such testimony: (1) "usurps a critical function of the jury"; (2) "is not helpful to the jury, which can make its own determination of credibility"; and (3) when provided by "impressively qualified experts on the credibility of other witnesses is prejudicial and unduly influences the jury." Id. (citations omitted).

In *United States v. Hill*, 749 F.3d 1250 (10th Cir. 2014), in which the court reversed a conviction on plain-error review. This case bears resemblance to *Hill*. The reversal in *Hill* was based on the improper admission of expert testimony by a law-enforcement officer regarding the defendant's

credibility when interviewed by the officer.

The state contends that White did not comment on the veracity of any witness or tell the jury what result to reach. The state cites *Postelle v. State*, 267 P.3d 114, 131 (Okl. Cr. 2011), in which the court discussed the relevancy of evidence. The state also relies upon *Harmon v. State*, 248 P.3d 918. 937 (Okl. Cr. 2011), in which the court discussed balancing relevancy of evidence against its prejudicial effect. However, neither of these cases involved an expert offering his opinion of the veracity of another's statements, which this Court have repeatedly held is "not an appropriate subject for expert testimony." It was the subject, rather than the particular manner, of White's expert opinion testimony that was improper. For White, identified as indicators of mendacity Bethel's attempt to steer the conversation away from questions he did not want to answer and the changing of his story during the course of the interview. The reason the issue of credibility "belongs to the jury" is that jurors "are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men." *Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88, 11 S. Ct. 720, 35 L. Ed. 371 (1891). A jury does not need an expert to inform it that a witness who changes his story may be less than truthful.

White's testimony plainly fell into the category of impermissibly "'encroache[d] upon the jury's vital and exclusive function to make credibility determinations.'" Id. (quoting *United States v. Charley*, 189 F.3d 1251, 1267(10th Cir. 1999). After being asked what he drew from the interview "as to [Bethel's] truthfulness," White stated that Bethel provided "partial truths" and continually sought to "avoid the question[s]" asked of him. The prosecutor followed with a clearly inappropriate question, inquiring, "In reference to the substance of responses that were provided . . . how does that factor into your observation of whether he's being truthful or not?" White then summarized the story Bethel provided and stated: "It does not connect the dots. That does not make sense. That is not something that I viewed as reasonable." (Tr. 810, 817-25, 842-43, 850, 859).

This testimony plainly violated Rule 702 and the court's case law interpreting the rule. Even if

Officer White arguably had "specialized knowledge," Fed. R. Evid. 702(a), on the subject of

interrogations, his testimony on Bethel's credibility fails under **Rule 702** because it "encroache[d] upon

the jury's vital and exclusive function to make credibility determinations, and therefore [did] not assist

the trier of fact." *Charley*, 189 F.3d at 1267 (quotation omitted). He simply informed the jury that

Bethel's version of events was unworthy of belief based on his opinion of what is generally

"reasonable." The court cannot excuse his statement as a witness veering into non-responsive

commentary; the prosecutor specifically asked about the effect the "substance" of Bethel's responses

had on White's "observation of whether [Bethel was] being truthful or not."

Contrary to the government's claim, White testified flatly and repeatedly that, in his expert

opinion, Bethel was dishonest during his interview. Because our court has clearly held that "credibility

[i]s for determination by the jury," and "[a]n expert may not go so far as to usurp the exclusive function

of the jury to weigh the evidence and determine credibility," *Samara*, 643 F.2d at 705 (quotation

omitted), the admission of this testimony meets the stringent standard of plain error. See *United States

v. Toro-Pelaez*, 107 F.3d 819, 827 (10th Cir. 1997) (holding that "only a particularly egregious and

obvious and substantial error" qualifies as plain (quotation omitted)).

This conclusion does not end the court's inquiry. To obtain relief, Bethel must also show "that

the plain error affected his substantial rights." *United States v. Trujillo-Terrazas*, 405 F.3d 814, 818

(10th Cir. 2005). That is, he must demonstrate "a reasonable probability that but for the error claimed,

the result of the proceeding would have been different." Id. at 819 (quotation and alteration omitted).

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United

States v. Hasan*, 526 F.3d 653, 665 (10th Cir. 2008) (quotation omitted). "The reasonable-probability

standard is not the same as, and should not be confused with, a requirement that a defendant prove by a

preponderance of the evidence  that but for error things would have been different." *United States v.

Dominguez Benitez*, 542 U.S. 74, 83 n.9, 124 S. Ct. 2333, 159 L. Ed. 2d 157 (2009) (quotation

omitted).

The state's case against Bethel was far from airtight. Its best evidence was Bethel's being in possession of the firearm involved in the crime the next morning, whereby, he claimed that he had just purchased the firearm and his car matched the description of the vehicle leaving the scene. Officers discovered a phone call where Mr. Bethel was being chastised by his father for being at the club after he told his father that police told him they had pictures of him at the club. Even after Bethel continuously told the officers that he was not at the club. In many circumstances, such evidence standing alone might qualify as sufficiently probative of guilt to conclude that the defendant's substantial rights were unaffected by the improper admission of opinion testimony. In this case, however, the probative value of Bethel's possession of the firearm is somewhat undercut by the fact that there were several assailants of the crime and several guns involved. Any one of the assailants could have sold Bethel the gun. The government expressly proceeded upon the theory that the vehicle was the vehicle involved in the crime and Bethel was present. It would have been reasonable for the jury to conclude that others committed the crime and Bethel had the bad luck to be in possession of the firearm, especially given the absence of evidence presented about the identity of the assailants.

The state draws the court's attention to the telephone call evidence. But the phone call was the reaction to a police trick, whereby, the officers told Bethel that they had video of him being kicked out of the club. This evidence was never produced of Bethel being at the club. Bethel told the officers, his mother and the jury that he was not at the club, but he would not challenge his father in the wake of the police lie.

The state also points to the description of the car leaving the scene. The state argues that this is evidence of participation, but it may simply be a white car leaving the scene.

In light of this evidence, the court should conclude that there is a reasonable probability that but for White's' improper testimony, the result of Bethel's trial would have been different. White's

testimony directly contradicted Bethel's "wrong place, wrong time" theory. In closing arguments, the state asked the jury to rely on White's expertise.

The state urges the court to disregard the plainly erroneous admission of White's' testimony because the jurors were instructed that they were "the judges of the facts" and "the sole judges of the credibility or 'believability' of each witness." Jurors are presumed to follow their instructions. *United States v. Almaraz*, 306 F.3d 1031, 1037 (10th Cir. 2002). But the instructions considered as a whole tend to exacerbate the erroneous admission of White's expert opinion. They stated that White was permitted to express his opinions "regarding investigation" based on his "knowledge, skill, experience, training or education," and that his testimony concerned "scientific, technical, or other specialized knowledge."

Although the jury was instructed that it was not required to accept the expert opinion testimony offered, the danger of such testimony on the subject of credibility is not that the jury will be misled into thinking the issue is outside its bailiwick, but that "the testimony of impressively qualified experts on the credibility of other witnesses is prejudicial and unduly influences the jury." *Toledo*, 985 F.2d at 1470. During his testimony, White sought to burnish his credentials. He told the jury that he had attended "specialized courses" including "the Reid school, which is a higher-level school of interrogation and interviewing." He stated that the Reid school trained him in "special tactics and ways to identify on deception in statements and truths in statements" and that the training was "sought-after . . . because of the caliber of that training you do get towards that endeavor."

In light of the complete record before the court, it should conclude that Bethel has carried his burden of showing a reasonable probability that the result of his trial would have been different without the impermissible testimony. Although the prosecution presented a reasonable theory, the likelihood that the jury was unduly swayed by White's' improper testimony-and would not have found Bethel guilty beyond a reasonable doubt absent that testimony-is high enough to undermine the court's

confidence in the result of the trial. See *Hasan*, 526 F.3d at 665. Wherefore the state unreasonably applied clearly established federal in denying Mr. Bethel's claim in the direct appeal.

## CONCLUSION

Mr. Bethel has presented colorful pro se arguments that should be construed liberally into the strongest arguments that they convey. *Id. Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). He requests that he be granted habeas corpus relief due to his person being held in a state facility in violation of his constitutional rights, whereby, his conviction should be vacated and immediately release granted.

RESPECTFULLY SUBMITTED

DeAndre Bethel, pro se
#690424
Lawton Correctional Facility
8607 SE Flowermound Rd.
Lawton, OK 73501

## VERIFICATION

I state under penalty of perjury under the laws of Oklahoma that the foregoing Petition for Writ of Habeas Corpus is true and correct under penalty of perjury. Executed by the Petitioner at the Lawton Correctional Facility, 8607 S.E. Flowermound Rd., Lawton Oklahoma, 73501-9765, on the *21* day of *June*, 2017.

## CERTIFICATE OF SERVICE

This is to certify that the original true and correct copy of the foregoing was caused to be mailed

this 21 day of June ___, 2017, via the LCF-Lawton Prison Legal Mail, postage prepaid to:

United States District Court Clerk
of the Northern District of Oklahoma
333 W. 4th Street
Tulsa, Oklahoma 73103

Ex. 1 Affidavit of Jolene Perham,
Ex. 2 Riley,
Ex. 3 Smith,
Ex. 4 Williams
Ex. 5 Bethel

LEGAL MAIL



Post Marked 6/20/17 gm



17 CV 367 JHP - FHM

CLERK
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA
333 W. 4TH STREET
TULSA, OK  73103

7016 0340 0000 7970 5375

RECEIVED

JUN 2 6 2017

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

DeAndre Bethel
#690424
8607 SE Flowermound Rd.
Lawton, OK 73501

LEGAL MAIL #10-21-17



*This correspondence is from an inmate under the custody of the Oklahoma Department of Corrections (DOC). For specific information about this inmate service this correspondence, such as; projected release date, photo, etc., refer to our website at www.doc.state.ok.us. Click on the "Offender Information" link then the "Offender Lookup" link or contact (DOC) at 580-351-2778. This facility is not responsible for the substance of which this correspondence may or may not contain.