Exhibit
1

**STATE OF OKLAHOMA** )
)
**COUNTY OF CLEVELAND** )

### AFFIDAVIT OF JOLENE PERHAM

I, Jolene Perham, being of sound mind and legal age, do hereby state under oath:

1. My name is Jolene Perham and I am employed as an investigator in the Homicide Direct Appeals Division of the Oklahoma Indigent Defense System (OIDS) in Norman, OK.

2. In my capacity as an investigator with OIDS, I was assigned to retrieve the trial files from the trial attorney for Mr. Deandre Bethel. Mr. Bethel is appealing his conviction in Tulsa County Case No. CF-2012-660, Oklahoma Court of Criminal Appeals Case No. F-14-366

3. On June 5, 2014, I received 1 box of trial files from Steven W. Vincent, Mr. Bethel's trial attorney. This file contained 3031 pages of documents, including 24 CD's/DVD's, pertaining to Mr. Bethel's case.

4. Pursuant to the policy of the Oklahoma Indigent Defense System (OIDS), the trial files are delivered to Ms. Norma Dumas who bates-stamps, in consecutive order, the identifying initials of trial counsel ("SWV" which stands for Steven W. Vincent) and numbers every piece of paper and item(s) from the trial files. This is done to differentiate these documents from any other documents obtained by OIDS.

5. After searching through the Trail Attorney files the following document was retrieved:

   A. Letter of correspondence (not dated) to Mr. Vincent from Glenda Gray. The letter consists of one (1) page, and bears the bate-stamp number SWV 1311.

I have read this statement consisting of one (1) page and I state that the foregoing is true and correct.

_____          12/22/2014
**Affiant / Jolene Perham**                        **Date**

Signed and subscribed to before me on the 22nd day of December, 2014, in

Cleveland _____ County, Oklahoma.

_____
**Notary Public**
**Commission #** _____
**Expiration Date:** _____

LEA ANN ISLEY
NOTARY
# 98018393
EXP. 11/10/15
PUBLIC
STATE OF OKLAHOMA

Dear Mr Vincent

I am sending vital information regarding my son  Deandre Bethel's case. Tulsa county has in custody Trey Marzett. He's contacted Deandre and wishes to speak with you  regarding this case. HeTrey,  somehow feels you may already have knowledge of the some of the facts he wishes to discuss with you. This information is important for Deandre's defense.

Here also are the names of the witness for Deandre Bethel:

Wanda Smith   529 E 49th PL N Tulsa, OK 74126    918 282 9931 or 918  902 5075

Ashley Hervey  219 E 52nd PL N tulsa, OK 74127    918 852 1949

Mr Vincent we are also wondering whenyou will  and why you have not been to visit Deandre yet. He needs to discuss the defense tactics the plans you have to execute his defense. His  trial date is almost upon us  and  to our knowledge not much has transpired to give Deandre a secure feeling that his best interest is being represented. This is based on the little communication between you two and even the few timesII have spoken with you.

I have left messages on your cell and left messages at your office with no return calls.  Deandre has written letters to your office also and haven't gotten any responses. This is another attempt to contact you as we do not know if you are receiving these messages.

Thanking you in advance for your consideration and your time in responding to this letter.

Glenda Gray

PO BOX 2404 Tulsa , OK

918 851 1205

1

Exhibit

**2**

## AFFIDAVIT OF ELZA RILEY

State of Oklahoma            )
v.                           )        Case No. CF-2012-660
DeAndre Bethel               )


Elza Riley
#531017
Lawton Correctional Facility
8607 SE Flowermound Rd.
Lawton, OK 73501


     I Elza Riley, of lawful age and sound mind currently being incarcerated at Lawton Correctional Facility swear that the following is true and correct to the best of my knowledge. The case number referred to is CF-2012-660, in the District Court of Tulsa County for the State of Oklahoma.

     I, Elza Riley have known DeAndre Bethel for approximately twelve (12) years.

     I, Elza Riley was present at Club Pink on February 4, 2012 at 1:40 a. m. I was parked in the parking lot and I observed the shooting that occurred. I saw another car parked in the parking lot and a white car pull up behind it. Three (3) individuals got out of the white car and I recognized LaHarry Myers a/k/a L.J. and another person pull guns and shoot Bryon Ivory Jr. I also recognized another individual standing by the shooters vehicle (DeAndre Williams). This was retaliation for Bryon Ivory robbing Mr. Myers some days earlier. After the shooting I immediately left the seen in a dark colored vehicle (blue Oldsmobile). No one in our vehicle participated in the incident we just witnessed what happened and left the scene.

     I was never approached by police or questioned by Mr. Bethel's attorney as to what I witnessed. Had I been contacted and requested to testify, then I would have testified that DeAndre Bethel was not involved in the shooting or robbery of Mr. Ivory.

                          _Elza Riley_
                          Elza Riley

#531017

Lawton Correctional Facility
8607 SE Flowermound Rd.
Lawton, OK 73501

Comanche County          )
                         )     ss.
State of Oklahoma        )


_Elmj Riley_
Signature of Affiant


Subscribed and Sworn to by me. This 22nd day of June 2016.

NOTARY PUBLIC State of OK
MARGO SALDANA
Comm. # 15005196
Expires 06-04-2019

_Margo Saldana_
Notary Public

My Commission Number is: _15005196_

My Commission Expires: _06·04·2019_

Exhibit

3

STATE OF OKLAHOMA )
) ss.
COUNTY OF TULSA )

## AFFIDAVIT OF WANDA JANELL SMITH

I, Wanda Janell Smith, being of sound mind and legal age, do hereby state under oath:

1.  My name is Wanda Janell Smith. I am a friend of Deandre Bethel. We have known each other since high school – about 4 ½ years.

2.  I was with Deandre Bethel on the evening of February 3, 2014, and into the early morning hours of February 4, 2014. We were dating at the time. Around 1 p.m., Deandre dropped me off at the home of my best friend, Neka. He came back over at about 9 p.m. We were hanging out, playing dominoes and drinking. I saw him take a couple of Xanax bars. Around 1 a.m., we left for my mother's house. We drove his white Cobalt car. My mother lived at 539 E 49th Place in Tulsa. At that point, Deandre was pretty messed up. My grandmother called me at around 3 a.m. She stayed around the corner. She was ill and needed my help to be moved from her bed to the living room. Deandre and I went over to her house to help her. Then around 3 a.m., Deandre's friend, LJ (LaHarry Myers), called my cell phone. Deandre did not have a phone that worked at the time. LJ asked if "Belly" was with me. "Belly" was Deandre's nickname. I gave Deandre my phone and he was talking to LJ, but I didn't know what they were saying. After he finished talking, Deandre told me he was going to meet LJ to go buy a gun. I told Deandre, "Let me go with you." He told me no and we got into it and argued. Deandre did not want me to go because he thought LJ was going to rob him. We argued some more. I got out of the car and he drove off. Later that morning, I got a phone call that Deandre was in jail.

3.  I was never contacted by the police, the district attorney's office or any defense attorneys who represented Deandre Bethel before his trial in February 2014. I remember talking to Deandre's pastor about the information in this affidavit.. He told me Deandre's lawyer would be calling and interviewing me, and would ask me to testify at Deandre's trial.

4.  Deandre's trial lawyer never contacted me prior to trial. No one from the trial attorney's staff contacted me. I was willing to testify and would have done so had I been asked to appear on Deandre's behalf.

Dated this _16th_ day of December, 2014.

Wanda Janell Smith

**Wanda Janell Smith**

Signed and subscribed to before me this _16th_ day of December, 2014.

**Kim Alyce Marks, Notary Public**
**Commission #04006555**
**Expires July 20, 2016**

Exhibit
4

STATE OF OKLAHOMA     )
                                ) ss.
COUNTY OF TULSA        )

## AFFIDAVIT OF DEANDRE ARMON WILLIAMS

I, Deandre Armon Williams, being of sound mind and legal age, do hereby state under oath:

1.      My name is Deandre Armon Williams. I am a friend of Deandre Bethel. We have known each other since 2007.

2.      I was charged jointly with Deandre Bethel in Tulsa County District Court Case No. CF-2012-0660, with First Degree Felony Murder in the Commission of a Robbery with A Firearm, for the death of Byron Ivory, Jr., on February 4, 2012. Our trials were severed. Deandre went to trial first. My trial was scheduled to begin on September 15, 2014. Prior to trial, I entered a plea of guilty to Accessory After the Fact and was sentenced to seven years, with two years in the custody of the Department of Corrections and five years suspended under the supervision of the Division of Probation and Parole.

3.      I saw Deandre Bethel around 4:00 a.m. on the morning of February 4, 2012. I called Deandre on the phone to see where he was. He said he was over in the vicinity of my house near Lucky Sam's convenience store on North Lewis. I told him to meet me at Lucky Sam's. We met there and saw LaHarry Myers, otherwise known as "L.J.," getting out of his white Crown Victoria in the parking lot. Deandre asked L.J. if he still had a gun for sale. L.J. said he still had some guns and they would need to go around the corner near the 007 Club to get the guns. Deandre said a cop named "Sticks" told him he needed a gun for protection because the Hoovers were trying to get at him. All three of us drove in separate cars to the location. I was driving my brother's maroon 2000 Chevy Tahoe. It took less than a minute to get to the house. I did know whose house it was. Once at the house, I got out of my car and got into Deandre's white car. L.J. came up and said he was going inside the house to get the guns. A few minutes later, L.J. came out of the house with two guns, a .40 caliber and a 9 millimeter and showed them to us. Deandre asked him if there was anything wrong with the guns and whether they were "hot." L.J. said the guns were fine. Deandre gave L.J. $150.00 in exchange for the .40 caliber gun. I told them I would talk to them later. I got back into my vehicle and left.

4.      I never told this information to the police and I was never asked about it. I invoked my right to counsel when I was interrogated by Detective Jason White and he terminated the interview. Deandre Bethel's trial lawyer never contacted me about this information prior to trial, nor did anyone from his staff. I was willing to testify and would have done so had I been asked to appear on Deandre's behalf.

Dated this 16 day of December, 2014.

Deandre Armon Williams

Signed and subscribed to before me this 16 day of December, 2014.

**Kim Alyce Marks, Notary Public**
**Commission #04006555**
**Expires July 20, 2016**

# AFFIDAVIT OF DEANDRE WILLIAMS

State of Oklahoma )
v. ) Case No. CF-2012-660
DeAndre Bethel )

DeAndre Williams
300 N. Denver
Tulsa, OK 74103

I, DeAndre Williams, of lawful age and sound mind currently being incarcerated at Tulsa Justice Center swear that the following is true and correct to the best of my knowledge. The case number referred to is CF-2012-660, in the District Court of Tulsa County for the State of Oklahoma.

I, DeAndre Williams have known DeAndre Bethel for approximately five (5) years.

On February 4, 2012, I was riding in a white vehicle with my friends Rio and LaHarry Myers a/k/a L.J. Rio was driving his own vehicle. L.J. was in the passenger seat and I sat in the backseat. We pulled into the parking lot of Club Pink at around 1:40 a. m. L.J. had been previously in an altercation with Bryon Ivory. Bryon had robbed L.J. some days earlier. Rio had set up a meeting between Bryon and L.J. so they could fight. We pulled into the parking lot then L.J. and Rio got out and approached Bryon's car. Rio and Bryon begin to tussle. Bryon's gun fell and went off and L.J. and Rio started shooting back at Bryon. Rio picked up Bryon's gun and we left the seen. I did not know that there would be any shooting involved. I thought it would just be a fistfight. I stood back and observed what happened. Rio and L.J. acted alone. DeAndre Bethel was not present or involved in any manner.

Later that mourning L.J. contacted DeAndre Bethel and asked him if he wanted to buy one of the guns. The gun L.J. sold was the gun L.J. used to shoot Bryon. It was a black and silver .40 caliber Smith & Wesson.

I never told this information to the police and I was never asked about it. Mr. Bethel's trial attorney never contacted me about this information before trial, nor did any of his staff. Mr. Bethel's appellate counsel never requested information about the commission of the crime and I never told her. I was willing to testify and would have testified to the aforementioned information on DeAndre's behalf if requested to appear at trial. I am still willing to testify.

_____

DeAndre Williams
300 N. Denver
Tulsa, OK 74103

_____

Signature of Affiant

Subscribed and Sworn to by me this _____ day of _____ 2016.

_____

Notary Public

My Commission Number is: _____

My Commission Expires : _____



## AFFIDAVIT OF DEANDRE BETHEL

State of Oklahoma          )
v.                               )    Case No. CF-2012-660
DeAndre Bethel          )

DeAndre Bethel
#690424
Lawton Correctional Facility
8607 SE Flowermound Rd.
Lawton, OK 73501

      I DeAndre Bethel, of lawful age and sound mind currently being incarcerated at Lawton Correctional Facility swear that the following is true and correct to the best of my knowledge. The case number referred to is CF-2012-660, in the District Court of Tulsa County for the State of Oklahoma.

      I was arrested and convicted in Case #CF-2012-660, for Felony Murder of Bryon Ivory Jr. with the underlying felony of Robbery with a Firearm. I was arrested asleep at a stop light with a weapon used in the commission of the crime in my vehicle the following morning. I absolutely denied any involvement in the crime and testified that I bought the gun earlier that morning from an individual named Rio and that LaHarry Myers was also present during that buy.

      After my conviction, I self-investigated the crime and newly discovered who committed the crime and also discovered several eyewitnesses at the crime scene. I discovered LaHarry Myers was the shooter and the individual that pressed the gun into Mr. Roberts chest, also, the individual I identified at trial whom I bought the gun from as Rio, drove the vehicle and fought with Byron Ivory Jr. There was also three (3) other people who witnessed the crime, of which, two (2) of the eyewitnesses have also submitted affidavits (Elza Riley & DeAndre Williams). These affidavits demonstrate that I am actually innocent of these crimes. The evidence further demonstrates that had my trial counsel investigated, interviewed, and called these eyewitnesses to testify at trial, then I would have been found not guilty.

      Further, I did not tell my trial counsel to concede to the Robbery with a Firearm, neither overtly nor purposely. Mr. Vincent did not consult with me about conceding to the robbery and I never would had conceded because I did not rob or participate in any robbery/murder.

DeAndre Bethel
#690424
Lawton Correctional Facility
8607 SE Flowermound Rd.
Lawton, OK 73501

_(signature)_

Signature of Affiant

Subscribed and Sworn to by me this 2e day of September 2016.

_(signature)_

NOTARY PUBLIC State of OK
C. TOPPING
Comm. # 13011277
Expires 12-16-2017

Notary Public

My Commission Number is: 13011277

My Commission Expires: 12|16|2017

Case No. F-2014-336

# IN THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA

## DEANDRE BETHEL

Appellant,

vs.

## THE STATE OF OKLAHOMA

Appellee.

Appeal from the
District Court of Tulsa County

## BRIEF OF APPELLANT

Jamie D. Pybas
Division Chief
Oklahoma Bar Assoc. No. 13000
Homicide Direct Appeals Division
Oklahoma Indigent Defense System
P.O. Box 926
Norman, Oklahoma 73070
(405) 801-2666

ATTORNEY FOR APPELLANT

December 22, 2014

## TABLE OF CONTENTS

PAGE

STATEMENT OF THE CASE ..................................................... 1

STATEMENT OF THE FACTS ................................................... 2

PROPOSITION I

THE STATE'S EVIDENCE WAS LEGALLY INSUFFICIENT TO PROVE ALL THE ELEMENTS OF ROBBERY WITH A FIREARM AND THEREFORE ALSO INSUFFICIENT TO SUPPORT MR. BETHEL'S CONVICTION FOR FIRST DEGREE FELONY MURDER BASED ON THAT UNDERLYING FELONY. ACCORDINGLY, MR. BETHEL'S CONVICTIONS AND SENTENCES ON COUNTS I AND II SHOULD BE VACATED AS THEY ARE IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE II, §§ 7 AND 20 OF THE OKLAHOMA CONSTITUTION ................................... 11

PROPOSITION II

MR. BETHEL'S CONVICTION AND SENTENCE FOR COUNT II, ROBBERY WITH A FIREARM, MUST BE VACATED BECAUSE THE SAME CHARGE SERVED AS THE UNDERLYING FELONY FOR HIS CONVICTION OF FELONY MURDER, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE II, § 21 OF THE OKLAHOMA CONSTITUTION .................................................... 17

PROPOSITION III

THE TRIAL COURT COMMITTED FUNDAMENTAL ERROR BY FAILING TO INSTRUCT THE JURY ON THE LESSER OFFENSES OF SECOND DEGREE DEPRAVED MIND MURDER, SECOND DEGREE FELONY MURDER, AND ACCESSORY AFTER THE FACT, IN VIOLATION OF MR. BETHEL'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE II, §§ 7 AND 20 OF THE OKLAHOMA CONSTITUTION ............................. 19

A. Second Degree Depraved Mind Murder ........................... 20

B. Second Degree Murder with Robbery by Force and Fear as the Underlying Felony ............................................. 22

C. Accessory ........................................................ 24

i

**PROPOSITION IV**

THE TRIAL COURT ERRED IN FAILING TO COMPLY WITH THE LAW GOVERNING CONTACT WITH JURORS DURING DELIBERATIONS AND BY FAILING TO ADVISE DEADLOCKED JURORS NOT TO SURRENDER THEIR HONEST CONVICTIONS CONCERNING THE WEIGHT OF THE EVIDENCE IN ORDER TO REACH A VERDICT, IN VIOLATION OF OKLA. STAT. TIT. 22, § 894 AND MR. BETHEL'S RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE II, §§ 7, 19 AND 20 OF THE OKLAHOMA CONSTITUTION ............................. 26

**PROPOSITION V**

MR. BETHEL'S TRIAL WAS RENDERED FUNDAMENTALLY UNFAIR BY THE ADMISSION OF IMPROPER LAW ENFORCEMENT OPINION TESTIMONY THAT INVADED THE PROVINCE OF THE JURY IN VIOLATION OF HIS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE II, §§ 7 AND 20 OF THE OKLAHOMA CONSTITUTION ......... 32

**PROPOSITION VI**

THE ADMISSION OF IRRELEVANT AND PREJUDICIAL EVIDENCE CONTAINED IN STATE'S EXHIBIT 28, A TAPED RECORDING OF A PHONE CALL BETWEEN MR. BETHEL AND HIS MOTHER, RESULTED IN A VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE II, §§ 7 AND 20 OF THE OKLAHOMA CONSTITUTION ......................................................... 38

**PROPOSITION VII**

IMPROPER VICTIM IMPACT TESTIMONY AND EVIDENCE WAS ADMITTED AT TRIAL, DEPRIVING MR. BETHEL OF A FAIR TRIAL IN VIOLATION OF HIS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE II, §§ 7, 9 AND 20 OF THE OKLAHOMA CONSTITUTION ....... 40

A. The Admission of a Pre-mortem Photograph of the Victim ......... 40

B. Improper Victim Impact Evidence During Formal Sentencing ......................................................... 41

**PROPOSITION VIII**

COUNTS III AND IV WERE IMPROPERLY JOINED AT MR. BETHEL'S TRIAL IN VIOLATION OF HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE II, §§ 7 AND 20 OF THE OKLAHOMA CONSTITUTION ..................................... 42

## PROPOSITION IX

THE ADMISSION OF EVIDENCE OBTAINED AS A RESULT OF AN ILLEGAL SEARCH AND SEIZURE VIOLATED MR. BETHEL'S RIGHTS UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE II, SECTION 30 OF THE OKLAHOMA CONSTITUTION ..................................................... 44

## PROPOSITION X

MR. BETHEL WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE II, §§ 7 AND 20 OF THE OKLAHOMA CONSTITUTION ......... 46

    A.    Failure to Adequately Protect the Record with Appropriate Objections ...................................................... 46

    B.    Failure to Request Instructions on Appropriate Lesser Related Offenses ................................................ 48

    C.    Failure To Present Critical, Available Defense Witnesses ............ 49

    D.    Conclusion ............................................... 50

## CONCLUSION ................................................. 50

## CERTIFICATE OF SERVICE ................................... 51

## TABLE OF AUTHORITIES

### CASES

Allen v. United States,
    164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896) ........................... 29

Andrew v. State,
    2007 OK CR 23, 164 P.3d 176 ...................................... 39

Avants v. State,
    1983 OK CR 35, 660 P.2d 1051 ..................................... 16

Aycox v. State,
    1985 OK CR 83, 702 P.2d 1057 (Okl.Cr. 1985) ....................... 46

Barnett v. State,
    2011 OK CR 28, 263 P.3d 959 ..................................... 23

Breshers v. State,
    1977 OK CR 331, 572 P.2d 561 .................................... 21

Brogie v. State,
    1985 OK CR 2, 695 P.2d 538 ............................................... 30

Brown v. State,
    1975 OK CR 191, 541 P.2d 242 ............................................. 39

Buchanan v. State,
    1974 OK CR 111, 523 P.2d 1134 ........................................... 39

Capps v. State,
    1984 OK CR 8, 674 P.2d 554 ............................................... 41

Childress v. State,
    2000 OK CR 10, 1 P.3d 1006 .............................................. 20

Cody v. State,
    1961 OK CR 43, 361 P.2d 307 ............................................. 40

Coffia v. State,
    2008 OK CR 24, 191 P.3d 594 ............................................. 18

Commonwealth v. Kitchen,
    730 A.2d 513 (Pa. 1999) ................................................. 32

Curtis v. State,
    1988 OK CR 220, 762 P.2d 981 ........................................... 37

Dennis v. State,
    1977 OK CR 83, 561 P.2d 88 .............................................. 21

Drew v. State,
    1989 OK CR 1, 771 P.2d 224 .............................................. 29

Driver v. State,
    1981 OK CR 117, 634 P.2d 760 ........................................... 48

Dungan v. State,
    1982 OK CR 152, 651 P.2d 1064 .......................................... 39

Dunkle v. State,
    2006 OK CR 29, 139 P.3d 228 ............................................. 46

Dyke v. State,
    1986 OK CR 44, 716 P.2d 693 ............................................. 43

Fairchild v. State,
    1999 OK CR 49, 998 P.2d 611 ............................................. 16

Frazier v. State,
    1981 OK CR 13, 624 P.2d 84 .............................................. 15

Galloway v. State,
    1985 OK CR 42, 698 P.2d 940 ............................................... 49

Gianfrancisco v. State,
    570 So. 2d 337 (Fla. App. 1990) ........................................... 32

Givens v. State,
    1985 OK CR 104, 705 P.2d 1139 ........................................... 28

Glass v. State,
    1985 OK CR 65, 701 P.2d 765 ............................................. 43

Higgins v. State,
    1972 OK CR 16, 493 P.2d 1121 ............................................ 29

Glossip v. State,
    2001 OK CR 21, 29 P.3d 597 ........................................... 24, 49

Grant v. State,
    2009 OK CR 11, 205 P.3d 1 ............................................... 40

Harris v. Oklahoma,
    433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) ..................... 19

Hicks v. Oklahoma,
    447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980) ..................... 23

Hogan v. State,
    2006 OK CR 19, 139 P.3d 907 ............................................. 37

Hooks v. State,
    2001 OK CR 1, 19 P.3d 294 ............................................... 29

Humphries v. State,
    18 So.3d 305 (MisS.Ct. App. 2009) ....................................... 22

In re Winship,
    397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ..................... 12

Jackson v. Virginia,
    443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ................. 12, 17

James v. State,
    2007 OK CR 1, 152 P.3d 255 ............................................. 37

Jefferson v. State,
    1984 OK CR 27, 675 P.2d 443 ............................................ 19

Jenkins v. United States,
    380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965) ..................... 30

<u>Jennings v. State</u>,
    1987 OK CR 219, 744 P.2d 212 ............................................... 49

<u>Jewell v. Territory</u>,
    1896 OK 16, 43 P. 1075 ..................................................... 21

<u>Keeble v. United States</u>,
    412 U.S. 206, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973) ......................... 25

<u>Kluver v. Weatherford Hospital Authority</u>,
    859 P.2d 1081 (Okla. 1993) ................................................. 18

<u>Maben v. Lee</u>,
    1953 OK CR 139, 260 P.2d 1064 ............................................ 32

<u>Massie v. State</u>,
    1976 OK CR 174, 553 P.2d 186 .............................................. 21

<u>McCarty v. State</u>,
    1988 OK CR 271, 765 P.2d 1215 ............................................ 36

<u>McHam v. State</u>,
    2005 OK CR 28, 126 P.3d 662 ............................................... 25

<u>Miles v. State</u>,
    1979 OK CR 116, 602 P.2d 227 .............................................. 30

<u>Miller v. State</u>,
    2001 OK CR 17, 29 P.3d 1077 ............................................... 47

<u>Mitchell v. State</u>,
    2005 OK CR 15, 120 P.3d 1196 .............................................. 16

<u>Mitchell v. State</u>,
    2011 OK CR 26, 270 P.3d 160 ........................................... 27, 31

<u>Moulton v. State</u>,
    1948 OK CR 130, 201 P.2d 268 .............................................. 16

<u>Myers v. State</u>,
    2000 OK CR 25, 17 P.3d 1021 ............................................... 37

<u>Neitzel v. State</u>,
    655 P.2d 325 (Alaska App. 1982) ........................................... 22

<u>Palmer v. State</u>,
    1994 OK CR 16, 871 P.2d 429 ............................................... 21

<u>Patterson v. State</u>,
    2002 OK CR 18, 45 P.3d 925 ................................................ 50

Perry v. State,
    1993 OK CR 5, 853 P.2d 198 ............................................... 19

Pickens v. State,
    1979 OK CR 99, 600 P.2d 356 ............................................. 29

Pickens v. State,
    2001 OK CR 3, 19 P.3d 866, 878-79 ....................................... 16

Rea v. State,
    3 Okl.Cr. 281, 105 P. 386 (1909) ......................................... 25

Rogers v. United States,
    422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975) ........................... 27

Romano v. State,
    1995 OK CR 74, 909 P.2d 92 ............................................... 36

Rounds v. State,
    1984 OK CR 49, 679 P.2d 283 ............................................. 15

Ryder v. State,
    2004 OK CR 2, 83 P.3d 856 ............................................... 36

Sartin v. State,
    1981 OK CR 157, 637 P.2d 897 ............................................ 29

Seabolt v. State,
    2006 OK CR 50, 152 P.3d 235 ............................................. 45

Shields v. United States,
    273 U.S. 583, 47 S.Ct. 478, 71 L.Ed. 787 (1927) ........................... 27

Simpson v. State,
    1994 OK CR 40, 876 P.2d 690 ................................... 24, **passim**

Smith v. State,
    1996 OK CR 50, 932 P.2d 521 ............................................. 37

Smith v. State,
    2007 OK CR 16, 157 P.3d 1155 ........................................ 27, 42

Stanley v. State,
    1988 OK CR 151, 762 P.2d 946 ............................................ 20

Stiles v. State,
    1992 OK CR 23, 829 P.2d 984 ............................................. 19

Strickland v. Washington,
    466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ...................... 46

Sutton v. State,
    1988 OK CR 158, 759 P.2d 235 ............................................... 29

Tarter v. State,
    1961 OK CR 18, 359 P.2d 596 ................................................ 20

Thomas v. State,
    1987 OK CR 113, 741 P.2d 482 ............................................... 29

Tomlin v. State,
    1994 OK CR 14, 869 P.2d 334 ............................................... 45

United States v. Brown,
    776 F.2d 397 (2nd Cir. 1985) ............................................... 32

United States v. Espinosa,
    827 F.2d 604 (9th Cir. 1987) ............................................... 32

United States v. United States Gypsum Co.,
    438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978) ................. 30

Walton v. State,
    1987 OK CR 227, 744 P.2d 977 .............................................. 20

Warner v. State,
    2006 OK CR 40, 144 P.3d 838 ............................................... 29

Whalen v. United States,
    445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) ............. 19

Wiley v. State,
    183 S.W.3d 317 (Tenn. 2006) ............................................... 48

Wilhoit v. State,
    1991 OK CR 50, 816 P.2d 545 ............................................... 49

Williams v. State,
    1973 OK CR 354, 513 P.2d 335 ............................................. 20

Williams v. State,
    2001 OK CR 9, 22 P.3d 702 ................................................. 25

Williams v. Taylor,
    529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) .......... 46

Willingham v. State,
    1997 OK CR 62, 947 P.2d 1074 ............................................. 21

Wong Sun v. United States,
    371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) ................. 45

<u>Woods v. State,</u>
     602 So. 2d 1210 (Ala. Crim. App. 1992) .................................... 22

## STATUTORY AUTHORITY

Okla. Stat. tit. 12, § 2403 (2011) ......................................... 39, 40

Okla. Stat. tit. 21, § 11 (2011) ......................................... 17

Okla. Stat. tit. 21, § 142A-8 (2011) ......................................... 42

Okla. Stat. tit. 21, § 172 (2011) ......................................... 12

Okla. Stat. tit. 21, § 173 (2011) ......................................... 24

Okla. Stat. tit. 21, § 175 (5) (2011) ......................................... 24

Okla. Stat. tit. 21, § 645 (2011) ......................................... 23

Okla. Stat. tit. 21, § 646(A)(1) (2011) ......................................... 23

Okla. Stat. tit. 21, § 701.7 (2011) ......................................... 1

Okla. Stat. tit., 21 § 701.8 (2011) ......................................... 22

Okla. Stat. tit. 21, § 701.8 (1) (2011) ......................................... 20

Okla. Stat. tit. 21, § 701.9 (B) ......................................... 22, 23

Okla. Stat. tit. 21, § 791 (2011) ......................................... 22, 23

Okla. Stat. tit. 21, § 801 (2011) ......................................... 1, 13

Okla. Stat. tit. 21, § 1289.13 (2011) ......................................... 1

Okla. Stat. tit. 22, § 196(1) (2011) ......................................... 45

Okla. Stat. tit. 22, § 202(1) (2011) ......................................... 45

Okla. Stat. tit. 22, § 436 ......................................... 43

Okla. Stat. tit. 22, § 837 (2011) ......................................... 20

Okla. Stat. tit. 22, § 894 (2011) ......................................... 26, 27

Okla. Stat. tit. 22, § 896 (2011) ......................................... 29, 31

Okla. Stat. tit. 22, § 916 (2011) ......................................... 20

Okla. Stat. tit. 22, § 1066 (2011) .................................................. 42

Okla. Stat. tit. 37, § 8 (2011) ...................................................... 1

Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals*,
   Title 22, Ch. 18, App. (Supp. 2014) ..................................... 49

## CONSTITUTIONAL AUTHORITY

### United States Constitutional Authority

U.S. Const., amend. IV ......................................................... 44, 45

U.S. Const., amend. V ....................................................... 11, 17, 19

U.S. Const., amend. VI ...................................................... 26, 31, 46

U.S. Const., amend. XIV ..................................................... 11, **passim**

### Oklahoma Constitutional Authority

Okla. Const. Art. II, § 7 ................................................... 11, **passim**

Okla. Const. Art. II, § 9 ......................................................... 40

Okla. Const. Art. II, § 19 ........................................................ 26, 31

Okla. Const. Art. II, § 20 ................................................... 11, **passim**

Okla. Const. Art. II, § 21 ......................................................... 17

Okla. Const. Art. II, § 30 ........................................................ 44, 45

## OTHER AUTHORITIES

### Oklahoma Uniform Jury Instructions - Criminal

Instruction No. 2-5, OUJI-CR (2d) ......................................... 12
Instruction No. 4-64, OUJI-CR (2d) ......................................... 13
Instruction No. 4-91, OUJI-CR (2d) ......................................... 13
Instruction No. 4-144, OUJI-CR (2d) ...................................... 20, 21
Instruction No. 6-45, OUJI-CR (2d) ......................................... 13
Instruction No. 10-11, OUJI-CR (2d) ......................................... 16
.......................................................................... 29

## BRIEF OF APPELLANT

This brief is submitted on behalf of Deandre Bethel, the defendant in Tulsa County District Court, who will be referred to by name or as Appellant. Appellee will be referred to as the State or as the prosecution. Numbers in parentheses refer to page citations in the original record (O.R.), preliminary hearing (PH.Tr.), motion hearing (M.Tr.), jury trial (Tr. ) and sentencing proceeding. (S.Tr.)

## STATEMENT OF THE CASE

Appellant, Deandre Bethel was charged by Amended Information in Tulsa County Case Number CF-2012-0660, with Count 1, First Degree Felony Murder during the commission of an Robbery with a Firearm, in violation of Okla. Stat. tit. 21, § 701.7 (2011); Count 2, Robbery with a Firearm, in violation of Okla. Stat. tit. 21, § 801 (2011); Count 3, Transporting a Loaded Firearm in a Motor Vehicle, in violation of Okla. Stat. tit. 21, § 1289.13 (2011); and, Count 4, Public Intoxication, in violation of Okla. Stat. tit. 37, § 8 (2011). (O.R. 40-45, 65-72)

Mr. Bethel's jury trial was held before the Honorable James M. Caputo, District Judge, on February 4-8, 2014. Assistant District Attorneys Kali Strain and John Salmon prosecuted the case, and Steven Vincent represented Mr. Bethel. The jury found Mr. Bethel guilty on all counts and assessed punishment at life imprisonment with the possibility of parole in the Oklahoma Department of Corrections on Count 1; five (5) years imprisonment in the Oklahoma Department of Corrections on Count 2; five (5) months imprisonment in the Tulsa County jail and a $250.00 fine on Count 3, and thirty (30) days imprisonment in the Tulsa County jail and a $100.00 fine on Count 4. (O.R. 312-15) When the jury's judgment was formally imposed on March 14, 2014, the court ordered the sentences on Counts 1 and 2 to be served consecutive to each other and Counts 3 and 4 to run concurrent to each other and concurrently to Counts 1 and 2. (S.Tr. 20-21) It is from this judgment and sentence that Mr. Bethel appeals.

1

## STATEMENT OF THE FACTS

This case concerns the death of Byron Ivory, Jr., 24, on February 4, 2012. Mr. Ivory was shot multiple times shortly before 2:00 a.m., in the parking lot outside Club Pink, at 1800 South Boston Avenue, in Tulsa, Oklahoma. Emergency personnel were unable to revive Mr. Ivory and he was pronounced dead at St. John Hospital about 4 ½ hours later. (Tr. 610, 632, 752)

Earlier that evening, Mr. Ivory was hanging out with two friends, Ernest Roberts and Bradley Jarrett. (Tr. 360, 414) The men met at Mr. Roberts's apartment complex around 10:30 or 11:00 p.m. There they had a few drinks and decided to go to the Gray Snail bar on Cherry Street in Tulsa. (Tr. 361-62, 414-15) Mr. Ivory drove the group in his 2009 Chevrolet Impala. (Tr. 362, 416) At the Gray Snail, the men drank rum and beer and listened to music for several hours. (Tr. 416) Around 1:30 a.m., they decided to go to see if any of their friends were at Club Pink. They arrived shortly before the club was about to close. (Tr. 363-64, 417, 439) They drove around the parking lot looking for a parking place. The parking lot was full of cars. (Tr. 401) Mr. Ivory was driving, Mr. Roberts was in the front passenger seat, and Mr. Jarrett was in the back seat. (Tr. 364, 418) The group found a parking place next to a railing with a five-foot drop on the other side. They sat there for two or three minutes. As they were about to get out of the car, a short, thin, African American male, wearing a black or navy blue hoodie, approached the passenger side of Mr. Ivory's vehicle. (Tr. 366-67, 378, 380-81, 419, 423-24, 443) Mr. Roberts estimated the man was approximately 5'6" or 5'8". (Tr. 380) Mr. Jarrett thought he was approximately 5'5". (Tr. 441) Mr. Roberts noticed the man had a "chin strap" which he explained was sideburns connected to a beard, with no mustache. (Tr. 366, 381) According to Mr. Jarrett, the man was staggering like he was drunk. (Tr. 419)

Mr. Roberts's car door was open and his right foot was out of the car. The man asked Mr. Roberts, "Do I know you?" (Tr. 366, 392, 420) Mr. Roberts replied,

2

"I don't know." (Tr. 367, 420) Mr. Ivory said "hurry up, ya'll, let's get out of here." (Tr. 468) The man put a gun to Mr. Roberts's right side. Mr. Roberts was scared and thought he was being robbed. He got out of the car, raised his hands, and asked the man if he would like his cell phone and wallet. The man answered, "Yes." (Tr. 368, 370, 392) Mr. Roberts handed him these items. Mr. Roberts clarified that the man never made any demands or any comments, Mr. Roberts just assumed he was being robbed. (Tr. 384)

Mr. Jarrett saw a car parked directly behind Mr. Ivory's Impala. It was a silver or white four-door sedan. (Tr. 424, 471) The vehicle's headlights were shining directly into his eyes. (Tr. 424) He noticed a person standing outside that vehicle, on the driver's side. (Tr. 421, 445-47) The man was tall and African American. (Tr. 423, 448) Mr. Jarrett could not see whether the man had a firearm. (Tr. 443)

While the gunman's attention was diverted, Mr. Jarrett jumped out of the back seat and ran. (Tr. 371-72, 384, 425) He heard multiple gunshots. (Tr. 425) Once Mr. Roberts handed over his possessions, he jumped over the rail and also fled. Mr. Roberts was unsure whether Mr. Ivory was standing outside the car on the driver's side or if he was still in the car when the incident occurred. (Tr. 368, 371) As Mr. Roberts was running away, he thought he heard Mr. Ivory struggling with someone. He heard what he described as "rustling" sounds. (Tr. 373, 383)

Mr. Roberts ran to Club Pink, which was about 20 yards away. After he took two or three steps, he heard between five and ten gunshots. (Tr. 373, 387) Mr. Roberts told one of the security guards at Club Pink that he had been robbed. (Tr. 390) He reunited with Mr. Jarrett at Club Pink. Mr. Jarrett was not wearing any shoes. He said his black Nike tennis shoes had fallen off while he was running away. (Tr. 395, 425, 453; State's Exs. 58-60) The two men were shocked and scared and wanted to get out of the area. They saw a friend at the club and asked for a ride to Mr. Roberts's apartment. (Tr. 375-76, 429, 459) From there, the two decided to go

3

to Mr. Roberts's parents' house in Bartlesville, arriving around 3:00 a.m. They tried calling Mr. Ivory several times on the way but could never reach him. (Tr. 376-77, 378, 402, 428, 456) Around 8:30 or 9:00 a.m. that morning, they received a call from a Tulsa Police Detective informing them that Mr. Ivory had died. The two men returned to Tulsa to talk to detectives about the homicide. (Tr. 432, 461)

Justin David White, and Clayton Lee Ayers, firemen with the City of Tulsa, were at Station Five, their duty station, located at 18th and Boston on February 4, 2012. Between 1:30 a.m. and 2:00 a.m., the two men heard shots fired in the parking lot west of the fire station, near Spirit Bank. (Tr. 479, 501) Mr. White estimated he heard between nine and twelve gunshots. (Tr. 479, 495) Mr. Ayers thought there were six or seven shots. (Tr. 504) The two men said they ducked behind their fire truck when they heard the shots. (Tr. 479, 505)

Mr. White testified he saw a white, four-door, Chevrolet Cobalt leaving the area where the shots were fired at a high rate of speed. (Tr. 481, 488) He identified States's Exhibit 3 as similar to the vehicle he saw that evening. (Tr. 485) He noticed the rear driver's side door of the vehicle was open and an individual was getting into the moving vehicle as it was driving off. Mr. White could not tell the race or gender of this person. (Tr. 488-89, 515) He testified there were no distinguishing marks on the car, such as decals or dents. (Tr. 486)

The white car came out of the parking lot directly to the west of the station, turned south on Boston, and then went west when it reached 21st street. (Tr. 486, 491, 507) Both men saw another darker colored vehicle rapidly leaving the area in the same direction as the first vehicle, but were not sure whether that vehicle was associated with the incident. (Tr. 490, 498, 508) At the time of the gunshots, there were approximately 30 or 40 people leaving the bars in the area. (Tr. 496, 517)

Mr. White reported the gunshots to the Tulsa Police Department and went to the parking lot with Mr. Ayers. (Tr. 482-83, 506-07) They saw two people

4

standing near a large, black, male lying facedown between two vehicles at the north end of the parking lot. (Tr. 483, 509, 519)  Mr. Ayers raised the man's shirt and observed three or four gunshots wounds. The victim was still breathing but was gasping for air. (Tr. 484, 509-10) Mr. White started assisting him until EMSA arrived a short time later and took over his medical care. (Tr. 484, 511)

Deandre Bethel was developed as a suspect in the shooting when he was stopped by police later that morning, around 6:00 a.m., in a white Chevrolet Cobalt which matched the description of a vehicle seen leaving the crime scene. At that time, Mr. Bethel was arrested for transporting a loaded firearm and public intoxication. The .40 caliber Smith and Wesson semiautomatic handgun taken during this arrest was later linked forensically to the crime. Tulsa Police Officer Amley Floyd testified about this arrest of Mr. Bethel. Officer Floyd was working the graveyard shift on February 4, 2012. He received a call from EMSA around 5:20 a.m., reporting that an ambulance had stopped at the intersection of Apache and Lewis and noticed an individual, who appeared to be passed out, behind the wheel of a vehicle with a gun in the passenger seat next to him. (Tr. 542, 558, 582-85)  Officer Floyd went to the intersection and saw a white, Chevy Cobalt with a paper tag. The driver did not move and the car remained parked at the intersection even though the light went through several cycles. (Tr. 543)  Officer Floyd thought the driver was intoxicated or asleep at the wheel. (Tr. 544) He could tell the car was running and there was only one person in the car. Because he had been informed there was a firearm in the car, he waited for backup to arrive. (Tr. 545) Officers Ian Adair and Charles Ramsey arrived and assisted with the stop. (Tr. 586-87)

Officer Floyd activated his lights and sirens and gave the driver of the vehicle commands over the loud speaker to place his hands up and put the vehicle in park. (Tr. 545-46) Officer Floyd said the driver lifted his head up and the vehicle proceeded through the intersection after the light turned green. (Tr. 546) The

5

vehicle began moving slowly, around five or ten miles per hour northbound. It traveled approximately 800 to 1000 feet and then stopped. (Tr. 547, 587) As the officers approached the vehicle, they could see the driver leaning over the passenger seat and reaching for the floorboard. Officer Floyd ordered the driver out of the vehicle. (Tr. 548-49, 588)

Officer Floyd and Officer Adair both identified Deandre Bethel as the driver. (Tr. 548, 588) Mr. Bethel got out of the car very slowly. Officer Floyd instructed Mr. Bethel to turn around and he made several full turns. Mr. Bethel was unsteady on his feet and staggering. As he was turning around, he kept falling over. (Tr. 551, 589) Officer Floyd placed handcuffs on Mr. Bethel. Both he and Officer Adair noticed a strong odor of alcohol coming from Mr. Bethel's person. He was slurring his speech and his eyes were bloodshot. (Tr. 551, 589) Officer Floyd gave Mr. Bethel a sobriety test, during which he observed signs of intoxication. He said Mr. Bethel was falling over during this test. Officer Floyd was concerned for his safety. (Tr. 553) Officer Floyd informed Mr. Bethel of his *Miranda* rights. Mr. Bethel asked what his charges were and Officer Floyd told him public intoxication and possession of a firearm. Mr. Bethel asked where the firearm was and Officer Floyd told him it was inside the vehicle. (Tr. 553-54) Mr. Bethel told Officer Floyd he bought the firearm because he was advised by a police officer that someone was trying to kill him and he needed a gun for protection. (Tr. 554, 601) Mr. Bethel said he thought he been at a bar until around midnight but did not remember leaving the bar or how he ended up at the traffic light at Apache and Lewis. (Tr. 554)

Officer Floyd placed Mr. Bethel under arrest and booked him for public intoxication. His breathalyzer test registered a .04, below the legal limit for DUI. (Tr. 555) Officer Floyd testified there was no doubt in his mind that Mr. Bethel was "highly under the influence of something." (Tr. 556, 562) His condition got worse even after he took the sobriety test. He was harder to wake up, and Officer Floyd

6

had to continue to lean him up against the wall. He said Mr. Bethel repeatedly asked him why was he there. (Tr. 556, 567)

Officer Stanley conducted an inventory search of the vehicle after Mr. Bethel was arrested, in accordance with police department policy. (Tr. 590, 603) A handgun magazine was located on the driver's side floorboard containing live rounds. Underneath the driver's seat, Officer Stanley found an unloaded silver and black, Smith and Wesson, .40 caliber handgun. (Tr. 559-60, 590-91, 596; State's Exhibits 7, 8) Mr. Bethel's vehicle was taken into police custody and towed to the Gilcrease Division impound lot. (Tr. 568, 592) Officer Floyd and Officer Stanley both said they did not know anything about the shooting of Byron Ivory, Jr. at that point.[1] (Tr. 568, 605)

Tulsa Police Detective Kyle Martin Ohrynowicz recorded a video of the crime scene which was admitted at trial as State's Exhibit 64. (Tr. 611) Detective Ohrynowicz narrated the video for the jury and pointed out the location of the evidence in the case, including the location of bullet fragments and cartridge casings at the scene. Most of the evidence was located between a black SUV and the victim's silver Impala. (Tr. 614-54) Detective Ohrynowicz admitted he could not determine when this evidence was left at the scene. (Tr. 654)

Terrance Higgs, a Firearm and Toolmarks Examiner with the Oklahoma State Bureau of Investigation, testified he examined State's Exhibit 8, the .40 caliber Smith and Wesson, semiautomatic pistol taken from Mr. Bethel's car, after it was submitted by the Tulsa Police Department. The pistol held 11 cartridges, ten in the magazine and one in the chamber. (Tr. 689-690) Agent Higgs determined the pistol was in working order. (Tr. 691) He compared casings, bullets and bullet fragments

---

[1] Officer Floyd revealed at trial that he had been good friends with Byron Ivory, Jr. and had gone to high school with him for four years. (Tr. 568-69)

7

collected from the scene to ones fired from the pistol. (Tr. 692) He concluded that State's Exhibits 12, 19 and 66, two shell casings and one bullet fragment, had all been fired from State's Exhibit 8. (Tr. 692-96, 886) Agent Higgs testified there were at least four separate firearms involved in the shooting: a .357/.38 special, a .45 Hi-Point, a .40 Glock or Sigma and the .40 caliber Smith and Wesson. (Tr. 715-16) His report was admitted at trial as State's Exhibit 71. (Tr. 713)

Medical Examiner Joshua Lanter testified that he conducted an autopsy of Byron Ivory, Jr., on February 12, 2012. (Tr. 751) Dr. Lanter's autopsy report and diagram were admitted at trial as State's Exhibit 73. (Tr. 754, 765) He identified ten separate gunshot wounds to Mr. Ivory's body, mostly in the torso area. (Tr. 755-61) Dr. Lanter opined that the wound to Mr. Ivory's back and lung, and the wound to his chest which involved the aorta and large bowel, could have been lethal alone. Collectively, these wounds would almost certainly have been lethal. (Tr. 762) Dr. Lanter also thought that the blood loss Mr. Ivory sustained from the remaining bullet wounds could ultimately have been lethal as well. He removed a projectile from Mr. Ivory's knee region and provided it to the police. (Tr. 763-764, 767; State's Ex. 68) Toxicology tests revealed an ethanol alcohol concentration of .06 in the victim's blood and .07 percent in the fluid of his eye. (Tr. 773) Dr. Lanter concluded that the cause Mr. Ivory's death was multiple gunshot wounds and the manner of his death was homicide. (Tr. 765)

Tulsa Police Detective Jason White testified he obtained and reviewed State's Exhibit 72, video surveillance from the Spirit Bank parking lot. He claimed he could see a four-door sedan pull up behind the victim's car approximately two-and-a-half minutes after the victim pulled into the parking space. (Tr. 791-92) He testified the video showed occupants of this vehicle approaching the victim's car, followed by a muzzle flash and then multiple individuals reentering the vehicle and two vehicles leaving the scene at a high rate of speed. (Tr. 797) One vehicle went

southbound on Boston and another went westbound on 21st street. (Tr. 798) Detective White noted that the parking lot was full of cars at this time, but not people, as it was 1:40 a.m. and the bars had not yet closed. (Tr. 798)

Detective White said he interviewed Tulsa Fireman Jason White, who told him he got a good look at one of the suspect vehicles. He described it as a white, four-door Chevy Cobalt. (Tr. 802) Detective White claimed he received information that Deandre Bethel had been involved in a disturbance at Club Pink that evening. He also learned that Mr. Bethel had been stopped and arrested in the area of Apache and Lewis in a white Chevy Cobalt. At the time of this arrest, Mr. Bethel was in possession of a firearm consistent in caliber with one used in the shooting. (Tr. 804) Detective White retrieved this firearm from the property room in order to submit it for comparison with the known evidentiary items from the scene of the shooting. (Tr. 803, 804)  He subsequently discovered that several of the casings and a bullet fragment collected from the parking lot matched the firearm taken from Mr. Bethel's vehicle during this earlier arrest. (Tr. 804-09)

On the basis of this evidence, Mr. Bethel was arrested by the warrant squad around 11:00 a.m. on December 8, 2012, and charged with the murder of Byron Ivory, Jr. (Tr. 739-42, 812) He was brought to the detective division for an interview, which was admitted at trial as State's Exhibit 74. (Tr. 818).  After being advised of his *Miranda* rights, Mr. Bethel agreed to talk to the detectives. (Tr. 814-16; State's Exhibit 75) According to Detective White, Mr. Bethel told him he did not remember anything from 8:00 p.m. until the time he was stopped by police around 5:00 a.m. He could not remember what he was wearing that evening.  (Tr. 822-23, 885) Mr. Bethel told Detective White that he bought the gun from a guy with dreads that he thought was named Rio, but Detective White claimed he was unable to corroborate

this information. (Tr. 835, 865; State's Ex. 74).[2] During the interview, Mr. Bethel's clothing was collected. His gray Carolina hoodie was admitted at trial as State's Exhibit 26, but it was never linked to the crime. (Tr. 836)

Detective White admitted he did not locate any fingerprints or DNA evidence linking Mr. Bethel to the homicide. (Tr. 892-901) He admitted police did not process the firearm to determine if any fingerprints could be linked to the person who sold the weapon to Mr. Bethel. (Tr. 901) Detective White said Mr. Roberts's wallet was recovered under the victim's body but his cell phone was never recovered. Two cell phones were located in Mr. Bethel's vehicle after his arrest but neither was Mr. Roberts's cell phone. (Tr. 923) Although Mr. Bethel's house was searched, no evidence associated with the homicide was recovered. (Tr. 926)

Deandre Bethel testified on his own behalf. He told the jury that he did not kill or rob Byron Ivory, Jr., and that he had never seen Mr. Ivory before in his life. (Tr. 979) He said he could not remember whether he was at Club Pink on the evening/morning hours of February 3-4, 2012. (Tr. 980, 987) At the time of the incident he drove a 2009 Chevy Cobalt. He purchased the vehicle on January 9, 2012, and it still had a temporary tag on February 4, 2012. (Tr. 980) He did not believe his vehicle was at or near Club Pink that night but admitted he had memory problems because he was under the influence of alcohol and had taken a Xanax bar. He said Xanax "takes you out of it" and alcohol intensifies this effect. (Tr. 981)

Mr. Bethel testified he was wearing a light-colored, button-up, collared shirt, blue-gray jeans and gray Nike shoes when he was arrested that morning. (Tr. 982) He did not remember changing his clothes at any time that evening. (Tr. 982)

Mr. Bethel said he told police he had bought this silver and black firearm

_____

[2] Detective White testified that there was a robbery reported at the Mercury Lounge across the street a few minutes before the shooting. (Tr. 914) Interestingly, one of the individuals involved in the robbery was reported to have "a beanie with some dreads hanging out." (Tr. 919)

find beyond a reasonable doubt that Mr. Bethel committed the robbery that occurred outside the Club Pink that night, or that Mr. Bethel knowingly and with criminal intent aided and abetted Deandre Williams or anyone else in committing that crime. Therefore, his convictions for the robbery and the murder predicated on that offense rest on insufficient evidence in violation of the Due Process Clause of the Fifth and Fourteenth Amendments. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Accordingly, Counts 1 and 2 must be vacated.

## PROPOSITION II

**MR. BETHEL'S CONVICTION AND SENTENCE FOR COUNT II, ROBBERY WITH A FIREARM, MUST BE VACATED BECAUSE THE SAME CHARGE SERVED AS THE UNDERLYING FELONY FOR HIS CONVICTION OF FELONY MURDER, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE II, § 21 OF THE OKLAHOMA CONSTITUTION.**

As argued in Proposition I, the conviction for First Degree Felony Murder cannot be upheld because the evidence is legally insufficient to prove Mr. Bethel guilty of the predicate felony, and thus also insufficient to prove the murder. If this Court rejects this argument and upholds the conviction for First Degree Felony Murder on Count 1, then the Double Jeopardy Clauses of the federal and state constitutions require that the predicate felony, Robbery with a Firearm, be vacated. U.S. Const. amend. V; Okla. Const. art. 2, § 21; *see also* Okla. Stat. tit. 21, § 11 (2011).

The State charged Mr. Bethel in Count 1 of the Amended Information with First Degree Felony Murder as follows:

DEANDRE BETHEL and DEANDRE ARMON WILLIAMS, on or about 2/4/2012, in Tulsa County, State of Oklahoma and within the jurisdiction of this Court, did commit the crime of FELONY MURDER-FIRST DEGREE, a Felony, by unlawfully, feloniously, and willfully while acting in concert each with the other and with other unknown individuals and during the commission of an attempted robbery with a firearm of Byron James Ivory Jr., Ernest Jordan Roberts and Bradley Jarrett w/a firearm, without authority of law, effect the death of Byron James Ivory Jr. by shooting him then and there and thereby inflicting certain mortal wounds in the body of said Byron James Ivory Jr. from which mortal wounds the same Byron James Ivory Jr. did

17

languish and die on the 4th day of February 2012,

(O.R. 129) Mr. Bethel was convicted at trial of First Degree Felony Murder as alleged in Count 1. (O.R. 312; Tr. 1063-64) The underlying felony of Robbery with a Firearm alleged in Count I was the identical robbery that was independently charged in Count II of the Amended Information:

> DEANDRE BETHEL and DEANDRE ARMON WILLIAMS, on or about 2/4/2012, in Tulsa County, State of Oklahoma and within the jurisdiction of this Court, did commit the crime of ROBBERY WITH A FIREARM, a Felony, by unlawfully, feloniously, and wrongfully, while acting in concert each with the other and with other unknown individuals, rob one Byron James Ivory Jr., Ernest Jordan Roberts, and Bradley Jarrett by wrongfully taking and carrying away certain personal, to-wit: money and cell phones, belonging to Byron James Ivory Jr., Ernest Jordan Roberts, and Bradley Jarrett and in the possession of said Byron James Ivory Jr., Ernest Jordan Roberts, and Bradley Jarrett, and in their immediate presence, without their consent and against their will, said robbery being accomplished by said defendants with the use of a certain firearm, to-wit: handguns, and which they used to menace and threaten the said Byron James Ivory Jr., Ernest Jordan Roberts, and Bradley Jarrett with harm if they resisted, and by said assault, threats and menace, did then and there put the said Byron James Ivory Jr., Ernest Jordan Roberts, and Bradley Jarrett in fear of immediate and unlawful injury to their person and overcame all their resistance, and while so intimidating them, did then and there wrongfully take and obtain from them the personal property and money aforesaid,

(O.R. 129) In addition to being found guilty and receiving a sentence of life with the possibility of parole for the felony murder in the course of a robbery with a firearm, Mr. Bethel was convicted separately of this same robbery as to these same victims and sentenced to five (5) years imprisonment. (O.R. 313; Tr. 1063-64)

Whether Mr. Bethel's convictions for both First Degree Felony Murder and Robbery with a Firearm violate the prohibition against double punishment is a question of law which this Court reviews *de novo*. *Coffia v. State*, 2008 OK CR 24, 191 P.3d 594, 596. "Issues of law are reviewable by a *de novo* standard and an appellate court claims for itself plenary independent and non-deferential authority to reexamine a trial court's legal rulings." *Kluver v. Weatherford Hosp. Auth.*, 859 P.2d 1081, 1084 (Okla. 1993) (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991)).

Clearly, the predicate felony of Robbery with a Firearm as to these three victims merged into the proof required for Mr. Bethel's conviction of First Degree Felony Murder. The Double Jeopardy Clause prohibits convictions for felony murder and the underlying felony. *See Harris v. Oklahoma*, 433 U.S. 682, 382-83, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977); *Whalen v. United States*, 445 U.S. 684, 693-94, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). Where proof of the felony is a necessary element of the felony murder, the offense is the same, and the defendant cannot be punished for both. *Id.* at 694. The appropriate remedy is to vacate the conviction for the underlying felony. *See Perry v. State*, 1993 OK CR 5, 853 P.2d 198, 200-01 (vacating conviction for robbery where defendant was convicted of robbery and felony murder on the basis of that robbery because convictions for both violated double jeopardy); *Jefferson v. State*, 1984 OK CR 27, 675 P.2d 443, 447 (same); *Stiles v. State*, 1992 OK CR 23, 829 P.2d 984, 995 (same). Counts 1 and 2 both alleged the same actions against the same victims. Because Count 2 was the predicate felony for the conviction on Count 1, this Court must order the conviction for Robbery with a Firearm dismissed as it is wholly subsumed by the Felony Murder conviction.

## PROPOSITION III

**THE TRIAL COURT COMMITTED FUNDAMENTAL ERROR BY FAILING TO INSTRUCT THE JURY ON THE LESSER OFFENSES OF SECOND DEGREE DEPRAVED MIND MURDER, SECOND DEGREE FELONY MURDER, AND ACCESSORY AFTER THE FACT, IN VIOLATION OF MR. BETHEL'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE II, §§ 7 AND 20 OF THE OKLAHOMA CONSTITUTION.**

Mr. Bethel was convicted of First Degree Felony Murder and sentenced to life imprisonment with the possibility of parole. (O.R. 312, 376-77; Tr. 1063) The jury was given no options other than guilt or innocence for First Degree Murder because the trial court did not provide the jury with instructions on any lesser offenses. Although Mr. Bethel argued in Proposition I that the evidence was insufficient as a matter of law to sustain the conviction, he alternatively submits that in the event

this Court finds the evidence sufficient, the evidence also was sufficient to warrant lesser related offense instructions.

Oklahoma statutes authorize instructions on lesser offenses when appropriate. Okla. Stat. tit. 22, §§ 837, 916 (2011). When one is charged with First Degree Murder, all lesser forms of homicide are necessarily included and instructions on lesser forms of homicide should be given if they are supported by the evidence. *Childress v. State,* 2000 OK CR 10, 1 P.3d 1006, 1101-02. Moreover, where there is any evidence tending to reduce the crime charged from murder to a lesser degree of homicide, the trial court should give the defendant the benefit of the doubt and instruct the jury on the lesser offense. *Tarter v. State,* 1961 OK CR 18, 359 P.2d 596, 597.

Prior to closing arguments, the trial court asked defense counsel if he had any proposed instructions. Counsel offered no proposed lesser offense instructions. (Tr. 1000-01) Despite this lapse in representation, which is the subject of a claim of ineffective assistance of counsel in Proposition X, under Oklahoma law the trial court had an absolute duty to instruct the jury on any lesser included offense supported by the evidence, whether requested or not. *See Stanley v. State,* 1988 OK CR 151, 762 P.2d 946, 949; *Walton v. State,* 1987 OK CR 227, 744 P.2d 977, 978; *Williams v. State,* 1973 OK CR 354, 513 P.2d 335, 339; *Tarter v. State,* 1961 OK CR 18, 359 P.2d 596, 597, 600-601. The following lesser offenses were supported by the evidence and the jury should have received instructions on each of these offenses.

A.    Second Degree Depraved Mind Murder.

The evidence as presented to the jury supported the lesser offense of Second Degree Depraved Mind Murder under Okla. Stat. tit. 21, § 701.8 (1) (2011). There are two elements to this crime: first, that the conduct was "imminently dangerous to another person," and second, that the conduct "evinced a depraved mind in extreme indifference to human life." OUJI-CR (2d) 4-91. A person evinces a

"depraved mind" when he engages in imminently dangerous conduct with contemptuous and reckless disregard of, and in total indifference to, the life and safety of another. "Imminently dangerous conduct" means conduct that creates what a reasonable person would realize as an immediate and extremely high degree of risk to another person. Instruction No. 4-91, OUJI-CR (2d); *Palmer v. State*, 1994 OK CR 16, 871 P.2d 429, 432-33, *overruled on other grounds by Willingham v. State*, 1997 OK CR 62, 947 P.2d 1074.

Oklahoma law has long required that for conduct to evince a depraved mind, it must be done with a conscious disregard of the obvious danger to others. *See Jewell v. Territory*, 1896 OK 16, 43 P. 1075, 1082. The act or conduct must be "calculated" to put life in jeopardy and "perpetrated with the full consciousness of the probable consequences." *Massie v. State*, 1976 OK CR 174, 553 P.2d 186, 191; *see also Palmer v. State*, 871 P.2d at 432-33. The examples of conduct evincing a depraved mind – firing a gun into a crowd of people, poisoning a public water well, derailing a speeding train, blowing up a building that the person knows to be occupied – all have one common fact that distinguishes them from lesser degrees of homicide. *Jewell v. Territory*, 43 P. at 1078. That fact, as this Court stated in *Dennis v. State*, 1977 OK CR 83, 561 P.2d 88, 95, is that "death to someone is so probable that the law will infer an intent."

An instruction on this offense would have allowed the jury to find that although Mr. Bethel may not have intended to kill Mr. Ivory, his decision to participate in a robbery when armed participants were involved and weapons were discharged in an area full of people was an act imminently dangerous to Mr. Ivory and other people in the vicinity, and evinced a depraved mind regardless of human life. *See Palmer v. State*, 871 P.2d at 431-433; *Breshers v. State*, 1977 OK CR 331, 572 P.2d 561, 563-565, 568. Shooting into a crowd of people is a classic example of depraved indifference to human life, the defining element of this form of Second

Degree Murder. *See, e.g., Woods v. State*, 602 So.2d 1210, 1212-13 (Ala. Crim. App. 1992); *Neitzel v. State*, 655 P.2d 325, 327 (Alaska App. 1982); *Humphries v. State*, 18 So.3d 305, 309 (Miss. Ct. App. 2009).

Mr. Bethel was entitled to have Second Degree Depraved Mind Murder considered by his jury, and was deprived of this entitlement. A rational jury could have inferred from the evidence presented that Mr. Bethel acted not with an intent to kill but with a depraved mind, evidenced by imminently dangerous conduct. If the jury had been instructed on Second Degree Murder, Mr. Bethel would have faced different elements of proof, as well as different punishment ranges. The punishment range for Second Degree Murder is ten (10) years to life imprisonment. Okla. Stat. tit. 21, § 701.9 (B) (2011). When the jury was not instructed upon Second Degree Murder, it was denied the ability to consider the evidence and the actions of Mr. Bethel as to this critical lesser offense. Accordingly, his conviction must be reversed for a new trial.

### B. Second Degree Murder with Robbery by Force and Fear as the Underlying Felony.

Oklahoma's Second Degree Felony murder doctrine is set forth in Okla. Stat. tit. 21, § 701.8 (2011) which states "Homicide is murder in the second degree in the following cases: 2. When perpetrated by a person engaged in the commission of any felony other than the unlawful acts set out in Section 1, subsection B, of this act." Section 701.8(2) is felony murder when the underlying felony is any felony other than those enumerated in section 701.7(B). In the instant case, the evidence would have permitted the jury to find Mr. Bethel guilty of the underlying felony of First Degree Robbery, Okla. Stat. tit. 21, § 791, *et seq.* Section 791 defines robbery as the wrongful taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear. Section 797(1) specifies that robbery will be of the first degree when, during

22

the course of the robbery, the defendant inflicts serious bodily injury upon the person. Oklahoma defines Robbery by Force or Fear as "a wrongful taking of personal property in the possession of another, from his person or his immediate presence, and against his will, accomplished by means of force or fear." Okla. Stat. tit. 21, § 791 (2011).

The State's theory was that Mr. Bethel was with a group of individuals who attempted to take money and/or property from Byron Ivory, Ernest Jordan and Bradley Jarrett by force or fear by ambushing them in the parking lot. If the jury chose to believe Mr. Bethel was a participant but did not shoot or brandish a gun that evening, it could have found him guilty of this form of robbery.

Another possible underlying felony for an instruction on Second Degree Felony Murder could have been premised on the felony of Assault with a Dangerous Weapon or Aggravated Assault and Battery pursuant to Okla. Stat. tit. 21, §§ 645 and 646(A)(1)(2011). If the jury chose to believe Mr. Bethel fired a weapon at the other occupants of the car, he could be found guilty of Second Degree Felony Murder using one of these felonies as the underlying crime.[7]

Second Degree Murder is punishable by a sentence of not less than ten years nor more than life. Okla. Stat. tit. 21, § 701.9 (B). Had the jury been instructed on lesser related offenses, and convicted Mr. Bethel on any of them, he would have faced a punishment potentially less than he faced on the First Degree Murder charge. Mr. Bethel submits that this was fundamental error and warrants plain error review. Neglecting to instruct the jury on the appropriate lesser related offenses constituted a serious violation of due process of law and deprived Mr. Bethel of rights essential to his defense. *Hicks v. Oklahoma*, 447 U.S. 343, 345-346, 100 S.Ct. 2227, 2229-30, 65 L.Ed.2d 175 (1980)(holding that an arbitrary denial of

---

[7]   With the demise of the merger rule, there would be no impediment to the use of these crimes as the underlying felony. *See Barnett v. State*, 2011 OK CR 28, 263 P.3d 959.

rights provided by State law, in that case the right to have the jury decide punishment, is a violation of due process of law); *Simpson v. State*, 1994 OK CR 40, 876 P.2d 690, 695.

## C. Accessory.

Clearly, Appellant's theory of defense was that he was not involved in the alleged robbery or the resulting homicide, but the evidence could supported the argument that he was at least an Accessory After the Fact. In order to be guilty of being an Accessory, the accused must "conceal or aid the offender with knowledge that he [the offender] has committed a felony, and with such intent that he may avoid or escape from arrest, trial, conviction, and, or punishment. . ." Okla. Stat. tit. 21, § 173 (2011). Under the facts of this case, a reasonable jury could have doubted whether Mr. Bethel was indeed "a willing participant in this robbery" and concluded that he had aided Mr. Williams or others, knowing they had just committed a felony and with an intent to help them avoid arrest and prosecution. Given Mr. Bethel's possession of a weapon associated with the homicide and a vehicle matching the description of one of the getaway cars after the crime had been committed, there is ample evidence supporting an instruction on this offense and the jury should have been so instructed.[8] Accessory After the Fact to First Degree Murder is a very serious crime carrying a range of punishment from five (5) to forty-five (45) years. Okla. Stat. tit. 21, § 175 (5) (2011). If the jury had been instructed on this offense, it could have found Mr. Bethel of a serious felony and sentenced him to imprisonment for his connection to the murder without having to impose a minimum life sentence. Instructions on Accessory would have provided a third alternative, but instead the jury was forced to chose between a conviction for Murder in the First Degree or out right acquittal for a homicide. Given only the

---

[8] An instruction on the lesser related offense of Accessory can be appropriate in a murder case. *See Glossip v. State*, 2001 OK CR 21, 29 P.3d 597.

choice between finding him guilty of an offense the State did not prove or letting him go free despite his involvement, the jury opted for the former, although it clearly struggled with this decision as the jury deliberated well into the early morning hours. (Tr. 1056-63) The realization that juries will do this is why instructions on lesser offenses must be given. *See, e.g., Keeble v. United States*, 412 U.S. 206, 212-13, 93 S.Ct. 1993, 1998, 36 L.Ed.2d 844 (1973).

By failing to request instructions on Accessory as a lesser related offense, trial counsel waived for Appellant all but plain or fundamental error.[9] *Williams v. State*, 2001 OK CR 9, 22 P.3d 702, 713. Fundamental error is error that goes to the foundation of the case or takes from a defendant a right essential to his defense. *See Simpson v. State*, 1994 OK CR 40, 876 P.2d 690, 695 (citing, *inter alia, Rea v. State* 3 Okl.Cr. 281, 105 P. 386 (1909) (Syllabus 2(c))). Appellant submits that under the facts in this case, the failure to provide instructions on Accessory both went to the foundation of the case *and* took from Appellant a right essential to his defense. As this Court has recognized, "The people of this State are, in the most literal sense, a party to every criminal prosecution. The public has an undeniable interest in seeing that offenders are *appropriately* punished for their crimes." *McHam v. State*, 2005 OK CR 28, 126 P.3d 662, 669 (emphasis added). The jury could not determine the appropriate punishment for Mr. Bethel without correctly assessing the crime of which he was guilty. Because the instructions prevented the jury from making an accurate assessment of Appellant's guilt, his convictions must be reversed.

---

[9] In Proposition X, Appellant claims that trial counsel was constitutionally ineffective for failing to request such an instruction.

## PROPOSITION IV

**THE TRIAL COURT ERRED IN FAILING TO COMPLY WITH THE LAW GOVERNING CONTACT WITH JURORS DURING DELIBERATIONS AND BY FAILING TO ADVISE DEADLOCKED JURORS NOT TO SURRENDER THEIR HONEST CONVICTIONS CONCERNING THE WEIGHT OF THE EVIDENCE IN ORDER TO REACH A VERDICT, IN VIOLATION OF OKLA. STAT. TIT. 22, § 894 AND MR. BETHEL'S RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE II, §§ 7, 19 AND 20 OF THE OKLAHOMA CONSTITUTION.**

The trial court handled questions during jury deliberations in a manner contrary to the clear command of statute and directives by this Court. The law dictates that prejudice be presumed, and the facts of this case do not overcome that presumption. Accordingly, Mr. Bethel's convictions must be overturned.

After the jury retired to deliberate Mr. Bethel's fate at 6:04 p.m., they sent out four separate notes to the trial court. (Tr. 1056) At 7:20 p.m., the jury sent out its first note requesting a DVD player and a television. (Tr. 1062) Apparently, the trial court never saw this note as it was given directly to the bailiff, who provided the jury with a television and DVD player. (Tr. 1062) At 11:06 p.m., the jury sent a second note, which contained two questions: (1) "What should we do if we can not come to a unanimus (sic) decision?", and (2) "If we have unanimus (sic) decisions on some counts – how do we proceed?" (Tr. 1059; Court's Exhibit)[10] The trial court responded in writing at 11:30 p.m., telling the jury, "Please continue to deliberate on those counts which you have not yet reached a unanimous decision." (Tr. 1060; Court's Exhibit) At 12:14 a.m., the trial court received another note from the jury that said, "Can the court contact family members of the jury and let them know we are ok and still on duty?" (Tr. 1060; Court's Exhibit) The trial court again responded in writing, informing the jury that "You were all advised to alert your families that you would be in deliberations until complete." (Tr. 1060; Court's

---

[10] Although the trial court included these notes as part of the record on appeal, he did not designate a particular Court's Exhibit number for each note.

Exhibit) The trial court later told counsel that he did not notify the parties about this note because he did not believe it was anything "germane" to the facts of the case. (Tr. 1060-61) The jury sent a final note at 12:55 a.m., indicating it had "reached our verdicts." (Tr. 1061; Court's Exhibit)

The trial court erred in his handling of the jury's questions. First, he failed to bring the jury back into the courtroom on each of the notes. The Oklahoma Legislature has mandated how jury questions are to be handled procedurally. If jurors have a question on a point of law during deliberations, the trial court is required to inform counsel and to bring the jury back into the courtroom to give them further information. *Mitchell v. State*, 2011 OK CR 26, ¶ 130, 270 P.3d 160; *see also Rogers v. United States*, 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975); *Shields v. United States*, 273 U.S. 583, 585, 588, 47 S.Ct. 478, 71 L.Ed. 787 (1927). Oklahoma law requires:

> After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony or if they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to the district attorney and the defendant or his counsel, or after they have been called.

Okla. Stat. tit. 22, § 894 (2011). Here, however, the trial court failed to follow Section 894's mandate. There is no evidence that the jury was brought back into open court for any of the questions. Further, as to the note at 12:14 a.m. in which jurors asked if they could contact their family members, the trial court admitted he did not inform or consult counsel about this jury question. (Tr. 1060-61)

Mr. Bethel had a right to assume that any communication with the jury would be made in open court and that he would have an opportunity to be heard. His rights to counsel and due process were violated by the trial court's communication with the jury outside of the courtroom and without the presence of Mr. Bethel or his attorney as to this particular question. *See Smith v. State*, 2007 OK CR 16, ¶¶ 50-52,

157 P.3d 1155 (finding district court erred in providing written answers to the jury's questions without first consulting with counsel and then bringing the jury into open court to answer the questions).

It is true that counsel was notified and asked to respond to the jury's note at 11:06 p.m., which contained two questions: (1) "What should we do if we can not come to a unanimus (sic) decision?", and (2) "If we have unanimus (sic) decisions on some counts – how do we proceed?" (Tr. 1059; Court's Exhibit)  Unfortunately, counsel acquiesced in the Court's response to continue deliberating. (Tr. 1060; Court's Exhibit)  Trial counsel should have objected to the court's directive and his failure to adequately protect the record is addressed in a separate claim of ineffective assistance of counsel in Proposition X.  Nonetheless, the trial court committed fundamental error by deviating from settled law on how to respond when a jury indicates it is at an impasse. The trial judge failed to follow any of the prescribed procedures. Rather than bringing the jury back into the courtroom, the judge sent written a response to the jury. Had the response been appropriate, the judge's failure to follow Section 894 probably would have been harmless. *See, e.g., Givens v. State*, 1985 OK CR 104, 705 P.2d 1139, 1140-41. However, his response to this question was not only inappropriate, it was coercive.

The complete and correct answer to the jury's question about unanimity was two-fold: a not guilty verdict must be unanimous, and if jurors could not reach a unanimous verdict, a mistrial would be declared. Rather than telling the jury this, however, the judge responded, "Please continue to deliberate on those counts which you have not yet reached a unanimous decision." (Tr. 1060)  The judge's response was coercive, especially to jurors who were in the minority, because it indicated there was no way for the trial to conclude other than by unanimous verdicts.

This Court has held that when jurors indicate they are at an impasse in

28

deliberations, the trial judge can call the jury back into the courtroom and ask if jurors think further deliberations would be helpful. If jurors indicate they might be able to reach a verdict with further deliberations, the court can ask them to continue deliberating. *See Higgins v. State*, 1972 OK CR 16, ¶ 23, 493 P.2d 1121; *Sutton v. State*, 1988 OK CR 158, ¶¶ 12-13, 759 P.2d 235, 237. If the jurors advise that further deliberations would not be fruitful, the judge can declare a mistrial. Okla. Stat. tit. 22, § 896 (2011).

Alternatively, the Court can simply give the jury the carefully-crafted *Allen* instruction[11] approved by this Court. *See* Instruction No. 10-11, OUJI-CR (2d), which derives from the "model of fairness" instruction approved in *Pickens v. State*, 1979 OK CR 99, ¶¶ 10-11, 600 P.2d 356, 358-59; *accord Thomas v. State*, 1987 OK CR 113, ¶ 21, 741 P.2d 482, 488. Indispensable to such an instruction is making clear that the request for the jury to continue deliberating and to try reaching a verdict "does not mean that those favoring any particular position should surrender their honest convictions as to the weight or effect of any evidence solely because of the opinion of other jurors or because of the importance of arriving at a decision." Instruction No. 10-11, OUJI-CR (2d ed.).

Jurors must be admonished that "[n]o juror should ever agree to a verdict that is contrary to the law in the court's instructions, nor find a fact or concur in a verdict which in good conscience he or she believes to be untrue." *Id.*; *Hooks v. State*, 2001 OK CR 1, ¶ 26, 19 P.3d 294 (noting well-settled law indicates that exhorting jurors not to abandon their honestly held beliefs is necessary whenever a deadlocked jury is returned to deliberations), *abrogated on other grounds by Warner v. State*, 2006 OK CR 40, 144 P.3d 838; *see also Sartin v. State*, 1981 OK CR 157, ¶ 7, 637 P.2d 897, 898; *Drew v. State*, 1989 OK CR 1, ¶ 19, 771 P.2d 224, 229;

---

[11] An *Allen* instruction derives its name from jury instructions approved by the Supreme Court in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

*accord Brogie v. State*, 1985 OK CR 2, ¶ 30, 695 P.2d 538, 545 (holding that asking the jury to arrive at a verdict is not coercive if jurors are cautioned not to surrender honest convictions just to reach a verdict). An *Allen* instruction will not be upheld if it does not tell jurors they have a right to hold to their honest convictions. *Miles v. State*, 1979 OK CR 116, ¶¶ 5-6, 602 P.2d 227.

This Court's insistence that special care be taken to prevent coercion of a verdict is consistent with Supreme Court precedent requiring the same of courts over which it has supervisory powers. As is the case with state judges in Oklahoma, a federal judge cannot tell the jury it must reach a unanimous decision or emphasize the importance of reaching a unanimous verdict without also emphasizing that no juror should surrender his honest conviction or concur in a verdict he believes is untrue solely because of the opinions of other jurors or because of the importance of arriving at a decision. *Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965) (*per curiam*); *United States v. United States Gypsum Co.*, 438 U.S. 422, 459-62, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978).

In *Jenkins*, after the jury deliberated for two hours, it sent out a note to the trial judge advising that it had been unable to agree upon a verdict. The judge brought the jury into the courtroom and told them, "You have got to reach a decision in this case." *Jenkins*, 380 U.S. at 446. The Supreme Court held that the judge's statement had a coercive effect on the jury and thus reversed the conviction for a new trial. *Id.*

In our case, directing the jury that what they should do in the event of being hung is to "please continue to deliberate" was the functional equivalent of telling the jury it had to reach a verdict. As this Court requires, the judge should have either (1) asked jurors if further deliberations would be helpful and directed them continue deliberations only if jurors agreed doing so would be fruitful, or (2) given an *Allen* charge, explaining the importance of reaching unanimous verdicts if

30

possible and encouraging jurors to listen to each other's views but admonishing them not to surrender honestly held opinions just to reach a unanimous verdict. Simply ordering the jury to continue deliberating indicated the only way for the trial to conclude was with unanimous verdicts. This, of course, is contrary to Okla. Stat. tit. 22, § 896 (2011), which allows a mistrial to be declared where the jury is unable to reach a verdict.

As to the question about whether the court would contact their families, the court failed to give the jurors any indication of how late into the night they would be required to deliberate and failed to alleviate their concerns about contacting family members. (Tr. 1059-61). When the judge refused the request to contact their family members it was clear to the jurors that reaching a unanimous decision was the only way they could go home. Unsurprisingly, at 12:55 a.m., the jurors reached a verdict. (Tr. 1061) It is a reasonable inference that jurors felt coerced and made compromises just to go home. It is hard to believe that this verdict, rendered approximately 40 minutes after jurors were told they could not contact their family members, was the result of legitimate deliberations rather than pressure on the minority jurors to end the deadlock.

Where, as here, the judge communicates with the jury after deliberations have begun, prejudice is presumed. *Mitchell v. State*, 2011 OK CR 26, ¶ 130. A violation of Section 894 can be harmless, but only if the Court is convinced, on the face of the record, that there was no prejudice to the defendant. *See id.; Smith*, 2007 OK CR 16, ¶ 52. In this case, the nature of the judge's communication with the jury does not permit that conclusion. Further, the court's response to the jury's question regarding unanimity deprived Mr. Bethel of his right to a fair trial and unanimous verdicts under the Sixth and Fourteenth Amendments to the United States Constitution and Article II, § 19 of the Oklahoma Constitution. Therefore this Court must reverse and remand this case for a new trial.

31

# PROPOSITION V

**MR. BETHEL'S TRIAL WAS RENDERED FUNDAMENTALLY UNFAIR BY THE ADMISSION OF IMPROPER LAW ENFORCEMENT OPINION TESTIMONY THAT INVADED THE PROVINCE OF THE JURY IN VIOLATION OF HIS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE II, §§ 7 AND 20 OF THE OKLAHOMA CONSTITUTION.**

Law enforcement officers, by virtue of their positions, rightfully bring with their testimony an air of authority and legitimacy. A jury is inclined to give great weight to their opinions. *See Gianfrancisco v. State*, 570 So.2d 337, 338 (Fla. App. 1990). Thus, particularly when the testifying officer is the "case agent," special attention must be paid to the officer's "expert" opinion testimony to ensure that it falls within the permissible range of opinion testimony. *See, e.g., United States v. Espinosa*, 827 F.2d 604, 613 (9th Cir. 1987); *United States v. Brown*, 776 F.2d 397, 401 & n.6 (2nd Cir. 1985); *Commonwealth v. Kitchen*, 730 A.2d 513, 521-22 (Pa. 1999); *Maben v. Lee*, 1953 OK CR 139, 260 P.2d 1064, 1067.

Tulsa Police Detective Jason White was the "case agent" in this case and testified at length regarding his investigation of this crime. (Tr. 4) In the process, Detective White's testimony clearly overstepped permissible bounds on numerous occasions. Detective White's testimony was used by the prosecution to reiterate the same evidence presented by other witnesses, but with the imprimatur of Detective White's expertise, skill and persuasiveness as a professional witness. The prosecutor improperly used Detective White to vouch for the integrity of the investigation by reviewing and commenting on the evidence. The prosecutor also improperly used the direct examination of Detective White to marshal the facts and provide the jury with his own personal opinion about the credibility of the State's witnesses and his theory of the case. Much of Detective White's testimony was unnecessarily cumulative, speculative and more prejudicial than probative. As such, this testimony should have been excluded.

32

During direct examination, Detective White was allowed to rehash the details of his investigation for the jury even though this information had already been presented to the jury through other witnesses. Detective White testified he contacted Tulsa Police Detective Vic Regalado with information regarding the ballistics report on the gun taken from Mr. Bethel's vehicle. Over defense counsel's objection, Detective White rehashed these facts for the jury, including that the "gun was a match" to casings and a bullet fragment found at the scene. (Tr. 810-11) He then recounted what he told Terrance Higgs, OSBI firearm examiner, when he dropped off the firearm in question to be tested. (Tr. 811) Detective White also told the jury that he had received information Deandre Bethel was at Club Pink that night, even though there was no evidence of this in the record. (Tr. 810)

Detective White was then allowed to recount details of his interview with Mr. Bethel, even though this interview, State's Exhibit 74, was played in its entirety for the jury. Detective White highlighted the things he wanted the jury to focus on. (Tr. 817-25) He told the jury he did not believe the stories Mr. Bethel told him were consistent with each other and recounted these alleged inconsistencies for the jury. (Tr. 822-25) Defense counsel objected, arguing the actual interview was the best evidence. The trial court warned the prosecutor to move on, stating, "we don't need this officer to testify and tell us everything we're going to see and then we have to see it." (Tr. 823, 824) Despite this warning, the prosecutor asked Detective White to continue to rehash the interview with Mr. Bethel and he did so. (Tr. 824)

Detective White was asked to comment on what concerned him about Mr. Bethel's story in the video interview. He claimed Mr. Bethel was unable to provide him with details he could corroborate. He said the time frames Mr. Bethel provided raised "red flags" to him. (Tr. 824) Detective White was asked to identify other red flags raised during the interview. He recounted a portion of the interview where he had asked Mr. Bethel about the gun and how he obtained it. He gave the jury

33

details about how he did not find Mr. Bethel's explanation plausible. (Tr. 825) Defense counsel renewed his objection, arguing Detective White was bolstering the State's case by reiterating details in the video and giving his personal opinions on Mr. Bethel's veracity when the interview itself was the best evidence. (Tr. 825) The trial court overruled the objection. (Tr. 825) Detective White continued to recount the questions he asked of Mr. Bethel and his opinion Mr. Bethel was being evasive and deceptive in his answers. The trial court finally sustained the objection. (Tr. 825) The videotape was then played for the jury. (Tr. 826; State's Exhibit 74)[12]

Following the presentation of the video, Detective White resumed his improper narrative of the State's case. (Tr. 827) The prosecutor asked Detective White to relate information on several phone calls recorded while Mr. Bethel was being held in the Tulsa County Jail. (Tr. 841; State's Exhibit 76) Defense counsel objected to Detective White's commentary, again arguing the tapes "speak for themselves." (Tr. 842) Counsel complained that Detective White was "talking about what was happening on the calls prior to the jury having an opportunity to listen to them." (Tr. 843) Counsel's objections were overruled and Detective White proceeded to give the jury his opinion on the meaning of some of the conversations occurring during the phone calls. (Tr. 842, 843) He was again asked to identify his concerns and any red flags he noted during the phone calls.

The taped phone calls were then played for the jury. At the conclusion of each call, Detective White was asked give a synopsis of what he found important and identify any "red flags" raised related to his investigation. (Tr. 850) As to the first call, Detective White opined that the meaning of the term "burner" was a street term for a gun, specifically one that may have been used to commit a crime.

---

[12]     Unfortunately there is no transcript of the videotape since both parties waived the recording on the record. (Tr. 826)

(Tr. 843) As to the second phone call, Detective White was concerned that when Mr. Bethel's father asked him if he was at the club, "he told his dad that he was, despite telling me that he did not remember." (Tr. 850) Regarding the third phone call to Mr. Bethel's mother, Detective White was concerned that Mr. Bethel denied being at the club and having any involvement in the crime. He said this was significant to his investigation because Mr. Bethel "was not telling the truth." (Tr. 859) As to the fourth call, Detective White was concerned that Mr. Bethel was talking to an unknown individual and stated twice that the cops did not know anything. (Tr. 863)

The prosecutor used Detective White's testimony to essentially give a closing argument in the case. On redirect examination, the prosecutor asked Detective White to reiterate what he found significant to the case during his investigation. When he was asked to sum up what was significant about where the gun was found he said, "being stopped in a white Chevy Cobalt which is described by a firefighter who was right there watching it who knew cars." (Tr. 931) He opined it was significant that Mr. Bethel was stopped with this gun within a few hours of the shooting. (Tr. 932) Detective White was asked whether there was anything significant about the fact that Mr. Bethel was the only person in the car. He testified no one else was present to have put the gun in the car. (Tr. 932)

Detective White was asked to review the State's evidence and comment on whether it was consistent with the testimony he had heard from the various State's witnesses during the case. (Tr. 933) He explained that the SpiritBank video was consistent with what he had heard from the witnesses in the case. (Tr. 933) Detective White then gave his opinion on where he thought the victim was standing when he was shot. (Tr. 936) He also opined that he thought the casings were placed at the scene on February 4, 2012, and gave a synopsis of the evidence supporting this opinion. (Tr. 937) Detective White gave his opinion that the lack of bullets at the scene was likely attributable to the fact that the bullets had gone through Mr.

Ivory and lodged in the ground. (Tr. 939) He was testified that people could be wrong about the color of the vehicle because white was sometimes mistaken for silver. (Tr. 941) He was allowed to opine that he thought the SpiritBank video was consistent with Ernest Roberts's and Bradley Jarrett's testimony and the firefighters' testimony. (Tr. 942)

Throughout his testimony, Detective White was allowed to essentially give his opinion on every aspect of the case, invading the province of the jury and improperly bolstering the State's case. His testimony was full of personal opinions requiring no specialized knowledge and merely told the jury what result to reach. The jury was just as capable of reaching these conclusions since they were not based on any specialized knowledge. Opinion testimony from supposed "experts," particularly those in uniform, carry with them a particular danger of overly influencing a jury's verdict. *See McCarty v. State*, 1988 OK CR 271, 765 P.2d 1215, 1218 (noting the danger of unfair prejudice invited by the aura of special reliability and trustworthiness surrounding scientific or expert testimony) (quoting *United States v. Green* 548 F.2d 1261, 1268 (6th Cir. 1977); *United States v. Amaral*, 488 F.2d 1148, 1152 (9th Cir. 1973)). This improper testimony denied the jury its fact finding function. *Romano v. State*, 1995 OK CR 74, 909 P.2d 92, 109 ("While expert witnesses can suggest the inferences which jurors should draw from the application of specialized knowledge to the facts, opinion testimony which merely tells the jury what result to reach is inadmissible.").

Detective White's opinion that Mr. Bethel was not telling the truth was particularly harmful. (Tr. 825, 859) It is axiomatic that no witness may offer testimony in the form of an opinion regarding the guilt or veracity of the defendant as such testimony violates the defendant's constitutional right to due process and to an independent determination of the facts. Ultimately, it is the *exclusive* province of the jury to determine the credibility of witnesses. *See Ryder v. State*,

36

2004 OK CR 2, 83 P.3d 856, 868 (citing *Myers v. State*, 2000 OK CR 25, 17 P.3d 1021, 1032, *overruled in part on other grounds by James v. State*, 2007 OK CR 1, 152 P.3d 255, 257; *Smith v. State*, 1996 OK CR 50, 932 P.2d 521, 530; *Curtis v. State*, 1988 OK CR 220, 762 P.2d 981, 983.

Compounding the prejudice, after the State essentially presented a closing argument through Detective White's opinion testimony, the prosecutor then argued these same inferences again. During closing argument, the prosecutor emphasized Detective White's investigation and his findings in order to urge the jury to believe both Detective White and his synopsis of the witnesses and testimony. (Tr. 1010-13)

Appellant fully recognizes that trial counsel failed to object to some of this inadmissible testimony and has alleged in the alternative in Proposition X, that trial counsel rendered ineffective assistance of counsel. Because Appellant failed to object to some of Detective White's opinion testimony, he has waived review of all but plain or fundamental error. *Simpson v. State*, 1994 OK Cr 40, 876 P.2d 690, 693. In order to demonstrate "plain error," Appellant must show: "1) the existence of an actual error (i.e., deviation from a legal rule); 2) that the error is plain or obvious; and 3) that the error affected his substantial rights, meaning the error affected the outcome of the proceeding." *Hogan v. State*, 2006 OK CR 19, 139 P.3d 907, 923. As argued above, admission of this testimony was clearly error and obviously affected Mr. Bethel's substantial rights. Because the jury's verdicts were likely influenced by Detective White's improper opinion testimony, Mr. Bethel's convictions must be reversed and remanded for a new trial.

## PROPOSITION VI

THE ADMISSION OF IRRELEVANT AND PREJUDICIAL EVIDENCE CONTAINED IN STATE'S EXHIBIT 28, A TAPED RECORDING OF A PHONE CALL BETWEEN MR. BETHEL AND HIS MOTHER, RESULTED IN A VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE II, §§ 7 AND 20 OF THE OKLAHOMA CONSTITUTION.

During questioning of Detective Jason White, the State presented the recording of a phone call in which Mr. Bethel was speaking to his mother from the Tulsa County jail. (Tr. 859-63, 955; State's Exhibit 28) The State claimed the evidence was necessary to show that Mr. Bethel denied to his mother that he had been at Club Pink the evening of the shooting although he had earlier told his father he had been present at Club Pink that night. (Tr. 859) Even assuming this was a legitimate use of the intercepted phone call, the State failed to redact irrelevant and prejudicial portions of the conversation. It would have been a simple matter to redact the phone call to play only the section where Mr. Bethel denies being at the club.[13] Instead the jury heard Mr. Bethel's mother repeatedly chastise him for failing to call his attorney prior to speaking to police, and telling him to "keep your mouth shut and ask for your attorney." (Tr. 861) This evidence shed no light whatsoever on whether Mr. Bethel was guilty. The probative value of this evidence was minimal but the prejudice to Mr. Bethel was devastating, requiring his case be reversed and remanded for a new trial.

Appellant recognizes admissions by a party opponent that are not hearsay are admissible, but they are still subject to other rules of evidence and to

---

[13] This was the only portion of the phone call that was even arguably relevant:

DEANDRE BETHEL: I told them what I know. I mean, I didn't know -- I mean, they asked me where -- that's where I went from. They tried to tell me I was at this club and I told them I wasn't there. They tried to say they had me on video being at the club and all of that. I just bought that damn gun that night. I told them that. I told the police officer who pulled me over. I told him I had just bought that gun. (Tr. 860-61; State's Ex. 28)

38

constitutional safeguards. Under Okla. Stat. tit. 12, § 2403 (2011), relevant evidence may be excluded if the danger of unfair prejudice substantially outweighs its probative value. This phone call should have been redacted to remove Mr. Bethel's discussions with his mother about exercising his Sixth Amendment right to counsel.[14] This evidence had no other real purpose other than to demonstrate to the jury that Mr. Bethel's mother thought he needed to "lawyer up" in order to infer that his mother thought he was guilty and had something to hide.

Because trial counsel did not object to this error, this Court's review is limited to plain error. *See* Proposition X. "Plain error is that error which is plain from the record, and which goes to the foundation of the case or takes from a defendant a right essential to his defense." *Andrew v. State*, 2007 OK CR 23, 164 P.3d 176, 188 ; *Dungan v. State*, 1982 OK CR 152, 651 P.2d 1064, 1065-66 ( elicitation by prosecutor of testimony from police officer about defendant's decision to remain silent during his custodial interrogation, was fundamental, or plain, error, despite lack of objection by defense counsel, because "of the lack of probative value of the evidence in question and due to its extreme prejudicial consequences). This error was plain and fundamental as there is a substantial likelihood the jury used this irrelevant evidence for an illegitimate purpose. Because Mr. Bethel's convictions relied on this highly prejudicial evidence in violation of the Fourteenth Amendment, they must be reversed and remanded for a new trial.

---

[14] Although this was technically not a comment on an actual invocation of the right to counsel, it is analogous to such a situation. This Court has long recognized the rule prohibiting a prosecutor from commenting on, or eliciting testimony about, a defendant's pretrial silence. *See Brown v. State*, 1975 OK CR 191, 541 P.2d 242, 244; *Buchanan v. State*, 1974 OK CR 111, 523 P.2d 1134, 1137.

## PROPOSITION VII

**IMPROPER VICTIM IMPACT TESTIMONY AND EVIDENCE WAS ADMITTED AT TRIAL, DEPRIVING MR. BETHEL OF A FAIR TRIAL IN VIOLATION OF HIS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE II, §§ 7, 9 AND 20 OF THE OKLAHOMA CONSTITUTION.**

### A. The Admission of a Pre-mortem Photograph of the Victim.

A photograph of the victim when he was alive was admitted into evidence. (State's Ex. 1; Tr. 4-7) Prior to the beginning of trial, defense counsel objected to this photograph, arguing it was a blatant effort to gain sympathy for the victim from the very start of the trial. (Tr. 5-7) The trial court reserved ruling at that point. (Tr. 6) While questioning the first State's witness, Sharon Livingston, the prosecutor sponsored the admission of State's Exhibit 1, a photograph of Byron Ivory, Jr., Ms. Livingston's first-born son. (Tr. 329) Ms. Livingston was emotionally distraught during this testimony, and the record reflects she was obviously crying as she was handed some Kleenex by the prosecutor. (Tr. 329) Unfortunately, although defense counsel objected to this photograph prior to trial, inexplicably, when the photograph was offered during the testimony of Ms. Livingston, counsel failed to renew the objection and the photograph was admitted without objection. (Tr. 329-330; State's Exhibit 1) Counsel's failure to adequately protect the record in this regard is discussed in Proposition X.

Appellant recognizes that this Court has previously upheld the admission of in life photographs under the 2002 amendment to Okla. Stat. tit. 12, § 2403, requiring that live victim photographs *shall* be admitted at trial, irrespective of their prejudicial effect. *See, e.g., Grant v. State*, 2009 OK CR 11, 205 P.3d 1, 22. However, amended Section 2403 erodes the fundamental right to a fair trial by diverting the jury from making a reasoned moral response to the evidence to making an impassioned one. *Cody v. State*, 1961 OK CR 43, 361 P.2d 307, 324.

Appellant respectfully asks this Court to reconsider these prior rulings allowing the admission of in life photographs. Here, the display of Mr. Ivory's in life photograph was a clear appeal to emotion and sympathy and has no place in Oklahoma courtrooms. *See, e.g., Capps v. State*, 1984 OK CR 8, 674 P.2d 554, 557.

**B.    Improper Victim Impact Evidence During Formal Sentencing.**

Some of the statements of the family members exceeded the permissible bounds of victim impact testimony. The victim's father, Byron Ivory, Sr., appeared at formal sentencing and asked on behalf of his son and his family that the trial court sentence Mr. Bethel to the maximum sentence possible, life without the possibility of parole. (S.Tr. 5)   He then launched into a lengthy recitation of "ten questions that I read and found that really describe just how I feel and I believe my son felt the same way." (S.Tr. 5) None of these questions and comments had any relevance to the impact this crime had upon Mr. Ivory or his family. (S.Tr. 5-10)

Mr. Ivory's sister, Tanisha Livingston, prepared a detailed victim impact statement but was too upset to read it herself, prompting the prosecutor read it for her. (S.Tr. 10) In graphic detail, her statement described the emotional moment in which she learned her brother had been killed from her mother who was "screaming and crying hysterically." (S.Tr. 10) She described in dramatic fashion having to sit through anatomy class and how working with a cadaver caused her to wonder what her brother "must have experienced in the moments from when he was being shot to when he died" and whether he was scared and felt alone. (S.Tr. 14) She spent several pages talking about her own child and how hard it was to keep up the pace of life when all she wanted to do was grieve for her brother. (S.Tr. 15-16) She also asked the court to "give Deandre Bethel the maximum sentence possible and without parole." (S.Tr. 17) She concluded that she "cannot understand a world with Deandre Bethel in it, free and without consequence for what he did." (S.Tr. 17)

Because Appellant did not object on the grounds alleged here, the error is

reviewed for plain error. *Simpson v. State*, 1994 OK CR 40, 876 P.2d 690, 692-93. To prevail, the defendant must show (1) an error occurred; (2) the error is plain or obvious; and (3) the error affected the substantial rights of the defendant. The first two requirements have already been demonstrated. An error is a deviation from a legal rule. *Simpson v. State*, 876 P.2d at 694. Allowing family members to testify to evidence which is outside the permissible bounds of relevant victim impact evidence deviated from the statute that governs and limits victim impact evidence. Okla. Stat. tit. 21, §§ 142A-8 (2011); *Lott v. State*, 98 P.3d at 346-47.

In ordering that there be no suspension of any portion of the life sentence, and that Counts 1 and 2 run consecutive to each other, it was apparent the trial court was influenced by the improper victim impact statements. (S.Tr. 20-21) Accordingly, Mr. Bethel would ask this Court to remand this case for another resentencing proceeding, one that comports with his Fourteenth Amendment due process rights. Okla. Stat. tit. 22, § 1066 (2011).

## PROPOSITION VIII

**COUNTS III AND IV WERE IMPROPERLY JOINED AT MR. BETHEL'S TRIAL IN VIOLATION OF HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE II, §§ 7 AND 20 OF THE OKLAHOMA CONSTITUTION.**

Despite the fact that these offenses were completely separate and unrelated, the State joined Counts I and II, First Degree Felony Murder and Robbery with a Firearm, with Counts III and IV, Transporting a Loaded Firearm in a Motor Vehicle and Public Intoxication in a single case and these offenses were tried together at Mr. Bethel's trial. (O.R. 312-15, 316-18; Tr. 305-06) This Court reviews improper joinder claims for abuse of discretion. *Smith v. State*, 2007 OK CR 16, 157 P.3d 1155, 1164. Counsel properly preserved this error by objecting to the improper joinder both before and at trial. (O.R. 188-90; M.Tr. 8/27/13 57-60; Tr. 18-19)

"[J]"oinder of separately punishable offenses is permitted if the separate

offenses arise out of one criminal act or transaction, or are part of a series of criminal acts or transactions." *Glass v. State*, 1985 OK CR 65, 701 P.2d 765, 768. *See also* Okla. Stat. tit. 22, § 436, *et seq.* In interpreting the phrase "series of acts or transactions," this Court explained "joinder of offenses is proper where the counts so joined refer to the same type of offenses occurring over a relatively short period of time, in approximately the same location, and proof as to each transaction overlaps so as to evidence a common scheme or plan." *Glass*, 701 P.2d at 768; *Smith v. State,* 157 P.3d at 1165; *Dyke v. State*, 1986 OK CR 44, 716 P.2d 693, 697.

Considering this rule of law with respect to the joinder of Counts III and IV with Counts I and II, these crimes were wholly separate and independent of each other. First, the two alleged offenses are clearly not of "the same type," as contemplated by the case law quoted above. First Degree Felony Murder in the commission of a Robbery with a Firearm is a crime against the person, punishable as a felony under Title 21, while the offenses of Transporting a Loaded Firearm and Public Intoxication are misdemeanors, and Public Intoxication is punishable under Title 37. Thus, this factor does not support joinder because the two offenses are not even similar to each other. *See Glass*, 701 P.2d at 768.

Second, although the offenses did occur within four to five hours of each other, they did not occur in the same location. The alleged robbery and homicide occurred at 200 E. 18th Street, while the alleged transportation of the loaded firearm and the public intoxication offenses occurred at 2400 North Lewis. (O.R. 66)

Third, the proof that relates to each offense does not overlap "so as to evidence a common scheme or plan" because the robbery and homicide of Byron Ivory and his companions could not have facilitated the public intoxication or transporting a loaded firearm charges.

Ultimately, the joinder of these two offenses in one Information, and in one trial, resulted in the presentation of evidence regarding unrelated and dissimilar

43

offenses that likely made the finding of guilt on Counts 1 and 2 easier because of the mere existence of the other counts. It is impossible for this Court to conclude beyond a reasonable doubt that the joinder of the two cases and improperly admitted evidence did not prejudicially impact Mr. Bethel. Thus, Mr. Bethel should be granted relief. At the very least, his sentences should be appropriately modified.

**PROPOSITION IX**

**THE ADMISSION OF EVIDENCE OBTAINED AS A RESULT OF AN ILLEGAL SEARCH AND SEIZURE VIOLATED MR. BETHEL'S RIGHTS UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE II, SECTION 30 OF THE OKLAHOMA CONSTITUTION.**

Prior to trial, Appellant filed a motion to suppress the evidence garnered as a result of his arrest on the early morning hours of February 4, 2012, on the grounds that arresting officers did not have probable cause for making the initial traffic stop. (O.R. 193-96) Officers Amley Floyd and Ian Adair stopped Mr. Bethel's vehicle based on information from an unknown EMSA driver alleging that a man was slumped over the steering wheel at the intersection of 2400 East Apache with a gun in the passenger seat of his vehicle. (M.Tr. 8/27/13 24-25, 28) Appellant alleged these officers did not have the authority to make a warrantless misdemeanor arrest "based solely on information from a third party or on mere suspicion of a misdemeanor." (O.R. 194) A hearing was held on the motion and Officers Floyd and Adair admitted they had never personally talked to the EMSA driver and did not observe the firearm in the vehicle until after they handcuffed and took Mr. Bethel into custody. (M.Tr. 8/27/13 29-31, 43, 48) Nonetheless, the trial court ruled that irrespective of the unidentified EMSA caller, the officers had probable cause to arrest Mr. Bethel for the crime of public intoxication and denied the motion to suppress. (M.Tr. 8/27/13 56) The motion was renewed by defense counsel shortly prior to trial and again summarily denied. (Tr. 18-19)

44

When reviewing a trial court's ruling on a motion to suppress evidence based on an illegal search and seizure, this Court defers to the trial court's factual findings unless those findings are clearly erroneous. However, the ultimate conclusion drawn from those facts is a legal question this Court reviews *de novo* under the totality of the circumstances. *Seabolt v. State*, 2006 OK CR 50, 152 P.3d 235, 237. Here, the trial court's factual findings denying the motion to suppress were clearly erroneous.

There is no doubt the offenses for which Mr. Bethel was arrested were both misdemeanors. (O.R. 66) When Officers Floyd and Adair first approached Mr. Bethel's vehicle, they had not observed these misdemeanor offenses occur but were instead acting on the unknown EMSA driver's observations. (M.Tr. 8/27/13 24-25, 28) Since they did not witness these misdemeanor offenses, under Oklahoma law, Mr. Bethel's arrest was illegal. In Oklahoma, the law permitting warrantless arrests is more strictly circumscribed for misdemeanors than for felonies. This Court stated in *Tomlin v. State*, 1994 OK CR 14, 869 P.2d 334, 339, that by statute, neither a peace officer nor a private citizen may make a warrantless arrest for any offense other than a felony, unless the offense was committed or attempted in the arrester's presence. *See* Okla. Stat. tit. 22, § 196(1)(2011); Okla. Stat. tit. 22, § 202(1)(2011). As these officers did not have authority to make a warrantless misdemeanor arrest, the resulting traffic stop was illegal, and the fruits obtained from it, particularly State's Exhibits 7 and 8, the .40 caliber firearm and magazine clip linked to the shooting of Mr. Ivory, should have been suppressed as fruit of the poisonous tree obtained in violation of the Fourth Amendment to the United States Constitution and Article II, Section 30 of the Oklahoma Constitution. *See Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963). Accordingly, Mr. Bethel's convictions should be reversed and remanded with instructions to dismiss.

45

## PROPOSITION X

**MR. BETHEL WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE II, §§ 7 AND 20 OF THE OKLAHOMA CONSTITUTION.**

In *Strickland v. Washington*, 466 U.S. 668, 681, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the Supreme Court held a conviction cannot stand if defense counsel's performance falls below the objective standards of reasonableness required by the Sixth Amendment and this deficient performance creates a reasonable probability the defendant did not receive a fair trial with a reliable result. The reasonable probability standard does not require a showing of prejudice beyond a reasonable doubt, by clear and convincing evidence, or even by a preponderance of the evidence. Rather, it merely requires a showing sufficient to undermine confidence in the outcome. *Id.* at 694-95, 104 S.Ct. at 2068; *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring); *Fisher v. Gibson*, 282 F.3d at 1307. In this case, Mr. Bethel was prejudiced by his attorney's failure to make timely objections to adequately protect the record at trial, to request viable lesser offense instructions, and to present critical alibi testimony in support of his defense at trial.

### A. Failure to Adequately Protect the Record with Appropriate Objections.

Defense counsel's failure to object to inadmissible evidence can constitute ineffective assistance of counsel. *Dunkle v. State*, 2006 OK CR 29, 139 P.3d 228, 245 n.88 (Okl.Cr. 2006); *Aycox v. State*, 1985 OK CR 83, 702 P.2d 1057, 1058 (Okl.Cr. 1985). In this case, as discussed in Proposition IV, counsel failed to adequately protect the appellate record and jeopardized Mr. Bethel's right to a fair trial by failing to object to the court's improper answer to the jury's question about what would happen if they could not reach a unanimous verdict. (Tr. 1059-60)

In Proposition V, Appellant alleged that Detective Jason White was allowed

46

to testify to improper opinion evidence and that his testimony was clearly error and affected Mr. Bethel's substantial rights, depriving him of a fair trial. Unfortunately, defense counsel failed to object to the bulk of these inadmissible opinions. Since a reasonable trial strategy is one that advances the client's interests, failing to object to prejudicial, inadmissible opinion testimony cannot be considered a sound trial strategy. *See, e.g., Miller v. State*, 2001 OK CR 17, 29 P.3d 1077, 1086 (failure to object to improper opinion testimony of victim impact witness).

In Proposition VI, Appellant argued that State's Exhibit 28, a recorded phone call, should have been redacted to remove Mr. Bethel's discussions with his mother about exercising his Sixth Amendment right to counsel. (Tr. 859-63, 955) Defense counsel had a duty to lodge proper objections and protect his client's rights. If this Court finds this claim is waived and that no "plain error" occurred, then counsel was ineffective for failing to raise these argument and jeopardizing Mr. Bethel's opportunity for a fair trial and meaningful appellate review. *Collis v. State*, 685 P.2d at 977 ("It is beyond the stretch of [this court's] wildest imagination to find a valid trial strategy" in the failure of defense counsel to interpose an appropriate objection.)

In Proposition VII, Appellant argued the prosecutor deprived Mr. Bethel of a fair trial and formal sentencing hearing by the introduction of improper and highly prejudicial victim impact evidence. Although counsel objected to the admission of a pre-mortem photograph of the victim prior to trial, for some inexplicable reason, counsel failed to renew this objection to State's Exhibit 1 at trial, thus inviting Appellee to respond that any errors regarding the admission of this evidence were waived. (Tr. 5-7, 329-30) Appellant can detect no rational trial strategy for counsel's failure to object to this prejudicial evidence, which created an emotional atmosphere that undoubtedly contributed to the jury's finding he was

47

guilty of First Degree Murder. Defense counsel's failure to protect Mr. Bethel's right to a fair trial was outside the wide range of professionally competent assistance and resulted in prejudice to his client.

### B. Failure to Request Instructions on Appropriate Lesser Related Offenses.

In Proposition III, Appellant argued that the trial court committed plain error by failing to instruct the jury on the lesser related offenses of Second Degree Depraved Mind Murder, Second Degree Felony Murder and Accessory. As discussed in that proposition of error, evidence adduced at trial would have supported a conviction of these forms of lesser related offenses. Mr. Bethel should have been afforded a jury that had some options for dealing with his apparent culpability other than convicting him of First Degree Murder, with its mandatory life sentence, either with or without the possibility of parole.

Although Appellant has argued the trial court has a fundamental duty to afford Mr. Bethel the benefit of all appropriate instructions, particularly lesser offenses supported by the evidence, whether requested or not, it is also true that trial counsel has a duty to vigorously advocate his client's interests, which includes requesting relevant jury instructions. *See, e.g., Driver v. State*, 1981 OK CR 117, 634 P.2d 760, 763. As such, failure to request instructions on included offenses supported by the evidence may constitute ineffective assistance. *See Wiley v. State*, 183 S.W.3d 317, 330-31 (Tenn. 2006) (finding trial counsel ineffective for failing to request instructions on second degree murder as a lesser included offense of first degree murder). Here, counsel neglected his duty to request the appropriate instructions on lesser offenses, and his failure to do so amounted to ineffective assistance of counsel. There is nothing in the record of this case that suggests any viable trial strategy in not requesting these instructions. Accordingly, Mr. Bethel has not received a fair trial, and his convictions should be reversed and

48

remanded.

## C.    Failure To Present Critical, Available Defense Witnesses.

Appellant has filed an Application for Evidentiary Hearing on Sixth Amendment Claim concurrently with this brief in accordance with Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (Supp. 2014), in which he alleges that defense counsel was ineffective for failing to present the testimony of two available witnesses, one who could have testified that Mr. Bethel was with her at the time of the alleged robbery/homicide of Byron Ivory, Jr., and a second witness who could have testified that he was with Mr. Bethel when Mr. Bethel purchased the .40 caliber, semiautomatic handgun between 3:00 and 4:00 a.m. that morning. This evidence would have supported Mr. Bethel's alibi defense and corroborated his claim that he purchased the firearm long after the murder occurred. *See* Exhibits A-C, attached to *Application for Evidentiary Hearing on Sixth Amendment Claim.*

Counsel has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066. This Court has likewise found a violation of the Sixth Amendment right to counsel when defense counsel has failed to investigate or utilize important impeachment evidence, exculpatory evidence or a well-founded defense. *Glossip v. State*, 2001 OK CR 21, 29 P.3d 597, 601; *Wilhoit v. State*, 1991 OK CR 50, 816 P.2d 545, 546-47; *see also Jennings v. State*, 1987 OK CR 219, 744 P.2d 212, 214-15 (counsel ineffective for failing to present available evidence including witnesses, physical evidence, and expert testimony corroborating defendant's claim); *Galloway v. State*, 1985 OK CR 42, 698 P.2d 940, 941-942 (counsel ineffective for failure to present available evidence in support of defense).

Given defense counsel's strategy of attempting to prove his client's

innocence by establishing reasonable doubt, any evidence tending to place Mr. Bethel somewhere else besides Club Pink at the time Mr. Ivory was killed, and evidence that would have corroborated his explanation for how he came to be in possession of one of the alleged murder weapons would have been critical to this end. Thus, Appellant can see no legitimate strategy behind trial counsel's failure to interview and call these witnesses at trial. *See Patterson v. State*, 2002 OK CR 18, 45 P.3d 925, 929-30 (counsel ineffective for failure to present exculpatory testimony of available witness who claimed to have seen the victim alive after the alleged date of her murder).

This extra-record claim should be considered with the remainder of Mr. Bethel's claims in order to determine whether counsel's representation, as a whole, fell below minimal constitutional standards of effective representation.

D.    Conclusion.

As the Supreme Court noted in its seminal case on the issue, "the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation" but "simply to ensure that criminal defendants receive a fair trial. *Strickland v. Washington*, 466 U.S. at 689. The facts of this case demonstrate that counsel's performance fell outside the wide range of professionally competent assistance and that there is a reasonable probability that the outcome of Mr. Bethel's trial would have been different, but for trial counsel's unprofessional errors or omissions. *Strickland*, 466 U.S. at 694.

## CONCLUSION

Based on the preceding errors, discussion of facts, arguments and citations of legal authority, the record before this Court and any errors that this Court may note *sua sponte*, Mr. Bethel respectfully asks the Court to reverse the Judgment and Sentences imposed against him or order any other relief as justice requires.

Respectfully submitted,

DEANDRE BETHEL

By: _____

JAMIE D. PYBAS
Oklahoma Bar No. 13000
Division Chief
Homicide Direct Appeals Division
Oklahoma Indigent Defense System
PO Box 926
Norman, Oklahoma 73070-0926
(405) 801-2666
Fax: (405) 801-2690

ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

This is to certify that on December 22, 2014, a true and correct copy of the foregoing Brief of Appellant was mailed, *via* United States Postal Service, postage pre-paid, to Appellant at the address set out below, and a copy was served upon the Attorney General by leaving a copy with the Clerk of this Court.

**Deandre A. Bethel, #690424**
Oklahoma State Penitentiary
P.O. Box 97
McAlester, Oklahoma 74502

_____

JAMIE D. PYBAS

Exhibit
C

Case No. F-2014-336

# IN THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA

## DEANDRE BETHEL

### Appellant,

vs.

## THE STATE OF OKLAHOMA

### Appellee.

Appeal from the
District Court of Tulsa County

## APPLICATION FOR EVIDENTIARY HEARING
## ON SIXTH AMENDMENT CLAIM

Jamie D. Pybas
Division Chief
Oklahoma Bar Assoc. No. 13000
Homicide Direct Appeals Division
Oklahoma Indigent Defense System
P.O. Box 926
Norman, Oklahoma 73070
(405) 801-2666

ATTORNEY FOR APPELLANT

December 22, 2014

# IN THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA

DEANDRE BETHEL,           )
                                  )

     Appellant,           )
                                  )

v.                           )     Case No. F-2014-366
                                  )

THE STATE OF OKLAHOMA,    )
                                  )

     Appellee.          )

## APPLICATION FOR EVIDENTIARY HEARING
## ON SIXTH AMENDMENT CLAIM

Appellant, Deandre Bethel, by and through his appellate counsel, and in accordance with Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (Supp. 2014), respectfully applies to the Court for an evidentiary hearing on his Sixth Amendment claim of ineffective assistance of counsel at his jury trial in the District Court of Tulsa County. Rule 3.11 (B)(3)(b) provides in relevant part:

> When an allegation of the ineffective assistance of counsel is predicated upon an allegation of failure of trial counsel to properly utilize available evidence or adequately investigate to identify evidence which could have been made available during the course of the trial, and a proposition of error alleging ineffective assistance of trial counsel is raised in the brief-in-chief of Appellant, appellate counsel may submit an application for an evidentiary hearing, together with affidavits setting out those items alleged to constitute ineffective assistance of trial counsel.

As required by rule, Mr. Bethel raised a claim of ineffective assistance of counsel in Proposition X of the Brief of Appellant, filed contemporaneously with this Application. This Application sets forth the factual basis, which appears outside the record, supporting this Sixth Amendment claim, and requests that the Court grant an evidentiary hearing so that those factual matters can become part of the record. In support of this Application, Appellant submits the following documents, which are attached:

1

(A)   Affidavit of Deandre Armon Williams

(B)   Affidavit of Wanda Janell Smith

(C)   Affidavit of Jolene Perham

## BRIEF IN SUPPORT OF APPLICATION

**COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO PRESENT THE TESTIMONY OF CRITICAL, AVAILABLE DEFENSE WITNESSES AT TRIAL, VIOLATING MR. BETHEL'S RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE II, §§ 7 AND 20 OF THE OKLAHOMA CONSTITUTION.**

In Proposition X of the Brief of Appellant, Mr. Bethel argued that defense counsel was ineffective for failing to present the testimony of available witnesses who could have established an alibi for Mr. Bethel and could have testified they were present when Mr. Bethel bought a gun from an individual during the early morning hours after the homicide in question. This evidence would have corroborated Mr. Bethel's statements to police and his trial testimony and undermined the State's claim that he used the firearm in question to rob and shoot Byron Ivory, Jr., on February 4, 2012.

Despite the fact that this claim was a critical issue in the case, defense counsel failed to secure the attendance of these witnesses who could provide corroboration to Mr. Bethel's statements that he bought the gun after the fact. Mr. Bethel repeatedly told police he had bought the .40 caliber pistol shortly before he was arrested during the early morning hours of February 4, 2012. During this arrest, he told Officer Amley Floyd that he bought the firearm because he was advised by a police officer that someone was trying to kill him and he needed a gun for protection. (Tr. 554, 601) After he was arrested a second time on February 8, 2012, he also told Detectives White and Felton that a police officer named "Sticks" told him he needed a gun for protection because someone was trying to kill him. (State's Exhibit 74) Mr. Bethel told the detectives that shortly before he was

2

stopped by police on the morning of February 4, 2012, he bought a Smith and Wesson handgun from a black male with "dreads," but he could not remember the man's name. He paid $175.00 for the gun. Mr. Bethel was was not sure what time he purchased the gun, but thought it was 2:00 a.m. or later. He told the detectives that "LJ," or LaHarry Myers, called him and told him about a gun for sale. He met LJ at Lucky Sam's convenience store, near 3500 North Lewis Avenue. He was in his own car and he thought LJ was driving a green Grand Am. (State's Ex. 74; 11:33) He followed LJ to a nearby neighborhood where LJ took him to purchase the firearm. (State's Ex. 74; 11:36)

Detective White testified at trial that he was unable to corroborate this information after he interviewed Mr. Bethel. (Tr. 835) Had counsel conducted a reasonable investigation, he could have called several witnesses to attest to Mr. Bethel's account of the gun purchase. Deandre Williams, who was charged with Mr. Bethel but pled guilty to Accessory After the Fact, could have provided crucial testimony in support of Mr. Bethel's defense had he been called as a witness. (O.R. 65-72) Mr. Williams states in his affidavit, attached to this Application as Exhibit A, that he saw Mr. Bethel around 4:00 a.m. on the morning of February 4, 2012. He called Mr. Bethel on the phone to see where he was. Mr. Bethel said he was in the vicinity of Mr. Williams's house near Lucky Sam's convenience store on North Lewis. See Exhibit A at 1. Mr. Williams told Mr. Bethel to meet him at Lucky Sam's. The two met there and saw LaHarry Myers, otherwise known as "L.J," getting out of his white Crown Victoria in the parking lot. See Exhibit A at 1.

Mr. Bethel asked L.J. if he still had a gun for sale. L.J. said he still had some guns and they would need to go around the corner near the 007 Club to get the guns. See Exhibit A at 1. Mr. Bethel said a "cop" named "Sticks" told him he needed a gun for protection because the Hoovers were trying to get at him. According to Mr.

3

Williams, all three men drove in separate cars to the location. *See* Exhibit A at 1. Mr. Williams said he was driving my brother's maroon 2000 Chevy Tahoe. He thought it took less than a minute to get to the house. He did not know whose house it was. *See* Exhibit A at 1. Once there, he got out of his car and got into Mr. Bethel's white car. Mr. Williams said L.J. approached and said he was going inside the house to get the guns. *See* Exhibit A at 1.

According to Mr. Williams, a few minutes later, L.J. came out of the house with two guns, a .40 caliber and a 9 millimeter and showed them to Mr. Bethel. *See* Exhibit A at 1. Mr. Bethel asked L.J. if there was anything wrong with the guns and whether they were "hot." L.J. said the guns were fine. Mr. Williams stated that Mr. Bethel gave L.J. $150.00 in exchange for the .40 caliber gun. Mr. Williams got in his vehicle and left. *See* Exhibit A at 1. Mr. Williams said that Mr. Bethel's trial lawyer never contacted him about this information prior to trial, nor did anyone from his staff. Mr. Williams states that he was willing to testify and would have done so had he been asked to appear on Mr. Bethel's behalf. *See* Exhibit A at 1.

A second witness could not only have corroborated Mr. Bethel's statement about the gun, but she could have provided testimony that established Mr. Bethel was with her at the time Mr. Ivory was killed. Mr. Bethel told Detectives White and Felton during the interview that his own personal phone was off that night but that he believed he was using a girl named Janell's phone. He told police he was not sure of Janell's last name or her phone number. He could not remember exactly where she lived. (State's Ex. 74, 11:37; Tr. 835) He told the detectives that Janell was a "hook-up" and she had been staying with her friend Neka. (State's Ex. 74; 11:37) Detective White testified at trial that he attempted to locate this "girl named Janelle" but was unsuccessful. (Tr. 835)

In fact, as she states in her affidavit attached to this Application as Exhibit

4

B, Wanda Janell Smith could have testified that she was Deandre Bethel on the evening of February 3, 2014, and into the early morning hours of February 4, 2014. *See* Exhibit B at 1. She was dating Mr. Bethel at the time. Around 1:00 p.m., Mr. Bethel dropped her off at the home of her best friend, Neka. He came back over at about 9:00 p.m. Ms. Smith said she and Mr. Bethel hung out, playing dominoes and drinking. She saw Mr. Bethel take a couple of Xanax bars. Around 1:00 a.m., they left for her mother's house in Mr. Bethel's white Cobalt car. *See* Exhibit B at 1.

Mr. Smith said her mother lived at 539 E 49th Place in Tulsa. At that point, Mr. Bethel was "pretty messed up." *See* Exhibit B at 1. Ms. Smith's grandmother called her around 3:00 a.m. She was ill and needed help to be moved from her bed to the living room. Ms. Smith and Mr. Bethel went over to her grandmother's house around the corner to help move her. According to Ms. Smith, around 3:00 a.m., Mr. Bethel's friend, LJ (LaHarry Myers), called her cell phone. Ms. Smith said Mr. Bethel did not have a working phone at the time. *See* Exhibit B at 1. LJ asked if "Belly" was with Ms. Smith. Ms. Smith said "Belly" was Mr. Bethel's nickname. According to her affidavit, she gave Mr. Bethel her phone. He was talking to LJ, but Ms. Smith did not know what they were saying. *See* Exhibit B at 1.

After he finished talking, Mr. Bethel told Ms. Smith he was going to meet LJ to go buy a gun. Ms. Smith stated that she told Mr. Bethel, "Let me go with you." *See* Exhibit B at 1. He told her "no" and they got into an argument. Ms. Smith said Mr. Bethel did not want her to go with him because he thought LJ was going to rob him. After they argued some more, Ms. Smith said she got out of the car and Mr. Bethel drove off without her. Later that morning, she said she got a phone call that Mr. Bethel was in jail. *See* Exhibit B at 1.

Ms. Smith said she was never contacted by the police, the district attorney's office or any defense attorneys who represented Deandre Bethel before his trial in

5

February 2014. She said she was willing to testify and would have done so had she been asked to appear on Mr. Bethel's behalf. *See* Exhibit B at 1.

As Exhibit C to the Application establishes, trial counsel was notified of the existence of this witness prior to trial, yet failed to contact her or call her as a witness at trial on Mr. Bethel's behalf. Exhibit C is a letter from Mr. Bethel's mother, Glenda Gray, sent to defense counsel prior to trial. This letter was contained in the files provided to appellate counsel by Appellant's trial attorney. Ms. Gray writes that she is "sending vital information regarding my son Deandre Bethel's case." *See* Exhibit C at 1. She lists several witnesses she believes are important for Mr. Bethel's defense. One of these witnesses is Wanda Janell Smith, and Ms. Gray provides Ms. Smith's address and two separate phone numbers for her. *See* Exhibit C at 1. Clearly, defense counsel was notified of the existence of this witness prior to trial, yet failed to contact her and present her testimony at trial on Mr. Bethel's behalf.

Had trial counsel secured the attendance of these two witnesses, they could have provided an alibi for Mr. Bethel at the time of the shooting of Mr. Ivory and proven the existence of Janell, the "mystery" woman police and prosecutors were unable to locate. (Tr. 835, 1047-48) This evidence would have corroborated Mr. Bethel's repeated statements to police that he bought the gun from a black male with dreads several hours after the homicide of Byron Ivory had already occurred. As it was, the jury was provided with only the unsubstantiated testimony of Mr. Bethel claiming that he bought the gun after the fact. (Tr. 835, 865, State's Ex. 74) Without this corroboration, the prosecutor was able to argue to the jury that Mr. Bethel had fabricated all of this information:

> And, you know, the only reason he bought the gun is because the police told him to buy it and he just happened to do that on a night that a white Chevy Cobalt was seen outside of this parking lot where Byron Ivory, Junior

6

was murdered, and it's even more amazing because he gets from the scene and this gun dealer, Rio, has to call LaHarry Myers - the dead guy who can't come in and say whether or not this happened - and get ahold of him and say, hey, let me tell you, I know your friend is looking for a new burner. I've got this great .40 caliber Smith and Wesson model, it's a 40-06, has a 10 magazine bullet and a plus-one capacity, I'm look (sic) to sell this gun for $175, and LaHarry is able to get ahold of Byron Ivory (sic)? I mean, that's amazing. His cell phone had been turned off the night before, he told that to Jason White. But LaHarry somehow knows that he has some girl's phone, he doesn't even know the girl's name, Janele, something like that that he met -- met her walking down the street, doesn't know where she lives but he just happened to have her phone and LaHarry knew that he had her phone and was able to get a hold of Deandre Bethel who was so drunk that he blew a .04 and maybe taken a Xanax and fell asleep in an intersection, and he was able to met (sic) up with LaHarry outside this club and then meet up with the gun dealer, and get to being passed out in an intersection on north Lewis, all within, like, three hours from the murder. I mean, that's efficiency, ladies and gentlemen of jury, and you shouldn't believe it for a second.

(Tr. 1047-48)

The Sixth Amendment imposes on counsel certain basic duties, including "a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Counsel also has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 690, 104 S.Ct. at 2066.

Even before *Strickland,* this Court indicated that it was counsel's duty to investigate and use relevant evidence helpful to the defendant. In *Smith v. State*, 1982 OK CR 143, 650 P.2d 904, 906-907, counsel inexplicably failed to call available witnesses in support of the defendant's insanity defense. In response to this omission, this Court quoted the American Bar Association Standard for Criminal Justice, Defense Function 4-4.1, which states that, "It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to *explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction.*" (Emphasis added). 650 P.2d at 908. This Court held:

7

We recognize that the attorney for a defendant may, at times, have legitimate reasons for not calling certain witnesses to testify. The decision of which witness, if any, to call at trial is one of strategy best left to counsel, and generally will not be second-guessed on appeal. [Citations omitted] Before counsel may make such tactical decisions, however, it is imperative that he have knowledge of the substance of the evidence excluded. Thus, when, as in the present case, counsel knows of the existence of a person or persons who possess information relevant to the client's case and fails to exercise ordinary diligence to pursue that evidence, we cannot justify such lack of industry as a strategic error. [Citations omitted]

*Id.* This Court has found a violation of the Sixth Amendment right to counsel when counsel has failed to investigate or utilize important impeachment evidence, exculpatory evidence or a well-founded defense. *Glossip v. State*, 2001 OK CR 21, 29 P.3d 597, 601; *Wilhoit v. State*, 1991 OK CR 50, 816 P.2d 545, 546-47; *see also Jennings v. State*, 1987 OK CR 219, 744 P.2d 212, 214-15 (counsel ineffective for failing to present available evidence including witnesses, physical evidence, and expert testimony corroborating defendant's claim); *Galloway v. State*, 1985 OK CR 42, 698 P.2d 940, 941-942 (counsel ineffective for failure to present available evidence in support of defense). When counsel fails to investigate for purposes of an alibi defense, federal courts have found this failure constitutionally deficient. *See Brown v. Myers*, 137 F. 3d 1154, 1156-57 (9th Cir. 1998); *United States v. Gray*, 878 F. 2d 702, 711 (3d Cir. 1989); *Code v. Montgomery*, 799 F.2d 1481, 1483 (11th Cir. 1986); *Nealy v. Cabana*, 764 F.2d 1173, 1178-80 (5th Cir. 1985).

Given defense counsel's strategy of attempting to prove his client's innocence by establishing reasonable doubt, any evidence tending to corroborate the central claims of the defense in this case, i.e., that Mr. Bethel was not at Club Pink at the time of the robbery/shooting and that he was only in possession of the gun because he had purchased it shortly before he was stopped by police that morning, would have likely changed the outcome of this case. Witnesses who could state that Mr. Bethel was present with them when the homicide occurred or when

8

he bought the gun would have been critical to this end. Thus, Appellant can see no legitimate strategy behind the failure to interview and call these witnesses at trial. *See Patterson v. State,* 2002 OK CR 18, 45 P.3d 925, 929-30 (counsel ineffective for failure to present exculpatory testimony of available witness who claimed to have seen the victim alive after the alleged date of her murder).

The benchmark for judging any claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington,* 466 U.S. at 686, 104 S.Ct. at 2064. In order to prevail on a claim that he was denied his Sixth Amendment right to counsel, the defendant must make two showings: First, that counsel's performance was deficient, and second, that there is a reasonable probability that, but for the counsel's professional errors, the result of the proceeding would have been different. A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome. 466 U.S. at 694, 104 S.Ct. at 2068; *see also Williams v. Taylor,* 529 U.S. 362, 392-94, 120 S.Ct. 1495, 1512-14, 146 L.Ed.2d 389 (2000). When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the fact-finder would have had a reasonable doubt respecting guilt.

The facts of this case demonstrate a reasonable probability that the outcome of Mr. Bethel's trial would have been different, but for trial counsel's failure to adequately investigate the case and present the testimony of these critical alibi witnesses. The State's case against Mr. Bethel was not so overwhelming as to foreclose the possibility that additional evidence in Mr. Bethel's favor would have created reasonable doubt in the mind of at least one juror. The jury obviously struggled with the verdict in this case as evidenced by their notes during deliberations. (Tr. 1059-61) Mr. Bethel submits that this Court cannot have

9

confidence in the outcome of his trial under the circumstances here, and his convictions must be reversed and remanded for a new trial.

## CONCLUSION

It is clear from the above extra-record claim of ineffectiveness of counsel, compounded by record claims asserted in Proposition X of his Brief, that Mr. Bethel was not afforded a meaningful test of the adversarial process in his trial, and that under *Strickland*, he has met his burden of establishing that counsel's performance was deficient and that he was prejudiced such that there is a reasonable probability that, but for these errors, Mr. Bethel would not have been convicted of the crimes charged. Mr. Bethel respectfully, pursuant to Rule 3.11(B)(3)(b) of the Rules of this Court, and in consideration of his above arguments and attached exhibits, requests an evidentiary hearing to make full proof of his extra-record claim.

Respectfully submitted,

DEANDRE BETHEL,

By: _____

JAMIE D. PYBAS
Oklahoma Bar No. 13000
Division Chief
Capital Direct Appeals Division
Oklahoma Indigent Defense System
P.O. Box 926
Norman, Oklahoma 73070-0926
(405) 801-2666

ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

I certify that on the date of filing the above and foregoing instrument, a true and correct copy of the same was delivered to the Clerk of this Court with instructions to deliver said copy to the Office of the Attorney General of the State of Oklahoma.

_____
JAMIE D. PYBAS

10

# IN THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA

DEANDRE BETHEL,　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　Appellant,　　　　　)　　NOT FOR PUBLICATION
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　)　　Case No. F-2014-336
　　　　　　　　　　　　　　　　)
THE STATE OF OKLAHOMA,　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　Appellee.　　　　　　)

**FILED**
IN COURT OF CRIMINAL APPEALS
STATE OF OKLAHOMA

JUL 16 2015

MICHAEL S. RICHIE
CLERK

## SUMMARY OPINION

**JOHNSON, JUDGE:**

A jury convicted Appellant Deandre Bethel in the District Court of Tulsa County, Case No. CF-2012-660, of First Degree Felony Murder (Count 1), in violation of 21 O.S.2011, § 701.7, Robbery with a Firearm (Count 2), in violation of 21 O.S.2011, § 801, Transporting Loaded Firearm in Motor Vehicle (Count 3), in violation of 21 O.S.2011, § 1289.13, and Public Intoxication (Count 4), in violation of 37 O.S.2011, § 8. The jury assessed punishment at life imprisonment with the possibility of parole on Count 1, five years imprisonment on Count 2, five months imprisonment and a $250.00 fine on Count 3, and thirty days imprisonment and a $100.00 fine on Count 4. The Honorable James M. Caputo, who presided at trial, sentenced Bethel accordingly and ordered the sentences on Counts 1 and 2 to be served consecutively with each other, but ordered Counts 3 and 4 to run concurrently

with each other and concurrently with Counts 1 and 2.[1] Bethel appeals, raising

the following issues:

(1) whether the evidence was sufficient to support his convictions for Counts 1 and 2;

(2) whether his conviction and sentence for Robbery with a Firearm must be vacated because the same charge served as the underlying felony for his conviction of felony murder;

(3) whether the district court erred by failing to instruct the jury on the lesser offenses of Second Degree Depraved Mind Murder, Second Degree Felony Murder, and Accessory After the Fact;

(4) whether the district court failed to comply with the law governing contact with jurors during deliberations and failed to advise deadlocked jurors not to surrender their honest convictions concerning the weight of the evidence in order to reach a verdict;

(5) whether he was denied a fair trial by the admission of improper law enforcement opinion testimony that invaded the province of the jury;

(6) whether the admission of an audiotape recording of a jail phone call between Bethel and his mother resulted in a violation of his due process rights;

(7) whether improper victim impact evidence was admitted at trial;

(8) whether Counts 3 and 4 were improperly joined for trial with Count 1 and 2;

(9) whether the district court erred in denying his motion to suppress evidence; and

(10) whether he was deprived of the effective assistance of counsel.

Bethel also submits his Application for Evidentiary Hearing on Sixth

Amendment claims.

---

[1] Under 21 O.S.2011, § 13.1, Bethel must serve 85% of the sentences imposed on Counts 1 and 2 before he is eligible for parole.

Bethel's convictions on Counts 1, 3 and 4 are affirmed, but Count 2 must be reversed with instructions to dismiss for the reasons discussed below.

1.

Any rational trier of fact could find beyond a reasonable doubt that there was a forceful taking and carrying away of personal property in this case and that Bethel participated in the armed robbery during which the victim was killed. We find that the trial evidence was sufficient to sustain Bethel's convictions for First Degree Murder and Robbery with a Firearm based on the evidence presented in this case. *See Logsdon v. State,* 2010 OK CR 7, ¶ 5, 231 P.3d 1156, 1161; *Spuehler v. State,* 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-204.

2.

Bethel's second claim has merit and requires relief. He claims that his conviction for robbery with a firearm must be dismissed because separate convictions for felony murder and the predicate felony in this case violate the Double Jeopardy Clause. *See Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977); *Perry v. State,* 1993 OK CR 5, ¶ 7, 853 P.2d 198, 200-201 (holding conviction for both felony murder and the underlying felony violates double jeopardy).

The State charged Bethel in Count 1 with the felony murder of Byron Ivory, Jr. that occurred during an attempted robbery involving Ivory and two

other alleged victims. The State charged Bethel in Count 2 with robbery with a firearm for the taking and asportation of personal property from these three individuals. The State elected to charge one count of robbery with a firearm based on the incident that resulted in Ivory's murder instead of charging separate acts of robbery based on the three victims involved. The Information alleged the same actions against the same victims in Counts 1 and 2 resulting in the same act serving as the basis for two crimes in violation of the Double Jeopardy Clause. Under *Brown*, *Harris* and *Perry*, Bethel's conviction for robbery with a firearm must be reversed and remanded to the district court with instructions to dismiss. *See Harris*, 97 S. Ct. 2912, 2913 ("When, as here, conviction of a greater crime, murder, cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime, after conviction of the greater one.")

3.

Reviewing the lack of lesser offense instructions for plain error only, we find the district court did not err in failing to submit, *sua sponte*, instructions on second degree depraved mind murder, second degree felony murder and accessory. *See Hogan v. State*, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923 ("[t]he first step in plain error analysis is to determine whether error occurred"). "This Court has long recognized the rule of law that a defendant is not entitled to instructions on any lesser included offense when he defends against the charge by proclaiming his innocence." *Harney v. State*, 2011 OK CR 10, ¶ 11, 256

4

P.3d 1002, 1005. Bethel's claim faulting the district court for omitting instructions on lesser offenses is without merit because the omitted instructions were inconsistent with his defense of innocence.

4.

We reject Bethel's claim that the district court's handling of jury questions during deliberations requires relief. The jury sent out four notes during deliberations, with notes 1, 3 and 4 pertaining to housekeeping matters only. The parties agreed on the court's written response to the only substantive note (note 2) submitted by the jury and Bethel did not object to the procedure used in its delivery. Under these circumstances, we review Bethel's claim for plain error only and find none. *Welch v. State*, 1998 OK CR 54, ¶ 42, 968 P.2d 1231, 1245.

Our statutes generally provide that there can be no communication with the jury by the judge or any third person except in open court. 22 O.S.2011, §§ 853, 857, 894. Of course, we have acknowledged that not every communication between the court and jury outside open court is prohibited; in particular, communications with the jury regarding simple housekeeping matters do not violate statutory prohibitions. *Perry v. State*, 1995 OK CR 20, ¶ 26, 893 P.2d 521, 528. Consequently we find no violation of section 894 or error with respect to the district court's handling of notes 1, 3 and 4 dealing with housekeeping matters.

5

Nor can Bethel establish error and prejudice with respect to the district court's handling of note 2. Title 22, Section 894 states:

> After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony or if they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to the district attorney and the defendant or his counsel, or after they have been called.

22 O.S.2011, § 894. "The purpose of Section 894 is to prevent communications from being made to the jury without the parties being present to protect their interests." *Mollett v. State*, 1997 OK CR 28, ¶ 42, 939 P.2d 1, 11-12 (internal quotations omitted). "This statute has been construed as mandatory only with regard to bringing the jury back into the courtroom, and the determination of whether the jury's request is granted is within the discretion of the trial court." *Cipriano v. State*, 2001 OK CR 25, ¶ 48, 32 P.3d 869, 879.

"When a communication between judge and jury occurs after a jury has retired for deliberations *on a matter within the scope of § 894* and that communication does not comport with § 894's requirements, a presumption of prejudice arises. The presumption may be overcome if, on appeal, this Court is convinced that on the face of the record no prejudice to the defendant occurred." *Smith v. State*, 2007 OK CR 16, ¶ 52, 157 P.3d 1155, 1172 (internal citations and quotations omitted) (emphasis added).

Note 2 asked what the jury should do if it could not reach a unanimous decision on some counts and how to proceed on the counts on which there was

6

unanimity. The parties and judge agreed a deadlocked jury instruction was premature because the jury had deliberated only a few hours. The district court instructed the jury to continue to deliberate on the unresolved counts. There was no violation of the underlying purpose of § 894 (preventing communications without parties' interests protected) in the handling of note 2 because the parties were consulted and approved the court's response. Bethel agreed that the court could respond in writing rather than returning the jury to open court. Any presumption of prejudice arising from the court's failure to bring the jury back into the courtroom is refuted by the record showing that the district court provided the jury with the response sanctioned by the parties. There is no showing of plain error; this claim is denied.

5.

Bethel was not deprived of a fair trial by the admission of improper "law enforcement" opinion. Contrary to Bethel's claim, the case agent did not vouch for the integrity of the investigation and his testimony was not unnecessarily cumulative, speculative or more prejudicial than probative. *See Postelle v. State,* 2011 OK CR 30, ¶ 31, 267 P.3d 114, 131 (discussing relevancy of evidence); *Harmon v. State,* 2011 OK CR 6, ¶ 48, 248 P.3d 918, 937 (discussing balancing relevancy of evidence against its prejudicial effect). The case agent testified about his part in the investigation and the collection of evidence. He did not comment on the veracity of any witness or tell the jury what result to reach. This claim is denied.

7

6.

Reviewing for plain error only, we find Bethel has not shown the district court erred in admitting the audiotape of his telephone call to his mother from jail. *See Hogan,* 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923. Their conversation was relevant and its probative value was not substantially outweighed by the danger of unfair prejudice. *See Postelle,* 2011 OK CR 30, ¶ 31, 267 P.3d at 131; *Harmon,* 2011 OK CR 6, ¶ 48, 248 P.3d at 937.

7.

The district court did not err in admitting an in life photograph of the murder victim that showed his general appearance and condition while alive. 12 O.S.2011, § 2403. The admissibility of such photographs is settled, and Bethel offers nothing new to warrant a different result in this case. *See Underwood v. State,* 2011 OK CR 12, ¶ 48, 252 P.3d 221, 242-43.

Reviewing for plain error only, we find Bethel has not shown error and prejudice from the presentation of victim impact statements from the victim's father and sister at formal sentencing under 21 O.S.2011, § 142A-8. *See Hogan,* 2006 OK CR 19, ¶ 38, 139 P.3d at 923.

8.

The district court did not err in denying Bethel's motion to sever and allowing Counts 1 and 2 to be joined with Counts 3 and 4 for resolution in a single trial. *See Smith v. State,* 2007 OK CR 16, ¶ 21, 157 P.3d 1155, 1164; *Vowell v. State,* 1986 OK CR 172, ¶¶ 8-9, 728 P.2d 854, 857.

8

9.

The district court did not err in denying Bethel's motion to suppress evidence because Bethel's arrest for public intoxication was supported by probable cause. *See Coffia v. State,* 2008 OK CR 24, ¶ 5, 191 P.3d 594, 596.

10.

Bethel's ineffective assistance of counsel claim may be disposed of based on lack of prejudice.[2] *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Malone v. State,* 2013 OK CR 1, ¶ 14, 293 P.3d 198, 206, *cert. denied,* ___U.S.___, 134 S.Ct. 172, 187 L.Ed.2d 119 (2013); *Head v. State,* 2006 OK CR 44, ¶ 23, 146 P.3d 1141, 1148. The merits of the substantive claims serving as the basis for this ineffective assistance of counsel claim have been addressed and rejected above. *See* Propositions 3, 4, 5, 6 and 7.

In conjunction with this claim Bethel filed an Application for Evidentiary Hearing on Sixth Amendment claims contemporaneously with his brief, attaching documents to support his claim that trial counsel was ineffective for failing to investigate and present testimony supporting his defense.

This Court will order an evidentiary hearing if "the application and affidavits . . . contain sufficient information to show this Court by clear and

---

[2] Bethel argues defense counsel was ineffective for failing to object to the district court's response to jury note #2, failing to object to improper opinions offered by the case agent, failing to have the prejudicial portions of his telephone call with his mother redacted, failing to object to the in life photo of the victim and the victim impact statements offered at formal sentencing, and failing to request instructions on lesser related offenses.

convincing evidence [that] there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence." Rule 3.11(B)(3)(b)(i), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2015). Having reviewed Bethel's Request for an Evidentiary Hearing to develop this claim and the materials offered to support that request, we find that Bethel has failed to meet his burden. Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2015). Therefore, Bethel is not entitled to an evidentiary hearing to further develop his ineffective assistance of counsel allegations, and his motion, as well as this claim, are **DENIED**. *See Simpson v. State*, 2010 OK CR 6, ¶ 53, 230 P.3d 888, 905-06.

## DECISION

The Judgment and Sentence of the district court on Counts 1, 3 and 4 is **AFFIRMED**. Count 2 is **REVERSED** and **REMANDED** to the district court with instructions to **DISMISS**. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2015), the **MANDATE** is **ORDERED** issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY
THE HONORABLE JAMES M. CAPUTO, DISTRICT JUDGE

**APPEARANCES AT TRIAL**

STEVE VINCENT
ATTORNEY AT LAW
7122 S. SHERIDAN, SUITE 2372
TULSA, OK 74103-3805
ATTORNEY FOR DEFENDANT

KALI STRAIN
JOHN SALMON
ASSISTANT DISTRICT ATTORNEYS
500 S. DENVER, SUITE 900
TULSA, OK 74103
ATTORNEYS FOR STATE

**APPEARANCES ON APPEAL**

JAMIE D. PYBAS
P. O. BOX 926
NORMAN, OK 73070
ATTORNEY FOR APPELLANT

E. SCOTT PRUITT
OKLAHOMA ATTORNEY GENERAL
THEODORE M. PEEPER
ASSISTANT ATTORNEY GENERAL
313 N.E. 21ST STREET
OKLAHOMA CITY, OK 73105
ATTORNEYS FOR APPELLEE

**OPINION BY: JOHNSON, J.**
**SMITH, P.J.: Concur**
**LUMPKIN, V.P.J.: Concur**
**LEWIS, J.: Concur**
**HUDSON, J.: Concur**

RA

# IN THE DISTRICT COURT OF ____TULSA____ COUNTY
## STATE OF OKLAHOMA

DEANDRE BETHEL )
                Petitioner / Appellant, )
                                     )
  vs. )   Case No. __CF-2012-660__
                                       )
THE STATE OF OKLAHOMA, )
                Respondents / Appellee. )

## APPLICATION FOR POST-CONVICTION RELIEF

### PART A

I, __DeAndre Bethel__, DOC # __609424__, whose present address is Lawton Correctional Facility, 8607 SE Flower Mound Road, Lawton, Oklahoma 73501, hereby apply for relief under the Post-Conviction Procedure Act, Section 1080 et seq. of Title 22.

The sentence from which I seek relief is as follows:

1. (a) Court in which sentence was rendered: __Tulsa County District Court__
   (b) Case Number: __CF-2012-660__
2. Date of sentence: __March 14, 2014__
3. Terms of sentence: __Life With Parole__
4. Name of Presiding Judge: __Hornable James M. Caputo__
5. Are you now in custody serving this sentence?    Yes (x) No ( )
   Where? __LCF-Lawton__
6. For what crime or crimes were you convicted? __Felony Murder__
 
 
7. Check whether the finding of guilty was made:
   After plea of guilty ( )    After plea of not guilty (X)
8. If found guilty after plea of not guilty, check whether the finding was made by:
   A jury (X) A judge without a jury ( )

# IN THE DISTRICT COURT OF _____TULSA_____ COUNTY
## STATE OF OKLAHOMA

DEANDRE  BETHEL )
             **Petitioner / Appellant,** )
              )
  vs. )  Case No. CF-2012-660
              )
THE STATE OF OKLAHOMA, )
          **Respondents / Appellee.** )

## APPLICATION FOR POST-CONVICTION RELIEF

### PART A

I, __DeAndre Bethel__, DOC # __609424__, whose present address is Lawton Correctional Facility, 8607 SE Flower Mound Road, Lawton, Oklahoma 73501, hereby apply for relief under the Post-Conviction Procedure Act, Section 1080 et seq. of Title 22.

The sentence from which I seek relief is as follows:

1. (a) Court in which sentence was rendered: Tulsa County District Court
   (b) Case Number: __CF-2012-660__
2. Date of sentence: __March 14, 2014__
3. Terms of sentence: __Life With     Parole__
4. Name of Presiding Judge: __Hornable James M. Caputo__
5. Are you now in custody serving this sentence?    Yes (x)  No ( )
   Where? __LCF-Lawton__
6. For what crime or crimes were you convicted? __Felony Murder__

_____

_____

7. Check whether the finding of guilty was made:
   After plea of guilty ( )   After plea of not guilty (X)
8. If found guilty after plea of not guilty, check whether the finding was made by:
   A jury (X) A judge without a jury ( )

9. Name of lawyer who represented you in trial court: __Steven Vincent__

10. Was your lawyer hired by you or your family?   Yes ( ) No (x)

    Appointed by the court?   Yes (x) No ( )

11. Did you appeal the conviction?   Yes (X) No ( )

    To what court or courts? _____

    __Oklahoma Court of Criminal Appeals__

12. Did a lawyer represent you for the appeal?   Yes (x) No ( )

    Was it the same lawyer as in No. 9 above?   Yes ( ) No (x)

    If "no," what was this lawyer's name? __Jamie D. Pybas__

    . Address? __OIDS, P.O. Box 926, Norman, OK__

13. Was an opinion written by the appellate court?   Yes (X) No ( )

    If "yes", give citations if published: __F-2014-336__

    If not published, give appellate case no.: _____

14. Did you seek any further review of or relief from your conviction at any other time in any court?   Yes ( ) No (x)

    If "Yes", state when you did so, the nature of your claim and the result (include citations to any reported opinions.) _____

## PART B

(If you have more than one proposition for relief, attach a separate sheet for each proposition. Answer the questions below as to each additional proposition, labeled SECOND PROPOSITION, THIRD PROPOSITION.)

I believe that I have ( 1 ) propositions for relief from the conviction and sentence described in **PART A.**

**FIRST PROPOSITION:**

1. Of what legal right or privilege do you believe you were deprived in your case? _____
   ACTUAL INNOCENCE
   _____
   _____
   _____

2. In the facts of your case, what happened to deprive you of that legal right or privilege
   and who made the error of which you complain? _____
   See Brief _____
   _____
   _____

3. List by name and citation any case or cases that are very close factually and legally to
   yours as examples of the error you believe occurred in your case. _____
   See Brief _____
   _____
   _____

4. How do you think you could now prove the facts you have stated in answer to
   Question No. 2, above? (ATTACH SUPPORTING DOCUMENTATION.) _____
   See Brief _____
   _____
   _____

5. If you did not timely appeal the original conviction, set forth facts showing how you
   were denied a direct appeal through no fault of your own. _____
   See Brief _____
   _____
   _____

6. Is this a proposition that could have been raised on Direct Appeal? Yes ( ) No (X)
   Explain: Due to ineffective assistance of appellate Counsel
   The argument was not filed.
   _____
   _____
   _____

## PART C

I understand that I have an absolute right to appeal to the Court of Criminal Appeals from the trial court's order entered in this case, but unless I do so within thirty (30) days after the entry of the trial judge's order. I will have waived my right to appeal as provided by Section 1087 of Title 22.

## PART D

I hereby apply to have counsel appointed to represent me. I believe I am entitled to relief. I do not possess any money or property.

_09-26-16_
Date

_(Signature or Petitioner/Appellant)_

**STATE OF OKLAHOMA** )
) SS.
**COUNTY OF COMANCHE** )

I DeAndre Bethel, being first sworn under oath, states that he signed the above application and that the statements therein are true to the best of my knowledge and belief.

_(Signature of Petitioner/Appellant)_

Subscribed and sworn to before me this _26th_ day of _September_ 2016

NOTARY PUBLIC

NOTARY PUBLIC State of OK
C. TOPPING
Comm. # 13011277
Expires 12-16-2017

My Commission Number is: _13011277_

My Commission Expires : _12/16/2017_

DEANDRE BETHEL,          )
                                       )
           Petitioner,        )
                                       )
v.                                    )      Case No. CF-2012-660
                                       )
STATE OF OKLAHOMA        )
                                       )
           Respondent.      )
                                       )

## APPLICATION FOR POST-CONVICTION RELIEF
## BRIEF-N-CHIEF

Mr. Bethel is proceeding pro se, under *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1087 (2007); *Andrews v. Heaton*, 483 F.3d 1070, 1116 (10th Cir. 2007); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 562 (1972) (Taking into account that a pro se pleading is to be held to a less stringent standard than one formally submitted by an attorney); and claims *Hughes v. Rowe*, 449 U.S. 4, 9, 101 S.Ct. 173 (1980) (The Court must review liberally and interpret pro se arguments to raise the strongest arguments that they suggest.). Mr. Bethel prays the Court's forbearance in reviewing the Habeas Petition.

## BACKGROUND

February 4, 2012, Bryon Ivory, Ernest Roberts and Bradley Jarrett pulled into the parking lot of Club Pink at approximately 1:40 a.m. As the men sat in the vehicle, another car pulled into the parking lot, parking behind the victims with their lights on. One individual approached the vehicle, while Mr. Roberts was exiting Mr. Ivory's vehicle. The person asked Mr. Roberts did he know him. Mr. Roberts said, "No." The assailant pulled a gun and stuck it in Mr. Roberts' ribs. Mr. Roberts took out his wallet and cell phone, offered the wallet and cell phone to the assailant as an escape mechanism, turned and ran. Roberts' jumped over a four-foot wall with a five-foot drop-off on the other side. Mr. Jarrett also exited the vehicle and ran, but before running saw two individuals

standing beside the car parked behind them. Mr. Jarrett ran so hard that he ran out of his Nikes. There was shooting and a short time later Mr. Ivory was discovered dead from gun shot wounds.

Several Tulsa Firefighters witnessed two cars leaving the parking lot in a hurry. They described one of the vehicles as a white Chevy Cobalt. Several hours later Mr. Bethel was discovered sleep at an intersection street light in a white Chevy Cobalt and a gun in the passenger seat. Mr. Bethel was arrested for Public Intoxication and Possession of a Firearm and bonded out of jail. Police later tested the weapon and discovered that it was one of the weapons used in the shooting of Mr. Ivory. During and after both arrests Mr. Bethel consistently proffered to police officers that he had bought the gun that morning from someone named Rio. Mr. Bethel was charged and convicted by a jury of Felony Murder with the underlying felony of First Degree Robbery with a Firearm. Mr. Bethel was sentenced to life with the possibility of parole. From this sentence Mr. Bethel request post-conviction relief.

During his time of incarceration, Mr. Bethel did his own investigation as to what happened at Club Pink that night. He discovered that the incident was not a robbery, but retaliation of an ongoing feud between Bryon Ivory and Laharry Myers. Mr. Bethel, also, discovered that there were witnesses present that could testify that he was not present during the altercation and didn't participate. (See Affidavits).

## PROPOSITION I. ACTUAL INNOCENCE

Petitioner presents reliable newly discovered evidence supporting the allegation of constitutional error of ineffective assistance of trial counsel for failing to research, interview and call DeAndre Williams and Elza Riley as witnesses to testify at trial. Mr. Williams and Mr. Riley would testify at trial that they were present at the scene and Mr. Bethel was not present and did not participate in an armed robbery and that there was no robbery, but that the crime was retaliation for a previous altercation between the two men. *See attached affidavits.*

The "fundamental miscarriage of justice" exception to the procedural bar doctrine applies "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 495-96, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); see also *Herrera v. Collins,* 506 U.S. 390, 400-404, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993); *Sawyer v. Whitley*, 505 U.S. 333, 339-41, 112 S. Ct. 2514, 120 L. Ed. 2d 269 (1992); *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). To meet this test, a criminal

defendant must make a colorable showing of factual innocence. *Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000) (citing Herrera, 506 U.S. at 404). "The miscarriage of justice exception, . . . applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1933, 185 L. Ed. 2d 1019 (2013) (quoting Schlup, 513 U.S. at 329) (internal quotation marks omitted). Under Schlup, a showing of innocence sufficient to allow consideration of procedurally barred claims must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error . . . ." *Schlup*, 513 U.S. at 316. The petitioner must "support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Id.* at 324.

A. NEWLY DISCOVERED EVIDENCE OF INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE II, § 20 OF OKLAHOMA'S CONSTITUTION FOR FAILING TO DISCOVER EVIDENCE AND FAILING TO FILE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILING TO INTERVIEW, INVESTIGATE AND CALL DEANDRE WILLIAMS AND ELZA RILEY TO TESTIFY AT TRIAL

Appellate counsel failed to discover evidence of eyewitness testimony of Elza Riley. Further appellate counsel's failure to make the proper argument in the direct appeal brief was below professional norms and prejudiced the appeal. Had the waived information been included in the brief, then it would have demonstrated that Mr. Bethel was actually innocent of the crimes in which he was convicted. Whereby, Appellate counsel was ineffective.

1. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO PRESENT THE TESTIMONY OF CRITICAL, AVAILABLE DEFENSE WITNESSES AT TRIAL, VIOLATING MR. BETHEL'S RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE II, §§ 7 AND 30 OF THE OKLAHOMA CONSTITUTION

Despite the fact that this claim was a critical issue in the case, defense counsel failed to secure the attendance of these witnesses who could provide corroboration to Mr. Bethel's statements that he bought the gun after the fact. Mr. Bethel repeatedly told police he had bought the .40 caliber pistol shortly before he was arrested.

Appellate counsel was ineffective for failure to file ineffective assistance of trial counsel for failure to investigate, interview and call DeAndre Williams and Elza Riley as witnesses at trial. Both eyewitnesses would testify that they were present at the crime scene, that there was no robbery, but the crime was a retaliation for a previous altercation between two men and that Mr. Bethel was not present at the time. Trial counsel's failure to investigate, interview, and call Mr. Williams and Mr. Riley as witnesses for the defense was ineffective assistance of counsel. Appellate counsel's failure to discover and submit the claim on direct appeal demonstrates appellate counsel's ineffectiveness prejudiced Petitioner's appeal. Both counsels' unprofessional errors effected both the outcome of the trial and the appeal.

Neither trial counsel nor appellate counsel discovered the information discovered by Mr. Bethel. Mr. Bethel discovered the information through his own investigations and both attorneys had the opportunity to discover the evidence and did not. The evidence and the eyewitnesses were available if counsels had properly investigated, interviewed the witnesses. However, due to ineffective assistance of both counsels, counsels failed to discover the evidence. Petitioner claims due to ineffective assistance of counsels the evidence was not presented at trial or on appeal and that the court should determine the effectiveness of trial counsel and appellate counsel when considering whether the evidence is material and whether the evidence creates a reasonable probability that, had it been introduced at trial or on appeal that it would have changed the outcomes.

## STANDARD OF REVIEW

Post-conviction claims of ineffective assistance of appellate counsel are reviewed under the standard for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See *Smith v. Robbins*, 528 U.S. 259, 289, 120 S.Ct. 746, 765, 145 L.Ed.2d 756 (2000) ("[Petitioner] must satisfy both prongs of the Strickland test in order to prevail on his claim of ineffective assistance of appellate counsel."); *Coddington*, 2011 OK CR 21, P 3, 259 P.3d at 835; *Davis v. State*, 2005 OK CR 21, P 7, 123 P.3d 243, 246. Under *Strickland*, a petitioner must show both (1) deficient performance, by demonstrating that his counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding (in this case the appeal) would have been different. *Strickland*, 466 U.S. at 687-89, 104 S.Ct. at 2064-66. And we recognize that "[a] court considering a claim of ineffective assistance of

counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065).

In reviewing a claim of ineffective assistance of appellate counsel under *Strickland*, a court must look to the merits of the issue(s) that appellate counsel failed to raise. See *Malicoat v. Mullin*, 426 F.3d 1241, 1249 (10th Cir. 2005) ("[I]n certain circumstances, appellate counsel's omission of an issue may constitute ineffective assistance under *Strickland*. In analyzing such claims, the court must consider the merits of the omitted issue." (citing *Robbins*, 528 U.S. at 288, 120 S.Ct. at 765-66*)); Cargle v. Mullin*, 317 F.3d 1196, 1205 (10th Cir. 2003) ("The very focus of a Strickland inquiry regarding performance of appellate counsel is upon the merits of omitted issues, and no test that ignores the merits of the omitted claim in conducting its ineffective assistance of appellate counsel analysis comports with federal law."). In the context of ineffective assistance of appellate counsel claims, only an examination of the merits of any omitted issues will reveal whether appellate counsel's performance was deficient (due to failing to raise the omitted issue(s)) and also whether the failure to raise the omitted issue(s) on appeal prejudiced the defendant, *i.e.*, whether there is a reasonable probability that raising the omitted issue(s) would have resulted in a different outcome in the defendant's direct appeal (e.g., a reversal, new trial, new sentencing proceeding, or sentence modification). In the context of ineffective assistance of appellate counsel claims, only an examination of the merits of any omitted issues will reveal whether appellate counsel's performance was deficient (due to failing to raise the omitted issue(s)) and also whether the failure to raise the omitted issue(s) on appeal prejudiced the defendant, i.e., whether there is a reasonable probability that raising the omitted issue(s) would have resulted in a different outcome in the defendant's direct appeal (e.g., a reversal, new trial, new sentencing proceeding, or sentence modification). *Id. Logan v. State*, 293 P.3d 969, 974 (Okl. Cr. 2013).

Petitioner will prove that the oversight of appellate counsel prejudiced the appeal, by demonstration that trial counsel was ineffective for failing to uphold the constitutional level of representation as determined by the *Sixth Amendment* of the United States Constitution. Petitioner also demonstrates that Mr. Bethel was prejudiced and but for counsels' unprofessional errors there would have been a different outcome in the trial. See below.

# ARGUMENT AND AUTHORITIES

The murder of Byron Ivory was retaliation for a previous altercation between the two (2) men. The suspects in the white car knew Mr. Ivory and called Mr. Ivory to Club Pink to retaliate for a previous altercation. See Exhibits **1 & 2**, Affidavit from Elza Rily and DeAndre Williams, who were present at Club Pink to witness the fight between the two (2) men. Mr. Williams later plead guilty to Accessory After the Fact in the instant matter. This altercation was not a robbery and was never intended to be a robbery. The underlying felony of First Degree Robbery With a Firearm did not occur, evidenced by that amount of guns involved in the crime.

*First,* there was an altercation between (2) rival groups of black males inside the club that caused a ruckus. Several members of one of the groups were escorted from the club (Tr. 335-39).

*Second,* there was video of *three* (3) suspects leaving in a white car (Tr. 797), but evidence of four (4) guns being fired (Tr. 715). The suspect shooter, later identified by Mr. Williams and Mr. Riley as Laharry Myers a/k/a L.J., was the person holding the gun on the robbery victim. The hypothesis that Mr. Ivory possessed the fourth weapon and this was an altercation between two (2) rivals was never presented or considered by the jury. The jury was unaware that the two (2) men knew each other and that there was an ongoing feud.

It is conceivable that one of the four guns belonged to the victim. There is also evidence that this was not a robbery. The testimony of the robbery victim was that his property was not demanded, but that when he felt a gun on his torso that he volunteered his property without provocation and for the purpose of escape (Tr. 370, 384). The evidence further indicates that Mr. Ivory, the only victim that did not run was not robbed. Factually, part of the robbery victim's property that was volunteered was found under Mr. Ivory (Tr. 801). The robbery victim threw the property, turned, and ran, jumping a four-foot wall with a five-foot drop. The victim ran out of his Nikes, in the nightclub parking lot with people milling around. The missing cell phone could have been lost and/or recovered by anyone. The death of Mr. Ivory was not the result of a robbery, but in retaliation of an ongoing feud between the two men. The conviction of First Degree Robbery with a Firearm as a prerequisite for the Felony Murder conviction of Mr. Bethel did not occur.

## 1. BELOW PROFESSIONAL NORMS

A criminal defense lawyer has a duty to conduct reasonable investigations into his client's case, which extends to the law as well as the facts. See *Strickland*, 466 U.S. at 690-91. As that duty pertains to investigation of the law, counsel is obligated to research relevant law to make an informed decision whether certain avenues will prove fruitful." *Rompilla v. Beard*, 545 U.S. 374, 387, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005). *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 1482, 176 L. Ed. 2d 284 (2010) (describing the ABA's standards as "valuable measures of the prevailing professional norms of effective representation"). The extent to which counsel will be obligated to investigate in order to perform at a constitutionally adequate level of competency will vary case by case: as the Supreme Court observed in *Strickland*, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. But "[a] decision not to investigate cannot be deemed reasonable if it is uninformed." *Fisher v. Gibson*, 282 F.3d 1283, 1296 (10th Cir. 2002). Petitioner request the trial court to determine whether trial counsel's failure to utilize this evidence could be considered a sound trial strategy and that the trial court should find Petitioner's counsel's "failure to discover" was not sound trial strategy and conclude that counsel's notion not to investigate and call eyewitnesses is founded upon ineffective assistance of counsel. See *Glossip v. State*, 2001 OK CR 21, P20, 29 P.3d 597, 601.

Petitioner claims, due to ineffective assistance of counsels, the evidence was not presented at trial or on appeal and that the court should determine the effectiveness of trial counsel and appellate counsel when considering whether the evidence is material and whether the evidence creates a reasonable probability that had the evidence been introduced at trial or on appeal, it would have changed the outcomes.

### a. FAILURE TO INVESTIGATE, INTERVIEW AND CALL WITNESSES

Trial counsel was ineffective for failing to call DeAndre Williams and Elza Riley as witnesses. Due to newly discovered evidence of affidavits from Mr. Williams and Mr. Riley, where they state that they would had testified at trial that Mr. Bethel was not present at the night club at the time of altercation.

Both witnesses had specific facts that could only be obtained if they witnessed the events of the crime. The witnesses' testimonies were crucial to the determination of guilt or innocence of Mr. Bethel. However, neither of the eyewitnesses were interviewed, investigated, or called as a witness by trial counsel or their information used in the direct appeal.

The extent to which counsel will be obligated to investigate in order to perform at a constitutionally adequate level of competency will vary case by case. In the instant matter, counsel did not call any witnesses on behalf of Petitioner. The only witness that showed at trial and testified for the defense was Mr. Bethel. Defense counsel had a duty to investigate all strategies of defense and to call all relevant witnesses to testify on behalf of the defense of Petitioner. Defense counsel did not interview, investigate, or call Mr. Williams or Mr. Riley as witnesses. This establishes the first prong of *Strickland.* The testimony of Mr. Williams coupled with the testimony of Mr. Riley are both surpassingly missing from the trial and appeal and is evidence of ineffective assistance of counsels.

It cannot be said that trial counsel made a strategic decision not to call these witnesses or that he was unaware of these witnesses, because Mr. Williams was a co-defendant of Mr. Bethel's and the cases were severed. It cannot be said that appellate counsel was unaware of Mr. Williams.

Had Mr. Williams testified that he saw Mr. Myers commit the crime and did not see Mr. Bethel would have effected the jury's verdict. The same is true involving the testimony of Mr. Riley. What the jury should have heard was two (2) eyewitnesses (Williams and Riley) testify that Petitioner was not at the scene of the crime. Verses circumstantial evidence of Mr. Bethel ending up with one of the weapons used in a crime the following morning. The jury should of heard testimony from these eyewitnesses that this was not a robbery, but there was an ongoing feud between the two men and they both had guns and further testimony that Mr. Bethel was not present. The additional testimony from Mr. Williams and Mr. Riley was crucial to the determination of the jury's verdict.

The failure of trial counsel and appellate counsel to interview, investigate, and call to testify Mr. Williams and Mr. Riley is ineffective assistance of counsel. A criminal defense lawyer has a duty to conduct reasonable investigations into his client's case, which extends to the law as well as the facts. See *Strickland*, 466 U.S. at 690-91. As that duty pertains to investigation of the law, counsel is obligated to research relevant law to make an informed decision whether

certain avenues will prove fruitful." *Rompilla v. Beard*, 545 U.S. 374, 387, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005). But "[a] decision not to investigate cannot be deemed reasonable if it is uninformed." *Fisher v. Gibson*, 282 F.3d 1283, 1296 (10th Cir. 2002). Trial counsel and appellate counsel was uninformed and failed to reasonably investigate and call crucial eyewitnesses to testify to Mr. Bethel's innocence. Both counsel's performance by precedent is below professional norms, which satisfies the first prong of *Strickland*.

## 2.  PREJUDICE

The jury's failure to hear contrary testimony to unreliable circumstantial evidence prejudiced Mr. Bethel. Had the jury heard from Mr. Williams (an accessory after the fact) and Mr. Riley an eyewitness to contradict the circumstantial evidence, it would have caused the jury to determine the truth and that Mr. Bethel was not present during the time of the crime, whereby determining his actual innocence. Mr. Williams has nothing to gain or lose by testifying that Petitioner was not present. Mr. Riley has nothing to gain by volunteering his testimony either. On the other hand, the absence of these eyewitnesses caused Mr. Bethel prejudice. This is demonstrated by Williams' and Riley's affidavits, swearing that Mr. Bethel was not present at the crime.

It was imperative that the jury heard the testimony of Mr. Williams and Mr. Riley. The absence of the testimony prejudiced Petitioner, because the jury was not allowed to judge between the testimony of the eyewitnesses and the circumstantial evidence. Only Mr. Williams and Riley could truly say what happened and who was there that night and that trial counsel nor appellate counsel interviewed, investigated or called either of the witnesses. This is crucial testimony that was necessary for the determination of guilt or innocence. This determination is the essence and only factor of Mr. Bethel's conviction.

Whereby, the absence of the testimony of Mr. Williams testifying that he did not witness Mr. Bethel at the crime scene and the absence of the testimony of Mr. Riley that he also failed to witness Mr. Bethel at the crime scene prejudiced the Mr. Bethel and affected the outcome of the trial.

Both counsels did not complete and analyze the evidence likely to be introduced at trial or on appeal. If counsels had made a complete investigation, they would of interviewed Mr. Williams and Mr. Riley and known that they were willing to testify at trial that Petitioner was not

present at the crime scene. The extent to which counsel will be obligated to investigate in order to perform at a constitutionally adequate level of competency will vary case by case: as the Supreme Court observed in *Strickland*, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. But "[a] decision not to investigate cannot be deemed reasonable if it is uninformed." *Fisher v. Gibson*, 282 F.3d 1283, 1296 (10th Cir. 2002). Counsels' failures to investigate, interview, or call Williams and Riley as witnesses can not be considered reasonable. There is no evidence that counsels had reasons not to investigate the aforementioned witnesses. Here, the only evidence against Mr. Bethel is that he possessed a weapon used the night of the crime. The calling of eyewitnesses Williams and Riley in contradiction to the circumstantial evidence was reasonable and would had changed the outcome of the verdict.

Therefore, counsels were unreasonable for not interviewing, investigating, and calling Williams and Riley to testify on behalf of the defense or using the information in the appeal. The testimony of the absent eyewitness would had affected the verdict, effected the appeal and demonstrated that Mr. Bethel is actually innocent. Therefore Mr. Bethel is prejudiced.

Petitioner has demonstrated that he is actually innocent of Robbery with a Firearm and Felony Murder because he was not present at the crime scene as sworn to by the eyewitnesses. The affidavit from Mr. Williams demonstrates that Mr. Bethel was not present at the scene of the crime. The affidavit of Riley also demonstrates that Mr. Bethel was not present at the crime scene. The jury was uninformed of Mr. Williams' and Mr. Riley's testimonies. Both their testimonies' were crucial to the defense of Mr. Bethel. Trial and appellate counsels' failure interview and call Mr. Williams or Mr. Riley as witnesses were unprofessional errors. Mr. Bethel has satisfied both prongs of in regards to ineffective assistance of trial and appellate counsel. The missing eyewitness satisfies the first prong of *Strickland*. The second prong of *Strickland* is satisfied by had the eyewitnesses been called it would have changed the outcome of both trial and the appeal. Wherefore, Petitioner has satisfied both prongs of *Strickland* in regards to ineffective assistance of appellate counsel.

Petitioner further claims his actual innocence because this case is a case in which new evidence shows it is more likely than not that no reasonable juror would have convicted Mr. Bethel after the aforementioned evidence was presented before a jury.

Wherefore, Petitioner request that the sentence be vacated and the case remanded back with instructions to dismiss.

Petitioner also requests that Mr. Williams and Mr. Riley be called as witnesses at an evidentiary hearing to determine the efficiency of trial and appellate counsels' effectiveness.

**B.    APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE TRIAL COUNSEL WAS INEFFECTIVE FOR NOT SUBJECTING THE PROSECUTION'S CASE OF ROBBERY WITH A FIREARM TO ADVERSARIAL TESTING AND CONCEDED THE ROBBERY CHARGE BY CONFESSING GUILT WITHOUT PERMISSION OF APPELLANT**

### ARGUMENT AND AUTHORITIES

Appellate counsel was ineffective for failing to file trial counsel was ineffective for not subjecting the prosecution's case of First Degree Robbery with a Firearm to adversarial testing and conceded the robbery charge by confessing guilt without permission of appellant.

Defense counsel was ineffective for not subjecting the prosecution's case of First Degree Robbery with a Firearm the underlying felony to Felony Murder to adversarial testing. Mr. Bethel conceded guilt to Public Intoxication and Possession of a Firearm. However, trial counsel also conceded guilt to the First Degree Robbery With a Firearm charge during trial without consent from Mr. Bethel.

Defense Counsel on several occasions conceded that this was an intentional robbery – instead of challenging with adversarial testing the prosecution's case of robbery with a firearm. Had counsel challenged that the suspects had no intentions of taking away property (which is a required element of robbery) then the Petitioner could not have been convicted of the underlying felony of First Degree Robbery With a Firearm. Contrary to defense counsel's professional duty, his performance fell below the objective standard of reasonableness required by the *Sixth Amendment*. Instead of challenging the First Degree Robbery With Firearm charge, counsel stated that it was an intentional robbery, even though the assailant's had no intention of taking away property.

Petitioner will prove that the oversight of appellate counsel prejudiced the appeal, by demonstration that trial counsel was ineffective for failing to uphold the constitutional level of

representation as determined by the *Sixth Amendment* of the United States Constitution. See below:

## 1. BELOW PROFESSIONAL NORMS

The murder of Byron Ivory was retaliation for a previous altercation between the two (2) men. The driver of the white car (identified as Rio) knew Mr. Ivory and called Mr. Ivory to Club Pink so that LaHarry Myers could retaliate from the previous altercation. See Affidavits **1 & 2**, Affidavit from Elza Rily and DeAndre Williams, who were present at Club Pink and witnessed the incident between the two (2) men. Mr. Williams later plead guilty in the Murder as an accessory after the fact in the instant matter. The altercation was not a robbery and was never intended to be a robbery. The underlying felony of First Degree Robbery With a Firearm did not occur, evidenced by that amount of guns involved in the crime scene and the lack of taking of property.

*First,* there was an altercation between (2) rival groups of black males inside the Club Pink that caused a ruckus (Tr. 335-39).

*Second*, there was only one suspect thought to have a gun in the parking lot witnessed by the victims (Tr. 367-68). There was video of *three* (3) suspects leaving in a white car (Tr. 797), but evidence of four (4) guns being fired (Tr. 715). The suspect shooter, identified as LaHarry Myers a/k/a L.J. by Mr. Williams and Mr. Riley as the person holding the gun on the robbery victim was in an ongoing feud with the deceased victim. The hypothesis that Mr. Ivory possessed the fourth weapon and this was in a shootout between two (2) rivals was never presented or considered by the jury. The jury was unaware that the two (2) men knew each other and that there was an ongoing feud between the two.

It is conceivable that one of the four guns belonged to the victim. There is also evidence that this was not a robbery, through the testimony of the robbery victim that his property (cell phone and wallet) were not demanded, but that when he felt a gun on his torso that he volunteered his property without provocation to institute an escape (Tr. 370, 384). Further evidence indicates that Mr. Ivory, the only victim that did not run was not robbed. Factually, the robbery victim volunteered his property as an escape mechanism -- part of the property [his wallet] was found under Mr. Ivory (Tr. 801). The robbery victim threw the property and turned

and ran, jumping a four-foot wall with a five-foot drop, in a nightclub parking lot with people milling around. The cell phone could have been lost and/or recovered by anyone. The death of Mr. Ivory was not the result of a robbery, but retaliation of an ongoing feud between the two men.

Defense counsel was ineffective for not subjecting the prosecution's case of First Degree Robbery with a Firearm to adversarial testing and conceding that there was a robbery. Defense counsel conceded the Public Intoxication, Possession of a Firearm and on several occasions conceded that this was an intentional First Degree Robbery with a Firearm without the consent of Mr. Bethel. Had counsel challenged that the suspects had no intention of taking away property, then the appellant could not be convicted of the underlying felony of Robbery With a Firearm. Contrary to his professional duty, defense counsel's performance fell below the objective standard of reasonableness required by the *Sixth Amendment*. Defense counsel gave motive and demonstrated before the jury the vulnerableness of the victims. If there was a robbery, which is hard to determine and would be hard for a jury to determine if the charge was challenged, because the only alleged property taken is an absent cell phone, from a person that jumped a four-foot wall with a five-foot drop-off and ran out his shoes in a crowded nightclub parking lot. No one knows what actually happened to the cell phone.

*Third,* the volunteering of his property by the robbery victim does not indicate that the other suspects had prior knowledge that anything would be taken or knowledge that anything was taken. Prior knowledge and the intention to take away property are elements of First Degree Robbery. Due to the spontaneity of the victim volunteering his property [which might of saved his life, because it distracted the man with the gun long enough for him to run] it could not be proven beyond a reasonable doubt that the other suspects had knowledge or consented to taking of property. See *Rosemond v. United States,* 134 S.Ct. 1240, 188L.Ed.2d 248 (2014), the Supreme Court held, in order to aid and abet, a defendant must have advance knowledge that a crime will be committed. One of the "basics" of aiding and abetting robbery [in addition to taking away is the requisite act of intent] when he intends to facilitate that offense's commission." See also *Williams v. Trammell*, 782 F.3d 1184 (10th Cir. 2015), citing *Rosemond,* "Some mutual state beyond "mere assent" or "acquiescence" is also required. *Id. Wingfeild v. Massie*, 122 F.3d 1329, 1332 (10th Cir. 1997). Whereby, if there was a robbery, which it could not be proven that there was without defense counsel's concession. There may have been a

spontaneous robbery, which did not elevate the other suspects of premeditation consensus that a robbery would be committed. The only person that offered any evidence of premeditated robbery or confessed culpability to the robbery was trial defense counsel.

Factually, defense counsel acknowledged the robbery, gave motive, opportunity and scenarios, whereby, robbery could be accomplished. Defense counsel admitted on two (2) occasions that the gun Bethel possessed was the murder weapon (Tr. 1020). Defense counsel further gave motive, "And so from about 1:30 to 2:00 a.m. in the morning, you have what is called a target-rich environment, if you're a crook. You have lots of people, many of whom are inebriated, getting out of the bar at the same time, going to their cars, and they often have money and stuff and they have their keys. So predators tend to wander by at such times (Tr. 1021) ..."Robbery crews are working the area at this time... (Tr. 1022). Defense counsel concedes that there was a robbery and that it was intentional, which he was the only person to offer any evidence or confess culpability to robbery. Defense counsel's concession may not have been directly confessing the robbery, but overtly confessed that the victims were seasoned for a robbery and that robbery crews were working the area. The evidence introduced through affidavits supports the evidence that this was not a robbery. This demonstrates ineffective assistance of trial counsel. Mr. Bethel had not intended to confess to guilt of robbery and counsel's confession was without Petitioner's consent.

### 2. PREJUDICE

The Oklahoma rules of Professional Conduct govern attorney conduct in this state. These rules do not lay the groundwork for claims of ineffectiveness, but they are pertinent to any discussion of attorney conduct when the rules touch on subjects raised in a claim of ineffectiveness. The rules set forth the necessity of open consultation between attorneys and clients; furthermore, some decisions are left to the client after such consultation. "In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify." Rule 1.2, Rules of Professional Conduct, 5 O.S.1991, Ch.1, App. 3-A. "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Rule 1.4(b), Rules of Professional Conduct, 5 O.S.1991, Ch.1, App. 3-A. Likewise, the decision to concede guilt must be the client's ultimate decision.

The prosecution was required to prove robbery. Whereby, defense counsel's declaration of robbery proved the prosecution's case determining guilt to the robbery. Defense counsel gave motive and situations whereby the robbery could be accomplished. Had counsel not conceded that the victims were primed and ready to be robbed and that there was a robbery, whether directly or overtly, then the state was required to prove the robbery. The concession allowed the jury to agree with counsel that a robbery had occurred and convicted Mr. Bethel of First Degree Robbery with a Firearm. This prejudiced Mr. Bethel. See *Jackson v. State*, 2001 OK CR 37, ¶ 25, 41 P.3d 395, 400 ("[a] complete concession of guilt is a serious strategic decision that must only be made after consulting with the client and after receiving the client's consent or acquiescence.") Defense counsel's declaration of robbery prejudiced Mr. Bethel. Had counsel not made the declaration that a robbery was committed then there is a reasonable probability that the outcome of the trial would have been different.

Under *Strickland*, Mr. Bethel proves both (1) deficient performance, by demonstrating that his counsel's conduct was objectively unreasonable by conceding the robbery, and (2) resulting prejudice by Mr. Bethel being convicted of the robbery by counsel's concession. Wherefore there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-89, 104 S.Ct. at 2064-66.

Wherefore, Mr. Bethel was prejudice by counsel's concession to robbery. Therefore, ineffective assistance of trial counsel has been established and the court should remand Mr. Bethel's case, because his *Sixth Amendment* right to effective assistance was violated.

## CONCLUSION

Actual innocence is demonstrated above by the newly discovered evidence that both trial counsel and appellate counsel were ineffective for failing to discover critical reliable evidence of eyewitness testimony that would have determined that Mr. Bethel was not at the crime scene. Further, **Exhibit B.** in Petitioner's direct appeal, an affidavit from Wanda Janell Smith was submitted proving that Mr. Bethel was also not at the crime scene and he later left Ms. Smith to go purchase the weapon that was involved in the crime. In light of the evidence discovered after trial, had trial counsel presented the testimony of Ms. Smith, Mr. Williams, and Mr. Riley demonstrating that he was not at the crime scene verses the circumstantial evidence, there is a

strong probability that the jury's decision would have been different. As a matter of fact, if the prosecution would have properly interviewed the aforementioned witnesses, there is a strong possibility that the state would not have pursued prosecuting Mr. Bethel at all. Further, had trial counsel investigated, interview, and called the witness the outcome of the trail would have been different. In addition, had appellate counsel discovered the evidence and introduce it in Mr. Bethel's appeal would have produced a different outcome of the appeal. Mr. Bethel is specifically innocent of the underlying felony of First Degree Robbery with a Firearm. The witnesses' affidavits prove that the crime was not a robbery, but the retaliation of a long ongoing feud between two (2) rivals. Because there was no robbery, then Mr. Bethel cannot be convicted of the underlying felony, which results in innocence of the Felony Murder.

Wherefore, for the aforementioned reasons the absent witnesses prejudiced Mr. Bethel and he is actually innocent of the conviction. Therefore, he requests an evidentiary hearing, where the critical absent witness evidence can be used to determine counsels' ineffectiveness and after reaching such a conclusion the court must determine that Mr. Bethel is actually innocent. Whereby, the conviction should be vacated and remanded with instructions to dismiss.

RESPECTFULLY SUBMITTED

DeAndre Bethel
#690424
LCF-Lawton
8607 SE Flowermound Rd.
Lawton, OK

## CERTIFICATE OF VERIFICATION

I state under penalty of perjury under the laws of Oklahoma that the foregoing is true and correct.

9-26-16 Lawton, OK
**(Date and Place)**

**(Signature)**

IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
STATE OF OKLAHOMA

DISTRICT COURT
**F I L E D**

MAR 3 0 2017

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

DEANDRE BETHEL, )
)
Petitioner, )
)
v. )   Case No. CF-2012-660
)
STATE OF OKLAHOMA, )   Judge James Caputo
)
Respondent. )

## ORDER DENYING APPLICATION FOR POST-CONVICTION RELIEF

This matter comes on for consideration of Petitioner's application for post-conviction relief filed September 30, 2016, and the State's response thereto. This Court, being fully advised in the premises and concerns, finds as a matter of facts and conclusions of law that the matter under consideration does not present any genuine issue of material fact requiring a formal hearing with the presentation of witnesses and the taking of testimony. *Johnson v. State*, 1991 OK CR 124, 823 P.2d 370. The matter will therefore be decided based on the records this Court has reviewed.

### MATERIALS REVIEWED

This Court has reviewed the following materials in reaching its decision: the docket sheet; the Information filed February 16, 2012; the Judgment and Sentence for Counts 1, 3, and 4 filed March 18, 2014; Volumes I-IV of the Jury Trial Transcripts; the Court of Criminal Appeals opinion filed as "Mandate Affirmed in Part Reversed in Part and Remanded with Instructions to Dismiss" filed July 23, 2015; the instant application with attached exhibits and "Motion for Evidentiary Hearing" filed

1

September 30, 2016; and the State's response brief and attached exhibits filed March 29, 2017.

## STATEMENT OF THE CASE

This Court finds that the relevant history provided in the State's "Response to Application for Post-Conviction Relief" to be accurate, and will recite that history here.

Deandre Bethel ("Petitioner"), represented by counsel, was tried by jury and convicted of First Degree Felony Murder in violation of 21 O.S.2011, § 701.7 (Count 1), Robbery with a Firearm in violation of 21 O.S.2011, § 801 (Count 2), Transporting Loaded Firearm in Vehicle in violation of 21 O.S.2011, § 1289.13 (Count 3), and Public Intoxication in violation of 37 O.S.2011, § 8 (Count 4). On March 14, 2014, the Honorable James Caputo, who presided at trial, sentenced Petitioner in accordance with the jury's recommendation to life imprisonment for Count 1, five (5) years imprisonment for Count 2, five (5) months imprisonment and a two hundred fifty dollar ($250.00) fine for Count 3, and thirty (30) days imprisonment and a one hundred dollar ($100.00) fine for Count 4. The District Court ordered the sentence for Count 2 to run consecutively to Count 1, but ordered Counts 3 and 4 to run concurrently with Count 1. Petitioner was advised of his appeal rights.

Petitioner, by and through counsel, raised a timely direct appeal to the Oklahoma Court of Criminal Appeals. Petitioner raised the following issues in support of his direct appeal:

I. The State's evidence was legally insufficient to prove all of the elements of Robbery with a Firearm and therefore also insufficient to support Mr. Bethel's conviction for First Degree Felony Murder. Accordingly, Mr. Bethel's convictions and sentences on Counts I and II should be vacated as they are in violation of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article II, §§ 7 and 20 of the Oklahoma Constitution.

II. Mr. Bethel's conviction and sentence for Count II, Robbery with a Firearm, must be vacated because the conviction of Felony Murder, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article II, § 21 of the Oklahoma Constitution.

III. The trial court committed fundamental error by failing to instruct the jury on the lesser offenses of Second Degree Depraved Mind Murder, Second Degree Felony Murder, and Accessory After the Fact, in violation of Mr. Bethel's rights to due process and a fair trial under the Fifth and Fourteenth Amendments to the United States Constitution and Article II, §§ 7 and 20 of the Oklahoma Constitution.

IV. The trial court erred in failing to comply with the law governing contact with jurors during deliberations and by failing to advise deadlocked jurors not to surrender their honest convictions concerning the weight of the evidence in order to reach a verdict in violation of Okla. Stat. tit. 22, § 894 and Mr. Bethel's rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article II, §§ 7, 19 and 20 of the Oklahoma Constitution.

V. Mr. Bethel's trial was rendered fundamentally unfair by the admission of improper law enforcement opinion testimony that invaded the province of the jury in violation of his rights under the Fourteenth Amendment to the United States Constitution and Article II, §§ 7 and 20 of the Oklahoma Constitution.

VI. The admission of irrelevant and prejudicial evidence contained in State's Exhibit 28, a taped recording of a phone call between Mr. Bethel and his mother, resulted in a violation of his due process rights under the Fourteenth Amendment to the United States Constitution and Article II, §§ 7 and 20 of the Oklahoma Constitution.

VII. Improper victim impact testimony and evidence was admitted at trial, depriving Mr. Bethel of a fair trial in violation of his rights under the Fourteenth Amendment to the United States Constitution and Article II, §§ 7, 9 and 20 of the Oklahoma Constitution.

VIII. Counts III and IV were improperly joined at Mr. Bethel's trial in violation of his right to a fair trial and due process of law under the Fourteenth Amendment to the United States Constitution and Article II, §§ 7, 9 and 20 of the Oklahoma Constitution.

IX. The admission of evidence obtained as a result of an illegal search and seizure violated Mr. Bethel's rights under the Fourth Amendment to the United States Constitution and Article II, Section 30 of the Oklahoma Constitution.

X. Mr. Bethel was deprived of the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article II, §§ 7 and 30 of the Oklahoma Constitution because:

A. Trial counsel failed to adequately protect the record with appropriate objections.

B. Trial counsel failed to request instructions on appropriate lesser related offenses.

C. Trial counsel failed to present critical, available defense witnesses.

Petitioner also submitted an Application for Evidentiary Hearing on Sixth Amendment Claims, with affidavits from several potential defense witnesses in support of his Proposition X. *See* Resp't's Ex. 1, Application. After thorough consideration of the issues presented, the Court of Criminal Appeals affirmed Petitioner's judgment and sentences for Counts 1, 3, and 4, but reversed Count 2 with an order to dismiss it. *Bethel v. State*, F-2014-336 (Okl.Cr. July 15, 2015) (not for publication), attached as Resp't's Ex. 2. The Court also denied Petitioner's request for an evidentiary hearing. *Id.*

4

On March 25, 2011, Petitioner, *pro se*, filed the instant application for post-conviction relief. Petitioner raises the following propositions of error in support of his application:

I.   Actual innocence.

II.   Newly discovered evidence of ineffective assistance of appellate counsel in violation of the Sixth Amendment to the United States Constitution and Article II, § 20 of Oklahoma's Constitution for failing to discover evidence and failing to file ineffective assistance of trial counsel for failing to interview, investigate and call Deandre Williams and Elza Riley to testify at trial.

III.   Trial counsel rendered ineffective assistance by failing to present the testimony of critical, available defense witnesses at trial, violating Mr. Bethel's rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article II, §§ 7 and 30 of the Oklahoma Constitution.

IV.   Appellate counsel was ineffective for failing to file trial counsel was ineffective for not subjecting the prosecution's case of robbery with a firearm to adversarial testing and conceded the robbery charge by confessing guilt without permission of Petitioner.

V.   Petitioner is entitled to an evidentiary hearing on these issues.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I.

The Post-Conviction Procedure Act is neither a substitute for a direct appeal, nor a means for a second appeal. *Fox v. State*, 1994 OK CR 52, ¶ 2, 880 P.2d 383, 384; *Maines v. State*, 1979 OK CR 71, ¶ 4, 597 P.2d 774, 775–76. The scope of this remedial measure is *strictly limited* and does not allow for litigation of issues available for review at the time of direct appeal. *Castro v. State*, 1994 OK CR 53, ¶ 2, 880 P.2d 387, 388; *Johnson v. State*, 1991 OK CR 124, ¶¶ 3–4, 823 P.2d 370, 372. "Issues that were previously

raised and ruled by upon by are *procedurally barred* from further review under the doctrine of *res judicata*; and issues that were not raised previously on direct appeal, but which could have been raised, are *waived* for further review." *Logan v. State*, 2013 OK CR 2, ¶ 3, 293 P.3d 969, 973 (emphasis added).

An exception to this rule exists where a court finds sufficient reason for not asserting or inadequately presenting an issue in prior proceedings or "when an intervening change in constitutional law impacts the judgment and sentence." 22 O.S.2011, § 1086; *Bryson v. State*, 1995 OK CR 57, ¶ 2, 903 P.2d 333, 334. Sufficient reason for failing to previously raise or adequately assert an issue requires a showing that some impediment external to the defense prevented the petitioner and counsel from properly raising the claim. *Johnson*, 1991 OK CR 124, ¶ 7, 823 P.2d at 373. "Petitioner has the burden of establishing that his alleged claim could not have been previously raised and thus is not procedurally barred." *Robinson v. State*, 1997 OK CR 24, ¶ 17, 937 P.2d 101, 108.

This Court finds that Petitioner's post-conviction claim regarding his trial attorney's performance is substantively identical to his ineffective assistance of counsel claim that was raised within his direct appeal. *Bethel v. State*, F-2014-336 (Okl.Cr. July 15, 2015) (not for publication). Appellate counsel argued that his trial attorney was ineffective for failing to call available defense witnesses on his behalf. *Id.* at 9–10. Appellate counsel did so in the brief and in the application for an evidentiary hearing. *Id.*;

see also Resp't's Ex. 1. Therefore, this Court finds that Proposition III is barred by the doctrine of *res judicata*. *See Logan*, 2013 OK CR 2, ¶ 3, 293 P.3d at 973. Petitioner has not established that this claim was inadequately raised in a prior proceeding. 22 O.S.2011, § 1086. Post-conviction review is not an opportunity for a second chance to argue claims of error in hopes that doing so in a different proceeding may change the outcome. *Turrentine v. State*, 1998 OK CR 44, ¶ 12, 965 P.2d 985, 989. "Simply envisioning a new method of presenting an argument previously raised does not avoid the procedural bar." *McCarty v. State*, 1999 OK CR 24, ¶ 9, 989 P.2d 990, 995. The Court of Criminal Appeals has held that when a claim a procedurally barred, there is no need to address the merits of the issues presented. *Boyd v. State*, 1996 OK CR 12, ¶ 3, 915 P.2d 922, 924. Proposition III is DENIED. *See Logan*, 2013 OK CR 2, ¶ 3, 293 P.3d at 973.

## II.

The Court of Criminal Appeals in *Logan v. State*, 2013 OK CR 2, ¶ 5, 293 P.3d 969, held that post-conviction claims of ineffective assistance of appellate counsel are reviewed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Smith v. Robbins*, 528 U.S. 259, 289, 120 S.Ct. 746, 765, 145 L.Ed.2d 756 (2000) ("[Petitioner] must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance of appellate counsel."). Petitioner must show (1) deficient performance, by

demonstrating that his appellate counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for appellate counsel's unprofessional error, the result of his appeal would have been different. *See Logan*, 2013 OK CR 2, ¶ 5, 293 P.3d at 973. A court considering an ineffective assistance of counsel claim must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Harrington v. Richter*, 562 U.S. 86, 104, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011) (citing *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065).

## A.

In Proposition II, Petitioner raises a claim of "newly discovered evidence" of ineffective assistance of appellate counsel for failing to raise a claim regarding ineffective assistance of trial counsel for failure to investigate and present defense witnesses Deandre Williams and Elza Riley. *See* Pet'r's Application, 7.

The Post-Conviction Procedure Act will grant relief upon a petitioner's showing that "there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice." 22 O.S.2011, § 1080(d). This evidence must rise to the same level as that required of "newly discovered evidence." *See May v. State*, 1976 OK CR 328, ¶ 10, 75 P.3d 891, 892 (holding that Section 1080(d) employs the same test as newly discovered

evidence under Section 952 of Title 22 of the Oklahoma Statutes). The standard for newly discovered evidence claims requires "that the evidence be material, that it could not have been discovered before trial with due diligence, it cannot be cumulative, and it must create a reasonable probability of changing the outcome of the trial." *Sheppard v. State*, 1987 OK CR 4, ¶ 4, 731 P.2d 989, 990.

This Court finds that the affidavits Petitioner included with his post-conviction application do not constitute "newly discovered evidence" for several reasons. Petitioner already raised substantively identical propositions of error regarding trial counsel within his direct appeal. *Bethel v. State*, F-2014-336 (Okl.Cr. July 15, 2015) (not for publication); Resp't's Ex. 1. This included affidavits from Deandre Williams and Wanda Smith. *See* Resp't's Ex. 1. Petitioner has included the very same affidavits from Deandre Williams and Wanda Smith in his post-conviction application. *See* Pet'r's Application, Exhibits A and B. This information was already presented and is not "newly discovered." This Court finds that this information was also able to be discovered prior to trial. *Sheppard*, 1987 OK CR 4, ¶ 4, 731 P.2d at 990.

This Court finds that the information contained within Elza Riley's affidavit is not "newly discovered" because it likewise, with due diligence, could have been discovered before trial. *Id.* Petitioner concedes within his application that this witness was known and would have testified had he been called. *See* Pet'r's Application, 4. Additionally, Petitioner provides no

9

explanation as to why he did not communicate that Elza Riley was a potential defense witness to his appellate counsel, who clearly investigated the other witnesses he proffered during the pendency of his appeal. Petitioner simply states that appellate counsel was ineffective for failing to "discover" that this witness and Deandre Williams existed. *See* Pet'r's Application, 4. This Court finds Petitioner's argument is contrary to the record, in which appellate counsel proffered such an affidavit from Williams and vigorously litigated the issue of the failure to call available witnesses at trial. Finally, Petitioner fails to explain this evidence in light of his own admission of being present at the scene. Trial Tr. 854; State's Ex. 76. This Court finds that Petitioner has failed to show that this evidence is "newly discovered" and that the information contained within the affidavit would have changed the outcome of the trial. *Sheppard*, 1987 OK CR 4, ¶ 4, 731 P.2d at 990.

Finally, Petitioner argues that appellate counsel was ineffective for failing to argue that trial counsel was ineffective for not calling available defense witnesses. This Court finds this claim is directly contradicted by the record, which shows that appellate counsel vigorously litigated trial counsel's performance. *Bethel v. State*, F-2014-336 (Okl.Cr. July 15, 2015) (not for publication); Resp't's Ex. 1. This Court finds that Petitioner has not adequately supported his claims regarding appellate counsel's performance. Petitioner's "merely conclusory, unprovable, or unspecific claims of ineffective assistance of appellate counsel do not raise a genuine

issue of material fact" and it is not the job of this Court to comb through the record or the law looking for support for Petitioner's claims. *Logan*, 2013 OK CR 2, ¶ 23, 293 P.3d 969, 978–79. Petitioner must present some proof of his assertions rather than bald allegations against his appellate attorney. Without such proof, this Court is entitled to rely upon the presumption of the regularity to which all judgments and sentences are entitled which appear regular upon their face. *Hatch v. State*, 1996 OK CR 37, ¶ 57, 924 P.2d 284, 296. As aptly stated by the Court of Criminal Appeals,

> It is fundamental that where a petition for writ of habeas corpus, or for post conviction appeal, is filed, the burden is upon the petitioner to sustain the allegations of his petition, and that every presumption favors the regularity of the proceedings had in the trial court. Error must affirmatively appeal, and is never presumed.

*Russell v. Cherokee County Dist. Ct.*, 1968 OK CR 45, ¶ 5, 438 P.2d 293, 294. Repeated conclusions that appellate counsel was ineffective are not sufficient proof. *Logan*, 2013 OK CR 2, ¶ 23, 293 P.3d at 978–79. Petitioner cannot show deficient performance on appellate counsel's part, or any resulting prejudice, when appellate counsel put forth these issues that he claims appellate counsel did not. As such, this Court finds that Petitioner has not demonstrated a reasonable probability that, but for appellate counsel's unprofessional error, the result of his appeal would have been different. Proposition II is DENIED. *See Logan*, 2013 OK CR 2, ¶ 5, 293 P.3d at 973.

11

**B.**

In Proposition IV, Petitioner argues that appellate counsel was ineffective for failing to argue that trial counsel was ineffective for not subjecting the prosecution's Robbery with a Firearm count to adversarial testing. Petitioner speculates that the victim was mistaken as to whether he was being robbed. This Court finds that Petitioner's argument is essentially a challenge to the sufficiency of the evidence of the Robbery count.

Appellate counsel raised a proposition of error regarding the sufficiency of the evidence in Petitioner's direct appeal, arguing that the elements of robbery were not present, and that the evidence did not show Petitioner was there. *Bethel v. State*, F-2014-336 (Okl.Cr. July 15, 2015) (not for publication). While not couched as an ineffective assistance of trial counsel claim, appellate counsel did raise such a proposition, and this Court finds Petitioner's claim is barred by the doctrine of *res judicata. See Logan*, 2013 OK CR 2, ¶ 3, 293 P.3d at 973. Petitioner cannot show that appellate counsel was ineffective and committed an error that would have changed the outcome of the direct appeal. *Id.* Additionally, there is nothing in the record reflects that trial counsel conceded that Petitioner took part in the robbery. *See generally* Trial Tr. Petitioner complains about the trial attorney's concession of his possession of the firearm linked to the robbery and his intoxication, but the evidence at trial clearly showed that both facts were true. Trial Tr. 553–54. Counsel's decision to do so was clearly

trial strategy given the weight of the evidence, and should not be second-guessed. *Underwood v. State*, 2011 OK CR 12, ¶ 87, 252 P.3d 221, 253 (citing *Strickland*, 466 U.S. at 690–91, 104 S.Ct. at 2066). This Court finds that Petitioner has failed to show a reasonable probability that, but for appellate counsel's unprofessional error, the result of his appeal would have been different. Proposition IV is DENIED. *See Logan*, 2013 OK CR 2, ¶ 5, 293 P.3d at 973.

### III.

Within Proposition I, Petitioner claims that he is "actually innocent." A claim of factual innocence may be raised at any stage of the appellate process. *Slaughter v. State*, 2005 OK CR 6, ¶ 6, 108 P.3d 1052, 1054. The Court of Criminal Appeals has recognized that "innocence claims are the Post-Conviction Procedure Act's foundation." *Id.* Petitioner claims that appellate counsel was ineffective for failing to discover evidence of eyewitness testimony of Elza Riley, and this proves he is innocent. "Petitioner must show by clear and convincing evidence that but for the alleged error no reasonable juror would have found the petitioner guilty of the crime of which he was convicted." *Braun v. State*, 1997 OK CR 26, ¶ 28 n.15, 937 P.2d 505, 514 n.15.

This Court finds that Petitioner's self-serving account of the events on the date of the offense within his own affidavit, and that of Elza Riley's, is contradicted by the record. Petitioner was found in the white Chevrolet Cobalt observed at the scene of the crime, and in possession of a firearm

used in the robbery. Trial Tr. 804–09. Petitioner already proffered his own explanation as to how he came to be in possession of the weapon at jury trial, a defense that the jury rejected. Trial Tr. 823–25. Petitioner also admitted on a phone call to his father during that he was present at the scene, despite his many protestations at trial and within his post-conviction application that he was not. Trial Tr. 854; State's Ex. 76. Petitioner has failed to show by clear and convincing evidence that no reasonable juror would have found Petitioner guilty of the crime, and as such, Proposition I is DENIED. *Braun*, 1997 OK CR 26, ¶ 28 n.15, 937 P.2d 505, 514 n.15.

## IV.

This Court finds that Petitioner has failed to establish a material issue of fact within his post-conviction application, and as such, declines to conduct an evidentiary hearing. 22 O.S.2011, § 1084.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that Petitioner's application for post-conviction relief is hereby **DENIED**.

**SO ORDERED** this ____ 2ⁿᵈ ____ day of ____ MARCH ____, 2017.

_____
JAMES CAPUTO
DISTRICT COURT JUDGE

## CERTIFICATE OF MAILING

I certify that on the date of filing, a certified copy of the above and foregoing Order was placed in the United States Mail with sufficient postage affixed thereto, addressed to:

*Petitioner, Pro Se*
Deandre Bethel, #690424
Lawton Correctional Facility
8607 S.E. Flower Mound Road
Lawton, OK 73501

*Clerk of the Oklahoma Court of Criminal Appeals*
Michael S. Richie
2100 N. Lincoln Blvd., Suite 4
Oklahoma City, OK 73105

and that a true and correct copy of the above and foregoing Order Denying Application for Post-Conviction Relief was hand-delivered to:

*Counsel for Respondent*
Stephanie A. Collingwood
Assistant District Attorney
Tulsa County District Attorney's Office
Tulsa County Courthouse

DON NEWBERRY
TULSA COUNTY COURT CLERK

BY:_____
**DEPUTY COURT CLERK**

15

# PERSCRIBED FORM TO BE USE BY PETITIONER IN CONFINMENT IN THE OKLAHOMA COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA

DEANDRE BETHEL )
Petitioner / Appellant, )
)
-vs- )
) **PC 2017 432**
STATE OF OKLAHOMA ) Case No.
Respondent )
Respondent / Appellee. ) **(Supplied by Clerk)**
)

**FILED**
IN COURT OF CRIMINAL APPEALS
STATE OF OKLAHOMA

APR 26 2017

MICHAEL S. RICHIE
CLERK

## PETITION FOR; *(Indicate which)*

_____ **Writ of Habeas Corpus**

_____ **Appeal Out of Time**

_____ **Mandamus**

____X____ **Other** __POST-CONVICTION APPEAL__

### Instructions – Read Carefully

This application form is for use by persons in State Custody filing without assistance of counsel.

Indicate the purpose of this petition. Habeas Corpus is for release because the court order restraining Petitioner is illegal. If Petitioner had no appeal, he may be entitled to an appeal out of time if denied some right relating to the right to appeal. If petition is for other relief, so indicate.

In order for this petition to receive consideration by the Court of Criminal Appeals, it shall be signed by the Petitioner and notarized *(or verified under penalty of perjury under the laws of Oklahoma that the petition is true and correct, see Title 12 O.S.Supp.2004, § 426; see also Rule 1.13, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2013)*, and the petition shall set forth in concise form the answers to each applicable question. If necessary, Petitioner may finish his answer to a particular question on the reverse side of the page or on an additional blank page. Any such additional pages shall be incorporated into the petition, as being a part thereof. Petitioner shall make it clear to which question and such continued answer refers.

Since every petition must be sworn to under oath, any false statement of material fact therein may serve as the basis of prosecution and conviction of perjury. Petitioner should therefore exercise care to assure that all answers are true and correct.

If the petition is taken *in forma pauperis,* you shall include an "Affidavit In Forma Pauperis" 13.2 Form setting forth information, which establishes that Petitioner will be unable to pay the fees and costs. When the petition is completed, *the original and two copies (WITH A CERTIFIED COPY OF THE DISTRICT COURT'S ORDER DENYING RELIEF AND A COPY OF THE NOTICE OF POST-CONVICTION APPEAL THAT WAS FILED IN DISTRICT COURT, SEE OCCA RULE 5.2(C)(2))* shall be mailed to the Clerk of the Appellate Courts, Oklahoma Judicial Center, 2100 N. Lincoln Blvd., Ste. 4, Oklahoma City, Oklahoma, 73105-4907.

1. **Your Full Name, any alias, and O.D.O.C. Prison Number:** _____
   DeAndre Bethel #609424

2. **Place of Detention:** Lawton Correctional Facility, 8607 Southeast Flower Mound Road, Lawton, Oklahoma 73501-9765

3. **Reason for Detention:** _____ Felon† Murder
   a. **Judgment and Sentence on Conviction:**
      Court: District Court
      County: Tulsa
      Crime: Felony Murder
      Case Number: CF-2012-660
      Term of Sentence: Life
      Date Sentenced: March 14, 2014
   b. **Criminal Charges Pending:**
      Court: _____
      County: _____
      Crime Charged: _____
      Case Number: _____
      Date Imprisoned: _____

4. **If you are not attacking the legality of the authority by which you are incarcerated as described above in Question three (3), described the custody or judgment which is the subject of this application:** Incarcerated at Lawton Correctional Facility, Lawton, OK

5. **Plea Entered:**

   a. **Before Committing Magistrate:** Guilty ( ) Not Guilty ( ) Nolo Contendere ( )
   b. **At Preliminary Hearing:** Guilty ( ) Not Guilty ( ) Nolo Contendere ( )
   c. **At Arraignment:** Guilty ( ) Not Guilty ( ) Nolo Contendere ( )
   d. **At Trial:** Guilty ( ) Not Guilty ( ) Nolo Contendere ( )

6. **In you were found guilty after a plea of plea of not guilty, was that finding made by:** Jury (x)   Judge without a Jury   ( )

7. **If you were sentenced on a plea of guilty, did you seek to withdraw your plea of guilty after judgment and sentence was rendered against you and enter a plea of "NOT GUILTY."**

   Yes ( )   No ( )   Request Granted:  Yes ( )  No ( )

8. **Attorney: Indicate below when you were represented by counsel:**

   a. **Before Committing Magistrate:** No Attorney ( ) Court Appointed (x) Retained ( )
   b. **At Preliminary Hearing:** No Attorney ( ) Court Appointed (x) Retained ( )
   c. **At Arraignment:** No Attorney ( ) Court Appointed (x) Retained ( )
   d. **Trial:** No Attorney ( ) Court Appointed (x) Retained ( )
   e. **Sentencing:** No Attorney ( ) Court Appointed (x) Retained ( )
   f. **Appeal:** No Attorney ( ) Court Appointed (x) Retained ( )
   g. **Name and address of Attorney's Representing you:**
      Steven Vincent, Tulsa County Public Defender's Office
      Jamie Pybas, OIDS

9. Appeal:

    a. Did you serve notice of intention and request preparation of a case-made or record within 10 days after Judgment and Sentence was imposed?   Yes (x)   No ( )

    b. Did you request preparation of case-made or records at public expense in trial court and offer proof of inability to pay?   Yes (x)   No ( )

    c. Was this request granted?   Yes (x)   No ( )

    d. Did you request the trial court to appoint counsel for appeal?   Yes (x) or No ( )

    e. Was this request granted?   Yes (x)   No ( )

    f. Did the trial court or your attorney advise you of your right to appeal the Judgment & Sentence?   Yes (x)   No ( )

    g. Did the trial court or your attorney advise you of your right to appointment of counsel and preparation of a case-made at state expense if you were indigent?   Yes (x)   No ( )

    h. Was an appeal perfected of your conviction?   Yes (x)   No ( )

10. Applications to other courts: If you have applied to other courts for the same relief as requested in this petition give the following information:

Court: _____   Case Number: _____

Location: _____   Date Filed: _____

Court's Action: _____   Date: _____

*(If more than one such application has been made, give the same information for each request).*

11. Prior applications to this Court: If you have made prior applications before this one to this Court for relief, give the following information:

Case No.: _____   Date Filed: _____

Relief Requested: _____

Court's Final Action: _____   Date: _____

*(If more than one such application has been made, give the same information for each request*

3

12. Check the precise relief now requested:

      ___X___ **Immediate Release**     _____ **Appeal Out of Time**

      _____ **New Trial**          _____ **Re-sentencing**

      _____ **Mandamus Relief**     _____ **Prohibition Relief**

      _____ **Other (be specific)** _____

13. Of what legal right or privilege do you believe you were deprived of that would support your requested relief?

           Actual Innocence

14. What happen to deprive you of that legal right or privilege? Who made the error of which you complain? What did they do wrong?

           See Brief

15. How do you think you could prove the facts you have stated in Question 14?

           See Brief

16. List by Name and citation ant case or statute that you think is very close factually or would be applicable to your case.

           See Brief

# <u>VERIFICATION</u>

STATE OF OKLAHOMA   )
                            )  SS.
COUNTY OF COMANCHE )

I, _____ DeAndre Bethel _____, being first duly sworn under oath, states that the foregoing PETITION is true and correct to the best of Petitioner/Appellant's belief and knowledge and so executes by subscribing his signature below.

Respectfully submitted,

# 609424

Print Name ___ DeAndre Bethel _____
**Lawton Correctional Facility**
**8607 SE Flower Mound Road**
**Lawton, Oklahoma 73501-9765**

**BRIEF-IN-CHIEF**

The District Court of Tulsa County committed reversible error contrary to state and federal law in its decision denying Mr. Bethel's Application for Post-Conviction Relief with evidence and arguments as follows:

Mr. Bethel is proceeding pro se, under *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1087 (2007); *Andrews v. Heaton*, 483 F.3d 1070, 1116 (10th Cir. 2007) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 562 (1972) (Taking into account that a pro se pleading is to be held to a less stringent standard than one formally submitted by an attorney); and claims *Hughes v. Rowe*, 449 U.S. 4, 9, 101 S.Ct. 173 (1980); and *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (The Court must review liberally and interpret pro se arguments to raise the strongest arguments that they suggest.). Mr. Bethel prays the Court's forbearance in reviewing the appeal.

## I. DISTRICT COURT ERRED IN DENYING MR. BETHEL'S RIGHT TO SELF-REPRESENTATION

Mr. Bethel asserts his constitutional right to self-representation guaranteed by the *Sixth Amendment* to submit his claim as filed. The district court's order is in such disarray that its recharacterization of the Application for Post-Conviction Relief (APCR) is a violation of Mr. Bethel's right to self-representation. Whereby, the district court's order should be disregarded in whole. Mr. Bethel construes his own arguments. See below.

## II. DISTRICT COURT ERRED BY MISCONSTRUING PRO SE PRISONER PLEADING

*Haines v. Kerner,* supra., allows that court to interpret pro se prisoner pleadings, however, the district court is not allowed to purposely re-characterize the claim. See below:

1. Mr. Bethel made one (1) propositional claim in the Application for Post-Conviction

1

Relief (APCR). Actual Innocence attached to the *Sixth Amendment* errors of ineffective assistance of appellate and trial counsel. See APCR at 3; and APCR Brief at 2. The district court re-characterized the claim into four (4) separate propositions. The recharacterization was erroneous.

2.  Sub-Propositions **A. & B.**, were in support of the allegation of actual innocence. Sub-Proposition **A.**: NEWLY DISCOVERED EVIDENCE OF INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL...; and Sub-Proposition **B.**: APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE TRIAL COUNSEL WAS INEFFECTIVE... The recharacterization of the sub-propositional supporting evidence into propositional claims was erroneous.

3.  Supporting evidence of actual innocence does not fit the criteria of *res judicata*. Mr. Bethel made sub-propositional claims in support of his allegation of actual innocence. The district court re-characterized the claim and denied the supporting evidence to the allegation of actual innocence res judicata. This recharacterization was erroneous.

4.  The standard of review cited by the district court in determination of actual innocence required: "Petitioner must show by *clear and convincing evidence* that but for the alleged error no reasonable juror would have found Petitioner guilty of the crime of which he was convicted." *Id.* District court order at 13. (emphasis added).

    Mr. Bethel cited *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1933, 185 L.Ed.2d 1019 (2013) (quoting *Sculp v. Delo*, 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1985) "The miscarriage of justice exception... [a]pplies to a severely confined category; cases in which new evidence shows '*it is more likely than not* that no reasonable juror would have convicted [the Petitioner]." (emphasis added) The district court citing of "*clear and convincing evidence*" is contrary to *McQuiggins'* and *Schulp's*, which cites the requirement as "*it is more likely than not.*" The *more likely than not* standard is clearly established federal law by the Supreme Court.

    The case law the district court relies upon: "To fall within this exception, a petitioner must show by '*clear and convincing evidence*' that, but for the alleged error, 'no reasonable juror would have found the petitioner guilty of the crime of which he was convicted.' *Wallace v. Lockhart*, 12 F.3d 823, 827 (8th Cir. 1994)." *Id. Braun v. State*,

937 P.2d 505, n. 15 (Okl. Cr. 1997). (emphasis added). The cited *clear and convincing evidence* standard is taken from an 8th Circuit Appeals case that is not clearly established federal law established by the Supreme Court. The recharacterization of the standard requiring *clear and convincing evidence* was error.

The district court made several crucial errors, whereby the district court's order should be disregarded as a whole.

## BACKGROUND

February 4, 2012, Byron Ivory was driving his vehicle with Ernest Roberts, and Bradley Jarrett as passengers and pulled into the parking lot of Club Pink at approximately 1:40 a.m. As the men sat in their vehicle, another car pulled into the parking lot, parking behind the victims with their lights on. One individual approached the vehicle, while Mr. Roberts was exiting the passenger side of the vehicle, the person that approached the vehicle repeatedly asked Mr. Roberts, "Do you know me?" and Mr. Roberts said, "No." The assailant pulled a gun and stuck it in Mr. Roberts' ribs. Mr. Roberts took out his wallet and cell phone, offered the wallet and cell phone to the assailant as an escape mechanism, then turned and ran. Roberts' jumped over a four-foot wall with a five-foot drop-off on the other side. Mr. Jarrett also exited the vehicle from the back seat and ran, but before running saw another individual standing beside the car parked behind them. Mr. Jarrett ran so hard that he ran out of his Nikes. Shooting started immediately and a short time later Mr. Ivory was discovered dead outside the vehicle from gun shot wounds.

Several Tulsa Firefighters in a fire station across from the club, witnessed two cars leaving the parking lot in a hurry. They described one of the vehicles as a white Chevy Cobalt. Several hours later Mr. Bethel was discovered asleep at an intersection traffic light in a white Chevy Cobalt and a gun in the passenger seat. Mr. Bethel was arrested for Public Intoxication and Possession of a Firearm and bonded out of jail. Police later tested the weapon and discovered that it was one of the weapons used in the shooting of Mr. Ivory and re-arrested Mr. Bethel. During and after both arrests Mr. Bethel consistently proffered to police

officers that he had just purchased the gun that morning from someone named Rio. Mr. Bethel was charged and convicted by a jury of Felony Murder with the underlying felony of First Degree Robbery with a Firearm. Mr. Bethel was sentenced to life in prison.

During his time of incarceration, Mr. Bethel did his own investigation as to what happened at Club Pink that night. He discovered that the incident was not a robbery, but retaliation of an ongoing feud between Byron Ivory and Laharry Myers, Jr. He also discovered that there were witnesses present that could testify that Mr. Bethel was not present.

## III. DISTRICT COURT ERRED BY DENYING ACTUAL INNOCENCE ATTACHED TO THE CONSTITUTIONAL ERRORS OF INEFFECTIVE ASSISTANCE OF APPELLATE AND TRIAL COUNSEL

The Court of Criminal Appeals has recognized that "[i]nnocence claims are the Post-Conviction Procedure Acts foundation" *Id. Slaughter v. State*, 108 P.3d 1052, 1054 (Okl. CR. 2005). Mr. Bethel claims actual innocence attached to constitutional errors of ineffective assistance of counsel with the demonstration of evidence of two (2) eyewitnesses and an alibi witness that were not called at trial due to ineffective assistance of trial counsel and were not submitted on direct appeal due to ineffective assistance of appellate counsel. These errors were due to no fault of Mr. Bethel and the missing available crucial defense witness establishes his actual innocence.

Mr. Bethel claimed actual innocence in the Application for Post-Conviction Relief proven by the attached affidavits of DeAndre Williams, Elza Riley and Wanda Janell Smith. His claim of actual innocence was attached to the supporting allegation of the constitutional errors of ineffective assistance of trial counsel and ineffective assistance of appellate counsel. Whereby, had counsels produced said available critical defense eyewitness' testimonies, Mr. Bethel would have succeeded at trial or would have obtained relief on direct appeal.[1] The additional evidence that was not presented at trial or on

---

[1] 1 *Jennings v. State*, 744 P.2d 212 (Okl. Cr. 1987); and *Wilholt v. State*, 816 P.2d 545 (Okl. Cr. 1991) The failure of counsel to call crucial witnesses was cause for reversal.

direct appeal demonstrates Mr. Bethel's actual innocence. This is a claim of miscarriage of justice that must be determined by the court. The court must determine if the available critical defense eyewitness testimonies have merit. See *Murray v. Carrier*, 477 U.S. 478, 495-96, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); see also *Herrera v. Collins*, 506 U.S. 390, 400-404, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993); *Sawyer v. Whitley*, 505 U.S. 333, 339-41, 112 S. Ct. 2514, 120 L. Ed. 2d 269 (1992); *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). To meet this test, a criminal defendant must make a colorable showing of factual innocence. *Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000) (citing *Herrera*, 506 U.S. at 404). "The miscarriage of justice exception, . . . applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'"

Mr. Bethel makes a colorable showing of factual innocence with exculpatory evidence of trustworthy available critical defense eyewitness accounts that were not presented during trial. Had the available critical defense eyewitness' accounts been presented at trial it is more likely than not that no reasonable jurist would have been able to determine Mr. Bethel guilty. The jury's failure to hear eyewitness testimony, contrary to circumstantial evidence was due to ineffective assistance of trial counsel, which allowed the jury to find Mr. Bethel guilty. Further, due to deficient performance by appellate counsel the available critical defense eyewitnesses were not considered on direct appeal.

A.    **ACTUAL INNOCENCE ATTACHED TO INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL BY FAILURE TO SUBMIT AVAILABLE CRITICAL DEFENSE WITNESSES ON DIRECT APPEAL WHICH ESTABLISHES ACTUAL INNOCENCE (See Att. F, G, H, I & J)**

The district court erred in determining the APCR. Under Sub-proposition A. Mr. Bethel stated that he discovered new evidence that appellate counsel was ineffective on direct appeal. The evidence of appellate counsel's deficiency is appellate counsel waived the available critical defense witnesses on

direct appeal. The same crucial defense witnessed that trial counsel failed to call at trial, which establishes Mr. Bethel's actual innocence.

## STANDARD OF REVIEW

Post-conviction claims of ineffective assistance of appellate counsel are reviewed under the standard for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See *Smith v. Robbins*, 528 U.S. 259, 289, 120 S.Ct. 746, 765, 145 L.Ed.2d 756 (2000) ("[Petitioner] must satisfy both prongs of the Strickland test in order to prevail on his claim of ineffective assistance of appellate counsel."); *Coddington*, 2011 OK CR 21, P 3, 259 P.3d at 835; *Davis v. State*, 2005 OK CR 21, P 7, 123 P.3d 243, 246. Under *Strickland*, a petitioner must show both (1) deficient performance, by demonstrating that his counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding (in this case the appeal) would have been different. *Strickland*, 466 U.S. at 687-89, 104 S.Ct. at 2064-66. And the Court recognizes that "[a] court considering a claim of ineffective assistance of counsel must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Harrington v. Richter*, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065).

In reviewing a claim of ineffective assistance of appellate counsel under *Strickland*, a court must look to the merits of the issue(s) that appellate counsel failed to raise. See *Malicoat v. Mullin*, 426 F.3d 1241, 1249 (10th Cir. 2005) ("[I]n certain circumstances, appellate counsel's omission of an issue may constitute ineffective assistance under *Strickland*. In analyzing such claims, the court must consider the merits of the omitted issue." (citing *Robbins*, 528 U.S. at 288, 120 S.Ct. at 765-66)); *Cargle v. Mullin*, 317 F.3d 1196, 1205 (10th Cir. 2003) ("The very focus of a Strickland inquiry regarding performance of appellate counsel is upon the merits of omitted issues, and no test that

6

ignores the merits of the omitted claim in conducting its ineffective assistance of appellate counsel analysis comports with federal law."). In the context of ineffective assistance of appellate counsel claims, only an examination of the merits of any omitted issues will reveal whether appellate counsel's performance was deficient (due to failing to raise the omitted issue(s)) and also whether the failure to raise the omitted issue(s) on appeal prejudiced the defendant, *i.e.*, whether there is a reasonable probability that raising the omitted issue(s) would have resulted in a different outcome in the defendant's direct appeal (e.g., a reversal, new trial, new sentencing proceeding, or sentence modification). *Id. Logan v. State*, 293 P.3d 969, 974 (Okl. Cr. 2013).

### 1. Deficient Performance

Mr. Bethel establishes deficient performance of appellate counsel prejudiced his appeal. By demonstration that trial counsel was ineffective for failing to uphold the constitutional level of representation as determined by the *Sixth Amendment* of the United States Constitution and appellate counsel failed to properly submit the issue in accordance with OCCA rules. Mr. Bethel also demonstrates that he was prejudiced.

Appellate counsel violated Rules 3.5(A)(5); 3.5(C)(D), Rules of Oklahoma Court of Criminal Appeals, Title 22, Ch. 18 app. (2014); and *Garrison v. State*, 103 P.3d 590, n.36 (Okl. Cr. 2004). Appellate counsel waived on direct appeal, Mr. Bethel's claim of ineffective assistance of trial counsel's failure to call available critical defense witnesses. Appellate counsel briefly referred to the argument in the brief-in-chief. Counsel made the complete argument in the Motion for Evidentiary Hearing, quoting citations of law and submitting new evidence that was not mentioned in the brief in chief. The OCCA waived the new evidence, wherefore, Mr. Bethel's available critical defense witnesses were not presented before the OCCA. Defense counsel caused Mr. Bethel's evidence to be waived by the appeals court. This is deficient performance.

Appellate counsel is a professional attorney and was constitutionally required to properly present Mr. Bethel's direct appeal in accordance with OCCA Court Rules. *Appellee* in response to Mr. Bethel's direct appeal notified the OCCA of defense counsel's deficient performance that caused the argument to be waived on direct appeal.

Appellate counsel filed Mr. Bethel's direct appeal generally referencing in a paragraph that trial counsel failed to present critical available defense witnesses. Counsel then filed an Application for Evidentiary Hearing on Sixth Amendment Claims, where she went into the specifics in great detail. The claim that trial counsel was ineffective for failing to call available critical defense witnesses was waived and this OCCA's decision in *Garrison v. State*, 103 P.3d 590 (Okl. Cr. 2004) is dispositive of this issue:

> Appellant's brief raises these four claims generally in his brief in chief, on one half page. His application for evidentiary hearing, however, goes into the specifics in great detail—102 pages of detail to be precise, not including the hundreds of pages attached to the application as exhibits—and included citations to and analysis of the matters within the record. This is a violation of Rule 3.11's provisions relating to applications for evidentiary hearing, the appellate brief content provisions of Rule 3.5, and the 100 page brief limitation of Rule 9.3. Concerning matters of ineffective assistance of trial counsel, an Appellant must set forth his or her assignments of error, supported by citations to the authorities, statutes, *and parts of the record*, within the appellate brief. An application for evidentiary hearing is ment to be an extract of the pertinent factual matters arising outside of the record, while appellate brief are to contain the application of law to fact and the arguments pertaining to the issue at hand, ineffective assistance (especially those relating to matters in the record). The failure to raise in an appellate brief an issue within the record waives the issue. Rule 3.5(A)(5) and C(6). In the future, failure to fully raise and support by authority in the brief in chief *those issues contained within the record* will constitute waiver of those issues on appeal.

*Id*, 2004 OK Cr 35, 131 n. 36, 103 P.3d at 612 n. 36 (emphasis added).

Just like the defendant in *Garrison*, appellate counsel's brief, which was fifty pages long, raised the claim of failure to call available critical defense witnesses in general terms without even identifying the available critical defense witnesses by name. Appellate counsel's application for evidentiary hearing, however, went into ten pages of detail, not including the attached exhibits. The application

contained citation to and analysis of matters *within the record*. See Application for Evidentiary Hearing at (**Att. C.**). As in *Garrison*, appellate counsel's application violated this Court's rules pertaining to the contents and the fifty-page limitation of an appellate brief. *See* Rules 3.5(A)(5), 3.5(C)(D), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2014). As appellate counsel failed entirely to "fully raise and support by authority in the brief in chief those issues contained within the record," appellate counsel waived the claim of ineffective assistance of counsel by failure to call available critical defense witnesses. *Garrison*, 2004 OK Cr 35, 131 n. 36, 103 P.3d at 612 n. 36. For the foregoing reasons, appellate counsel's deficient performance waived the available critical defense witnesses on direct appeal. See *Appellee's* Brief at 43-44 (**Att. D**).

In accordance with OCCA Rule 3.5, the argument was waived on direct appeal. The OCCA is not in the habit of violating its own rules, specifically, in the instance of a professional attorney violating court rules that they are required to know. Evidenced of the exclusion is demonstrated by the absence of any reference to the available critical defense witnesses in the OCCA Summary Opinion (**Att. E.**). The available critical defense witnesses were waived on direct appeal.

The district court waived the evidence res judicata. This was error. The OCCA waived the available critical defense witnesses on direct appeal due to ineffective assistance of appellate counsel. The district court's ruling that the available critical defense witnesses were considered on direct appeal was error. The evidence cannot waived in both the direct appeal and the APCR.

The waiving of the available critical defense witnesses on direct appeal was due to deficient performance of appellate counsel in violation of OCCA Court Rule 3.5. The pivotal question before the court is "Whether appellate counsel was deficient by improperly presenting the available critical defense witnesses on direct appeal that established Mr. Bethel's actual innocence?"

2.      **Prejudice**

9

Mr. Bethel argued to the district court in the APCR that appellate counsel was ineffective for failing to present available critical defense witnesses that would establish his actual innocence. The presentation of the witnesses contradicting the minimal circumstantial evidence and demonstrating trial counsel's deficient performance on direct appeal creates a reasonable probability of a different outcome of the appeal.

Wherefore, the deficient performance of appellate counsel causing the waiver of available critical defense witnesses is sufficient for reasonable probability that raising the omitted issue would have resulted in a different outcome in the defendant's direct appeal (e.g., a reversal, new trial, new sentencing proceeding, or sentence modification). *Id. Logan v. State*, 293 P.3d 969, 974 (Okl. Cr. 2013).

## B. ACTUAL INNOCENCE ATTACHED TO INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL BY FAILURE TO CALL AVAILABLE CRITICAL DEFENSE WITNESSES ON DIRECT APPEAL WHICH ESTABLISHES ACTUAL INNOCENCE (See Att. F, G, H, I & J)

Defense trial counsel failed to present the testimony of three (3) critical witnesses. One an alibi witness, who would testify that Mr. Bethel was with her during the time of the crime. Another eyewitness, who would testify that he was present at the scene and witnessed the crime and that Mr. Bethel was not present. And another eyewitness, who would testify that he was present at the crime, was convicted as an accessory after the fact and witnessed Mr. Bethel buy the handgun used in the crime after the fact. These witnesses corroborate Mr. Bethel's testimony at trial that he was not involved in the crime and bought the weapon in the early morning hours before he was arrested.

## STANDARD OF REVIEW

A claim of ineffective assistance of counsel presents a mixed question of fact and law, which the Court reviews de novo. *Williamson v. Ward*, 110 F.3d 1508, 1513 (10th Cir. 1997). "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between

defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Williamson*, 110 F.3d at 1513-14 (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 374, 91 L. Ed. 2d 305, 106 S. Ct. 2574 (1986)). As the Supreme Court established in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), to succeed on this claim, Defendant Bethel must show that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced thereby, which means that he must show a reasonable probability that the outcome of the trial would have been more favorable to him, absent the errors of trial counsel. See, e.g., *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999). In evaluating claims of this nature, we "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' *Strickland*, 466 U.S. at 689." *Id. Grant v. Trammell*, 727 F.3d 1006, 1017 (10th Cir. 2013) (internal quotation marks omitted) (citing *Strickland*, 466 U.S. at 694).

As for the claim involving uncalled witnesses the Court should resolve this claim under the prejudice-prong of *Strickland*. See *Rompilla v. Beard*, 545 U.S. 374, 390, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005). In doing the Court should assume that Petitioner satisfies *Strickland's* first prong (deficient performance) because his trial lawyer did not investigate or interview or call available critical defense witnesses. *See Cole v. Trammell*, 755 F.3d 1142, 1161 (10th Cir. 2014). (This is one of the crucial areas of investigation emphasized in the ABA Guidelines") (internal quotation marks omitted). When a witness is "crucial" to the defense, failure to secure that witness is often both unreasonable and prejudicial. This is especially true when the witness is an alibi witness or a disinterested bystander with exculpatory information, or when the government's case rests primarily on circumstantial evidence that would have been directly refuted by the witness's own testimony. See *Hodgson v. Warren*, 622 F.3d 591, 600-01 (6th Cir. 2010); *Adams v. Bertrand*, 453 F.3d 428, 437-38 (7th Cir. 2006); *Goodman v. Bertrand*, 467 F.3d 1022,

1030-31 (7th Cir. 2006); *United States v. Andrews*, 953 F.2d 1312, 1327 (11th Cir. 1992); *Coleman v. Brown*, 802 F.2d 1227, 1233-34 (10th Cir. 1986); *Gossip v. State*, 29 P.3d 597, 601 (Okl. Cr. 2001). The "failure to discover" was not sound trial strategy and to conclude that counsel's notion not to investigate and call eyewitnesses is founded upon ineffective assistance of counsel.

To show prejudice, Petitioner must show that his lawyers' failures mattered-"namely, that there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Grant*, 727 F.3d at 1018 (citing *Strickland*, 466 U.S. at 694). When a petitioner alleges ineffective assistance of counsel stemming from a failure to investigate, "we evaluate the totality of the evidence both that adduced at trial, and the evidence adduced in habeas proceedings." *Smith v. Mullin*, 379 F.3d 919, 942 (10th Cir. 2004) (quoting *Wiggins v. Smith*, 539 U.S. 510, 536, 123 S. Ct. 2527, 156 L. Ed. 2D 471 (2003).

1. **DEFICIENT PERFORMANCE OF TRIAL COUNSEL BY FAILURE TO INVESTIGATE, INTERVIEW AND CALL AVAILABLE CRITICAL DEFENSE WITNESSES WHICH WOULD ESTABLISH ACTUAL INNOCENCE**

Trial counsel was ineffective for failing to call DeAndre Williams, Elza Riley and Janell Smith as witnesses at trial. Due to discovered evidence of affidavits from Mr. Williams, Mr. Riley and Ms. Smith (See **Att. F, G, H, I & J**) where available critical defense witnesses, who state that they would have testified at trial that Mr. Bethel was not present at the crime scene.

These witnesses had specific facts that could only be obtained if they witnessed the events of the crime. The witness's testimonies were crucial to the determination of guilt or innocence of Mr. Bethel. However, none of the eyewitnesses were interviewed, investigated, or called as a witness by trial counsel. This information was available to trial counsel demonstrated by **Ex. J.**, which is an affidavit from Jolene Perham, who is as investigator in the Homicide Direct Appeal Division of the Oklahoma Indigent Defense System. Investigator Perham searched through the Trial Attorney's files

12

and retrieved letters identifying several of available critical defense witnesses that Mr. Bethel requested to be called as witnesses that were not called.

The extent to which counsel will be obligated to investigate in order to perform at a constitutionally adequate level of competency will vary case by case. In the instant matter, counsel did not call any witness on behalf of Mr. Bethel. The only witness that testified for the defense was Mr. Bethel. Defense counsel had a duty to investigate all strategies of defense and to call all relevant witnesses to testify on behalf of the defense. Defense counsel did not interview, investigate, or call Mr. Williams, Mr. Riley nor Ms. Smith as witnesses. This establishes the first prong of *Strickland*, because these witnesses were crucial to the determination of guilt or innocence. The testimony of Mr. Williams coupled with the testimony of Mr. Riley and Ms. Smith are surprisingly missing from the trial and is evidence of ineffective assistance of counsel.

It cannot be said that trial counsel made a strategic decision not to call these witnesses or that he was unaware of these witnesses, because Mr. Williams was initially a co-defendant of Mr. Bethel's and the cases were severed. Further, Mr. Bethel's mother contacted trial counsel prior to trial with witness information. See Att. J.

Had Mr. Williams testified that he saw Mr. Myers commit the crime and did not see Mr. Bethel' it would have effected the jury's verdict. The same is true involving the testimony of Mr. Riley. What the jury should have heard was three (3) eyewitnesses (Williams, Riley and Smith) testifying that Mr. Bethel was not at the scene of the crime. Verses circumstantial evidence of Mr. Bethel ending up with one of the weapons used in a crime the following morning. The jury should have heard testimony from these eyewitnesses that there was no robbery, but there was an ongoing feud between the two men and they both men had guns and further testimony that Mr. Bethel was not present. The additional testimony from Mr. Williams, Mr. Riley and Ms. Smith was crucial to the determination of the jury's

verdict.

The failure of trial counsel to interview, investigate and present Mr. Williams, Mr. Riley and Ms. Smith at trial is ineffective assistance of counsel. A criminal defense lawyer has a duty to conduct reasonable investigations into his client's case, which extends to the law as well as the facts. See *Strickland*, 466 U.S. at 690-91. As that duty pertains to investigation of the law, counsel is obligated to research relevant law to make an informed decision whether certain avenues will prove fruitful." *Rompilla v. Beard*, 545 U.S. 374, 387, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005). But "[a] decision not to investigate cannot be deemed reasonable if it is uninformed." *Fisher v. Gibson*, 282 F.3d 1283, 1296 (10th Cir. 2002). Trial counsel's decision not to investigate cannot be deemed reasonable, because it was uninformed and he failed to reasonably investigate and call crucial eyewitnesses to testify to Mr. Bethel's innocence. Trial counsel's performance by precedent is below professional norms, which satisfies the first prong of *Strickland*.

### 2.    RELIABILITY

### a.    AVAILABLE CRUCIAL DEFENSE WITNESSES

When a witness is "crucial" to the defense, failure to secure that witness is often both unreasonable and prejudicial. This is especially true when the witness is an alibi witness or a disinterested bystander with exculpatory information, or when the government's case rests primarily on circumstantial evidence that would have been directly refuted by the witness's own testimony. See *Hodgson v. Warren*, 622 F.3d 591, 600-01 (6th Cir. 2010); *Adams v. Bertrand*, 453 F.3d 428, 437-38 (7th Cir. 2006); *Goodman v. Bertrand*, 467 F.3d 1022, 1030-31 (7th Cir. 2006); *United States v. Andrews*, 953 F.2d 1312, 1327 (11th Cir. 1992); *Coleman v. Brown*, 802 F.2d 1227, 1233-34 (10th Cir. 1986); *Gossip v. State*, 29 P.3d 597, 601 (Okl. Cr. 2001).

Mr. Williams, Mr. Riley or Ms. Smith have no reason to fabricate their sworn testimonies. Mr.

Williams has nothing to gain by falsifying his sworn affidavit or court testimony. The same is true of Mr. Riley. Mr. Riley is an innocent bystander with no relation to Mr. Bethel, who has come forward of his on volition with a sworn statement and who will testify in-court as to what he witnessed with his own eyes. Further, the affidavit of Ms. Smith should be deemed reliable. Ms. Smith has no reason to falsify her sworn testimony and would receive no benefit for testifying in-court for the whereabouts of Mr. Bethel during the time of the crime or that he left her in the early morning hours to go and purchase the weapon, corroborating Mr. Bethel's testimony at trial. The non-involved parties should be considered reliable witnesses. When a witness is "crucial" to the defense, failure to secure that witness is often both unreasonable and prejudicial.

## b. DISTRICT COURT'S RELIANCE ON QUESTIONABLE PHONE CALL

The district court contributed its denial of Mr. Bethel's innocence claim on "Petitioner also admitted on a phone call to his father during that [sic] he was present at the crime scene, despite his many protestations at trial and within his post-conviction application that he was not. Trial Tr. 854; States Ex. 76."

The proper context for the alleged admission of guilt has yet to be established by a court. First, Detective White testified at Tr. 819:

Q: And let me ask you about whenever you're doing interviews. Do you have tactics, whenever you're interviewing a suspect in a homicide?
A.: Yes.

(Tr. 821)
Q.: Can you give an example of that?
A.: Like, for instance, I've got video, when in fact we may not actually have them on video.

Det. White used this tactic on Mr.. Bethel, telling Mr. Bethel that he had video of him at the crime scene being kicked out of the club. The information Mr. Bethel gave his father was false and said video was not produced in discovery or at trial. This is the information that Mr. Bethel conveyed to his

15

irate father. Mr. Bethel was young male responding to his irate father.

See Tr. 854:
Voice of Father: Were you there at the club?

Mr. Bethel: They said I'm on camera being kicked out the club.

In response to his father's irate demands, Mr. Bethel repeated what Det. White told him. That he was at the club that night. Mr. Bethel stated during the Det. White's interview that the night was a blur and he had a hard time remembering anything, but he was not at the club (Tr. 822). Mr. Bethel was found the next morning at a busy intersection, asleep at the wheel, while the signal lights cycled. He was dazed and confused.

Mr. Bethel phoned his mother immediately after talking to his father and told her, "They tried to tell me I was at this club and I told them I wasn't there." (Tr. 861). This was an issue Mr. Bethel could not explain or discuss with his irate father, who would not understand and would become more upset by Mr. Bethel's attempt to challenge the police statement that he was on video. Due to Det. White's deceptive tactics of telling Mr. Bethel there was video of him being expelled from the club, it resulted in the false admission to his father. Mr. Bethel made no such claim to anyone else.

The admission of a child to an irate father of what was told by a deceptive detective in not a reliable confession of being at the scene. The district court's reliance upon disputable evidence to establish guilt is unfounded and without merit. Wherefore, due to the consideration of the proper context of the alleged admission. Mr. Bethel requests the phone call be deemed unreliable.

## 3. AVAILABLE CRITICAL DEFENSE WITNESSES

When a witness is "crucial" to the defense, failure to secure that witness is often both unreasonable and prejudicial. This is especially true when the witness is an alibi witness or a disinterested bystander with exculpatory information, or when the government's case rests primarily on

16

circumstantial evidence that would have been directly refuted by the witness's own testimony. *Id.* The district court failed to take full consideration of the evidence and the effect of the witnesses' testimony would have on the jury decision. The court cannot hold confidence in the jury's verdict when considering the available critical defense witnesses.

### a. DeAndre Willaims

The affidavit for Mr. Williams states that he met with Mr. Bethel and witnessed him purchase the firearm involved in the crime after the commission of the crime. Mr. Williams further stated that he plead guilty to accessory after the fact and witnessed the altercation. Mr. Williams swears that Mr. Bethel's trial counsel nor anyone from his staff contacted him. The court cannot have confidence in the jury's verdict when considering this information verses the circumstantial evidence of Mr. Bethel being in possession of a weapon some hours after the crime.

### b. Elza Riley

Mr. Riley states that he witnessed the event while sitting in a vehicle in the club parking lot and would testify that Mr. Bethel was not present. Mr. Riley swears to information that only someone at the scene could state. Mr. Riley swears that he would also testify in a court of law under oath about what he eye witnessed and that Mr. Bethel was not present or involved. Mr. Riley swears that Mr. Bethel's trial counsel nor anyone from his staff contacted him. The court cannot have confidence in the jury's verdict when considering this information verses the circumstantial evidence of Mr. Bethel being in possession of the weapon some hours later. Specifically, without an eyewitness identification of Mr. Bethel in the club parking lot.

### c. Wanda Janell Smith

The affidavit of Ms. Smith, swears she was willing to testify at Mr. Bethel's trial if only she had

17

been contacted by trial counsel. Ms. Smith swears that Mr. Bethel was present with her during the time of the crime was committed and that Mr. Bethel left her presence to go purchase the weapon. The jury was denied the benefit of hearing from Ms. Smith during trial. Whereby, the court cannot have confidence in the jury's verdict upon circumstantial evidence of Mr. Bethel being in possession of the weapon some hours later verses the crucial eyewitness testimony of a reliable witness.

### 4.    PREJUDICE

The jury's failure to hear contrary testimony to unreliable circumstantial evidence prejudiced Mr. Bethel's trial. Had the jury heard from Mr. Williams (an accessory after the fact), Mr. Riley and Ms. Smith eyewitnesses to contradict the circumstantial evidence, it would have caused the jury to determine the truth of the matter and determined that Mr. Bethel was not present during the time of the crime, thereby determining his actual innocence. Mr. Williams had nothing to gain or lose by testifying that Petitioner was not present. Mr. Riley had nothing to gain by volunteering his testimony as an innocent bystander nor did Ms. Smith. On the other hand, the absence of these eyewitnesses caused Mr. Bethel prejudice. Prejudice is demonstrated by Williams,' Riley's and Ms. Smith's affidavits, swearing that Mr. Bethel was not present at the crime and is actually innocent.

It was imperative for the jury to hear the testimony of Mr. Williams, Mr. Riley and Ms. Smith. The jury was not allowed to judge between the testimony of the eyewitnesses and circumstantial evidence. Only Mr. Williams and Riley could truly say what happened and who was there that night and trial counsel did not interview, investigate or called either of these witnesses. This is crucial testimony that was necessary for the determination of guilt or innocence. This determination is the essence and only factor of Mr. Bethel's conviction.

Whereby, the absence of the testimony of Mr. Williams testifying that he did not witness Mr. Bethel at the crime scene and later saw Mr. Bethel purchase the gun, the absence of the testimony of

Mr. Riley that he also failed to witness Mr. Bethel at the crime scene and the testimony of Ms. Smith that Mr. Bethel was present with her that night and later left her to go and purchase the weapon prejudiced Mr. Bethel and affected the outcome of the trial. This information was available to trial counsel demonstrated by **Ex. J.**, which is an affidavit from Jolene Perham, who is as investigator in the Homicide Direct Appeal Division of the Oklahoma Indigent Defense System. Investigator Perham searched through the Trial Attorney's files and retrieved letters identifying several of available critical defense that Mr. Bethel requested to be called at trial.

Trial counsel did not completely analyze the evidence likely to be introduced at trial. If counsel had made a complete investigation, he would of interviewed Mr. Williams, Mr. Riley and Ms. Smith and known that they were willing to testify at trial that Mr. Bethel was not present at the crime scene and was actually innocent. The extent to which counsel will be obligated to investigate in order to perform at a constitutionally adequate level of competency will vary case by case: as the Supreme Court observed in *Strickland*, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. But "[a] decision not to investigate cannot be deemed reasonable if it is uninformed." *Fisher v. Gibson*, 282 F.3d 1283, 1296 (10th Cir. 2002). Counsel's failures to investigate, interview, or call Williams, Riley and Smith as crucial defense witnesses can not be considered reasonable. There is no evidence that counsel had reasons not to investigate the aforementioned witnesses. Here, the only evidence against Mr. Bethel is that he possessed a weapon used the night of the crime. The calling of eyewitnesses Williams, Riley and Smith in contradiction to the circumstantial evidence was reasonable and would had changed the outcome of the verdict.

Therefore, counsel was unreasonable for not interviewing, investigating, and calling Williams, Riley and Smith to testify on behalf of the defense. The testimony of the absent eyewitness would had

affected the verdict and demonstrated that Mr. Bethel is actually innocent. Therefore Mr. Bethel is prejudiced.

Mr. Bethel supports his allegation of actual innocence through the constitutional error of violation if his *Sixth Amendment* right to effective assistance of counsels with evidence that was not presented at trial. Satisfying the standard of making a colorable showing of factual innocence.[2] Mr. Bethel's showing of actual innocence must be addressed by the court to determine if the claim of ineffective assistance of failing to investigate, interview and call the available crucial defense eyewitnesses that have submitted sworn affidavits that they would have testified at trial has merit. See *Smith v. Robbins*, 528 U.S. 259, 288, 120 S.Ct. 746, 765-66, 145 L.Ed.2d 756 (2006) (In certain circumstances appellate counsel's omission of an issue may constitute ineffective assistance under *Strickland*. In analyzing such claims the court must consider the merits of the omitted issue.); See also *Cargel v. Mullin*, 317 F.3d at 1205 ("The very focus of *Strickland* inquiry regarding performance of appellate counsel is upon the merits of omitted issues and no test that ignores the merits of the omitted claim in conducting its ineffective assistance of appellate counsel analysis comports with federal law."); and *Logan*, 293 P.3d at 1205 (In the context of ineffective assistance of appellate counsel claims, only an examination of the merits of any omitted issues will reveal whether appellate counsel's performance was deficient.)

Mr. Bethel claims that the district court's review of the omitted evidence was insufficient to comport with the state and federal law. The decision of the district court is contrary to clearly established federal law as determined by the Supreme Court. Trial counsel's unprofessional errors were below professional norms by failing to investigate, interview and call available crucial defense witnesses to testify. Counsel's "decision not to investigate cannot be deemed reasonable if it is

---

2   *Murray v. Carrier*, 477 U.S. 478, 495-96, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); see also *Herrera v. Collins*, 506 U.S. 390, 400-404, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993); *Sawyer v. Whitley*, 505 U.S. 333, 339-41, 112 S. Ct. 2514, 120 L. Ed. 2d 269 (1992); *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995).

uninformed." *Id. Fisher*, 282 F.3d at 1296. The "failure to discover" was not sound trial strategy and to conclude that counsel's notion not to investigate and call eyewitnesses is founded upon ineffective assistance of counsel. *Id. Gossip v. State*, 29 P.3d at 601.

Counsel's failure to call available crucial defense eyewitnesses prejudiced Mr. Bethel. For eyewitnesses' testimonies were excluded from the jury. Whereby, Mr. Bethel was convicted by questionable circumstantial evidence. The failure of the jury to hear testimony of who, why and the sequence of events of what happened in the club parking lot by the eyewitnesses prejudiced Mr. Bethel. The district court erred when deciding that the available crucial defense eyewitnesses had already been considered on direct appeal, whereby, denying the evidence res judicata.

For the aforementioned reasons the district court erred in considering the affect such crucial testimony would have affected the jury's verdict. There cannot be any doubt that trial counsel was ineffective for failing to investigate, interview, call and secure the aforementioned testimony and failure to do so affected the jury's verdict. Further, appellate counsel's failure to secure and present said evidence during direct appeal further prejudiced Mr. Bethel's appeal.

Petitioner has demonstrated that he is actually innocent of Robbery with a Firearm and Felony Murder because he was not present at the crime scene as sworn to by the eyewitnesses. The affidavit from Mr. Williams demonstrates that Mr. Bethel was not present at the scene of the crime and bought the weapon later that morning. The affidavit of Riley also demonstrates that Mr. Bethel was not present at the crime scene. The affidavit of Ms. Smith demonstrates that Mr. Bethel was not present at the crime scene. The affidavit of Jolene Perham demonstrates that trial counsel was notified of the witnesses. The jury was uninformed of Mr. Williams', Mr. Riley's and Ms. Smith's testimonies. All the testimonies were crucial to the defense of Mr. Bethel. Trial counsels' failure interview and call Mr. Williams, Mr. Riley or Ms. Smith as witnesses were unprofessional errors. Appellate counsel's failure

to properly present the crucial witnesses to the appeals court was also deficient performance. Mr. Bethel claims that the witnesses were presented improperly; the state attorney general declared that the witnesses were improperly submitted and the OCCA failed to address the crucial witnesses on direct appeal. Mr. Bethel has satisfied both prongs in regards to ineffective assistance of trial and appellate counsel. The absence of the available crucial defense eyewitnesses satisfies the first prong of *Strickland*. The second prong of *Strickland* is satisfied by had the eyewitnesses been called it would have changed the outcome of both trial and the appeal. Wherefore, Petitioner has satisfied both prongs of *Strickland* in regards to ineffective assistance of trial and appellate counsel.

Petitioner further claims his actual innocence, because this case is a case in which evidence shows it is more likely than not that no reasonable juror would have convicted Mr. Bethel after the aforementioned evidence was presented before a jury.

Wherefore, Petitioner request that the sentence be vacated and the case remanded back with instructions to dismiss.

Petitioner also requests that Mr. Williams, Mr. Riley and Ms. Smith be called as witnesses at an evidentiary hearing to determine the efficiency of trial and appellate counsels' effectiveness.

**C. ACTUAL INNOCENCE ATTACHED TO APPELLATE COUNSEL WAS INEFFECTIVE IN VIOLATION OF THE SIXTH AMENDMENT FOR FAILING TO FILE TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO SUBJECT THE PROSECUTION'S CASE OF ROBBERY WITH A FIREARM TO ADVERSARIAL TESTING AND CONCEDED THE ROBBERY CHARGE BY CONFESSING GUILT WITHOUT PERMISSION OF APPELLANT**

## STANDARD OF REVIEW

In *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), the United States Supreme Court "recognized a limited exception to *Strickland*," *Crawley v. Dinwiddie*, 584 F.3d 916, 922 n.8 (10th Cir. 2009), by holding that "if counsel entirely fails to subject the prosecution's case

to meaningful adversarial testing, then there has been a denial of *Sixth Amendment* rights that makes the adversary process itself presumptively unreliable." 466 U.S. at 659. In other words, "*Cronic* held that a *Sixth Amendment* violation may be found without inquiring into counsel's actual performance or requiring the defendant to show the effect it had on the trial, when circumstances [exist] that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified . . . ." *Wright v. Van Patten*, 552 U.S. 120, 124, 128 S. Ct. 743, 169 L. Ed. 2d 583 (2008) (per curiam) (internal quotation marks and citations omitted; brackets in original). Importantly, the Court has since "made clear that . . . 'the attorney's failure [to subject the prosecution's case to meaningful adversarial testing] must be complete.'" Id. at n.* (quoting *Bell v. Cone*, 535 U.S. 685, 697, 122 S. Ct. 1843, 152 L. Ed. 2D 914 (2002)). Thus, although we have held that "the admission by counsel of his client's guilt to the jury . . . represents a paradigmatic example of the sort of breakdown in the adversarial process that triggers a presumption of prejudice" under *Cronic*, *United States v. Williamson*, 53 F.3d 1500, 1511 (10th Cir. 1995), it is clear that, in order to implicate the *Cronic* presumption, any such admission by counsel must be complete. E.g., *Hale v. Gibson*, 227 F.3d 1298, 1323 (10th Cir. 2000) (concluding that *Cronic* was not implicated where defense counsel "made a reasonable strategic decision to concede some guilt by [petitioner], given the overwhelming evidence presented at trial, and focused on the extent of [petitioner's] involvement and whether others could have been involved."); *Trice v. Ward*, 196 F.3d 1151, 1161-62 (10th Cir. 1999) (same). We "have found a complete absence of meaningful adversarial testing only where the evidence overwhelmingly established that [the] attorney abandoned the required duty of loyalty to his client, and where counsel acted with reckless disregard for his client's best interests and, at times, apparently with the intention to weaken his client's case." *Turrentine v. Mullin*, 390 F.3d 1181, 1208 (10th Cir. 2004) (internal quotation marks omitted; brackets in original).

## **ARGUMENT AND AUTHORITIES**

Appellate counsel was ineffective for failing to submit that trial counsel was ineffective for failing to subject the prosecution's case of First Degree Robbery with a Firearm to adversarial testing and conceded the robbery charge by confessing guilt without permission of appellant.

Defense counsel was ineffective for failing to subject the prosecution's case of First Degree Robbery with a Firearm the underlying felony to Felony Murder to adversarial testing. Mr. Bethel conceded guilt to Public Intoxication and Possession of a Firearm. However, trial counsel also conceded guilt to the First Degree Robbery With a Firearm charge during trial without consent from Mr. Bethel. See **Att. F**.

Defense counsel on several occasions during trial conceded that this was an intentional robbery instead of challenging with adversarial testing the prosecution's case of robbery with a firearm. Had counsel challenged that the suspects had no intentions of taking away property (which is a required element of robbery) then the Petitioner could not have been convicted of the underlying felony of First Degree Robbery With a Firearm. Contrary to defense counsel's professional duty, his performance fell below the objective standard of reasonableness required by the *Sixth Amendment*. Instead of challenging the First Degree Robbery With Firearm charge, counsel stated that it was an intentional robbery, even though the assailant's had no intention of taking away property.

Petitioner will prove that the oversight of appellate counsel prejudiced the appeal, by demonstration that trial counsel was ineffective for failing to uphold the constitutional level of representation as determined by the *Sixth Amendment* of the United States Constitution. See below:

a.    **DEFICIENT PERFORMANCE**

The murder of Byron Ivory was retaliation for a previous altercation between the two (2) men. The driver of the white car (identified as Rio) knew Mr. Ivory and called Mr. Ivory to Club Pink so that LaHarry Myers could retaliate from the previous altercation. See Affidavits **G & H**, Affidavit from Elza

24

Rily and DeAndre Williams, who were present at Club Pink and witnessed the incident between the two (2) men. Mr. Williams later plead guilty in the Murder as an accessory after the fact in the instant matter. The altercation was not a robbery and was never intended to be a robbery. The underlying felony of First Degree Robbery With a Firearm did not occur, evidenced by that amount of guns involved in the crime scene and the lack of taking of property.

*First,* there was an altercation between (2) rival groups of black males inside the Club Pink that caused a ruckus (Tr. 335-39).

*Second,* there was only one suspect thought to have a gun in the parking lot witnessed by the victims (Tr. 367-68). There was video of *three* (3) suspects leaving in a white car (Tr. 797), but evidence of four (4) guns being fired (Tr. 715). The suspect shooter, identified as LaHarry Myers a/k/a L.J. by Mr. Williams and Mr. Riley as the person holding the gun on one of the victims was in an ongoing feud with the deceased victim. The hypothesis that Mr. Ivory possessed the fourth weapon and this was in a shootout between two (2) rivals was never presented or considered by the jury. The jury was unaware that the two (2) men knew each other and that there was an ongoing feud between the two.

It is conceivable that one of the four guns belonged to the victim. There is also evidence that this was not a robbery, through the testimony of Mr. Roberts that his property (cell phone and wallet) were not demanded, but that when he felt a gun on his torso that he volunteered his property without provocation to institute an escape (Tr. 370, 384). Further evidence indicates that Mr. Ivory, the only victim that did not run was not robbed. Factually, the robbery victim volunteered his property as an escape mechanism -- part of the property [his wallet] was found under Mr. Ivory (Tr. 801). The robbery victim threw the property and turned and ran, jumping a four-foot wall with a five-foot drop, in a nightclub parking lot with people milling around. The cell phone could have been lost and/or recovered

by anyone. The death of Mr. Ivory was not the result of a robbery, but retaliation of an ongoing feud between the two (2) men.

Defense counsel was ineffective for not subjecting the prosecution's case of First Degree Robbery with a Firearm to adversarial testing and conceding that there was a robbery. Defense counsel conceded the Public Intoxication, Possession of a Firearm and on several occasions conceded that this was an intentional First Degree Robbery with a Firearm without the consent of Mr. Bethel. Had counsel challenged that the suspects had no intention of taking away property, then the appellant could not be convicted of the underlying felony of Robbery With a Firearm. Contrary to his professional duty, defense counsel's performance fell below the objective standard of reasonableness required by the *Sixth Amendment*. Defense counsel gave the motive and demonstrated before the jury the vulnerableness of the victims. If there was a robbery, which is hard to determine and would be hard for a jury to determine if the charge was challenged, because the only alleged property taken is an absent cell phone, from a person that jumped a four-foot wall with a five-foot drop-off and ran out his shoes in a crowded nightclub parking lot. No one knows what actually happened to the cell phone.

*Third,* the volunteering of his property by the robbery victim does not indicate that the other suspects had prior knowledge that anything would be taken or knowledge that anything was taken. Prior knowledge and the intention to take away property are elements of First Degree Robbery. Due to the spontaneity of the victim throwing his property [which might of saved his life, because it distracted the man with the gun long enough for him to run] it could not be proven beyond a reasonable doubt that the other suspects had knowledge or consented to taking of property. See *Rosemond v. United States,* 134 S.Ct. 1240, 188L.Ed.2d 248 (2014), the Supreme Court held, in order to aid and abet, a defendant must have advance knowledge that a crime will be committed. One of the "basics" of aiding and abetting robbery [in addition to taking away is the requisite act of intent] when he intends to facilitate

26

that offense's commission." See also *Williams v. Trammell*, 782 F.3d 1184 (10th Cir. 2015), citing *Rosemond*, "Some mutual state beyond "mere assent" or "acquiescence" is also required. *Id. Wingfeild v. Massie*, 122 F.3d 1329, 1332 (10th Cir. 1997). Whereby, if there was a robbery, which it could not be proven that there was without defense counsel's concession. There may have been a spontaneous robbery, which did not elevate the other suspects of premeditation consensus that a robbery would be committed. The only person that offered any evidence of premeditated robbery or confessed culpability to the robbery was trial defense counsel.

Factually, defense counsel acknowledged the robbery, gave motive, opportunity and scenarios, whereby, robbery could be accomplished. Defense counsel admitted on two (2) occasions that the gun Bethel possessed was the murder weapon (Tr. 1020). Defense counsel further demonstrated motive, "And so from about 1:30 to 2:00 a.m. in the morning, you have what is called a target-rich environment, if you're a crook. You have lots of people, many of whom are inebriated, getting out of the bar at the same time, going to their cars, and they often have money and stuff and they have their keys. So predators tend to wander by at such times." (Tr. 1021). Further, defense counsel iterated, "Robbery crews are working the area at this time..." (Tr. 1022). Defense counsel concedes that there was a robbery and that it was intentional, which he was the only person to offer any evidence or confess culpability to robbery. Defense counsel's concession may not have been directly confessing the robbery, but overtly confessed that the victims were seasoned for a robbery and that robbery crews were working the area. The evidence introduced through affidavits supports the evidence that this was not a robbery. This demonstrates deficient performance of trial counsel. Mr. Bethel had not intended to confess to guilt of robbery and counsel's confession was without Petitioner's consent. See **Ex. F**.

### b.    PREJUDICE

The Oklahoma rules of Professional Conduct govern attorney conduct in this state. These rules

do not lay the groundwork for claims of ineffectiveness, but they are pertinent to any discussion of attorney conduct when the rules touch on subjects raised in a claim of ineffectiveness. The rules set forth the necessity of open consultation between attorneys and clients; furthermore, some decisions are left to the client after such consultation. "In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify." Rule 1.2, Rules of Professional Conduct, 5 O.S.1991, Ch.1, App. 3-A. "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Rule 1.4(b), Rules of Professional Conduct, 5 O.S.1991, Ch.1, App. 3-A. Likewise, the decision to concede guilt must be the client's ultimate decision.

The prosecution was required to prove robbery. Whereby, defense counsel's declaration of robbery proved the prosecution's case determining guilt to the robbery. Defense counsel gave motive and situations whereby the robbery could be accomplished. Had counsel not conceded that the victims were primed and ready to be robbed and that there was a robbery, whether directly or overtly, then the state was required to prove the robbery. The concession allowed the jury to agree with counsel that a robbery had occurred and convicted Mr. Bethel of First Degree Robbery with a Firearm. This prejudiced Mr. Bethel. See *Jackson v. State*, 2001 OK CR 37, ¶ 25, 41 P.3d 395, 400 ("[a] complete concession of guilt is a serious strategic decision that must only be made after consulting with the client and after receiving the client's consent or acquiescence.") Defense counsel's declaration of robbery prejudiced Mr. Bethel. Had counsel not made the declaration that a robbery was committed then there is a reasonable probability that the outcome of the trial would have been different.

Under *Strickland*, Mr. Bethel proves both (1) deficient performance, by demonstrating that his counsel's conduct was objectively unreasonable by conceding the robbery, and (2) resulting prejudice

by Mr. Bethel being convicted of the robbery by counsel's concession. Wherefore there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-89, 104 S.Ct. at 2064-66.

Wherefore, Mr. Bethel was prejudice by counsel's concession to robbery. Therefore, ineffective assistance of trial counsel has been established and the court should remand Mr. Bethel's case, because his *Sixth Amendment* right to effective assistance was violated.

In determining ineffective assistance of appellate counsel, the failure to properly present the available critical witnesses in accordance to court rules satisfies the first prong of *Strickland*. Further, the inability of trial counsel to present the available critical defense witnesses at trial satisfies the first prong of *Strickland*. Trial counsel's inability subject the state's case to adversarial testing and the concession of the robbery without Mr. Bethel's consent satisfies the first prong of *Strickland*. There is also the presumption of prejudice when an actual available critical defense witnesses are not called at trial meeting the second prong of *Strickland*. Both prongs of *Strickland* are met, affecting the outcome of the trial. Whereby, appellate counsel was ineffective for failure to raise the issue. There is "reasonable probability that, but for counsel's unreasonable failure" to raise the claim, Mr. Bethel "would have prevailed on his appeal." Therefore, district court's rejection of the actual innocence attached to ineffective assistance of appellate counsel and trial counsel was error. Mr. Bethel request that his sentence be voided and he be immediately released.

## CONCLUSION

Mr. Bethel has demonstrated the District Court of Tulsa County committed error contrary to state and federal law in the decision denying Mr. Bethel's Application for Post-Conviction Relief with evidence aforementioned, wherefore, Mr. Bethel request reversal of his conviction with a mandate that the case be dismissed.

RESPECTFULLY SUBMITTED

_DeAndre Bethel_

DeAndre Bethel
#690424
LCF-Lawton
8607 SE Flowermound Rd.
Lawton, OK

## CERTIFICATE OF VERIFICATION

I state under penalty of perjury under the laws of Oklahoma that the foregoing is true and correct.

4/25/17
(Date and Place)

_DeAndre Bethel_
(Signature)

## CERTIFICATE OF MAILING

I hereby certify that on the 25 day of April , 2017, I placed in the Lawton Correctional Facility legal mail mailbox the forgoing document, postage prepaid to:

Clerk of the Appellate Courts
Oklahoma Judicial Center
2100 N. Lincoln Blvd. Ste. 4
Oklahoma City, OK 73105-4907



# IN THE DISTRICT COURT OF ____TULSA____ COUNTY
## STATE OF OKLAHOMA

DEANDRE BETHEL _____ )
           **Petitioner / Appellant,** )
            )
   **vs.** )   **Case No.** __CF-2012-660__
            )
**THE STATE OF OKLAHOMA,** )
         **Respondents / Appellee.** )

## APPLICATION FOR POST-CONVICTION RELIEF

### PART A

I, __DeAndre Bethel__, DOC # __609424__, whose present address is Lawton Correctional Facility, 8607 SE Flower Mound Road, Lawton, Oklahoma 73501, hereby apply for relief under the Post-Conviction Procedure Act, Section 1080 et seq. of Title 22.

The sentence from which I seek relief is as follows:

1. (a) Court in which sentence was rendered: __Tulsa County District Court__
   (b) Case Number: __CF-2012-660__
2. Date of sentence: __March 14, 2014__
3. Terms of sentence: __Life With Parole__
4. Name of Presiding Judge: __Hornable James M. Caputo__
5. Are you now in custody serving this sentence?    Yes (x)  No ( )
   Where? __LCF-Lawton__
6. For what crime or crimes were you convicted? __Felony Murder__
   _____
   _____

7. Check whether the finding of guilty was made:
   After plea of guilty ( )   After plea of not guilty (X)
8. If found guilty after plea of not guilty, check whether the finding was made by:
   A jury (X) A judge without a jury ( )

9. Name of lawyer who represented you in trial court: __Steven Vincent__

10. Was your lawyer hired by you or your family?    Yes ( ) No (x)

    Appointed by the court?    Yes (x) No ( )

11. Did you appeal the conviction?    Yes (x) No ( )

    To what court or courts? _____

    __Oklahoma Court of Criminal Appeals__

12. Did a lawyer represent you for the appeal?    Yes (x) No ( )

    Was it the same lawyer as in No. 9 above?    Yes ( ) No (x)

    If "no," what was this lawyer's name? __Jamie D. Pybas__

    . Address? __OIDS, P.O. Box 926, Norman, OK__

13. Was an opinion written by the appellate court?    Yes (X) No ( )

    If "yes", give citations if published: __F-2014-336__

    If not published, give appellate case no.: _____

14. Did you seek any further review of or relief from your conviction at any other time in

    any court?    Yes ( ) No (x)

    If "Yes", state when you did so, the nature of your claim and the result (include

    citations to any reported opinions.) _____

    _____

    _____

    _____

    _____

    _____

## PART B

(If you have more than one proposition for relief, attach a separate sheet for each proposition. Answer the questions below as to each additional proposition, labeled SECOND PROPOSITION, THIRD PROPOSITION.)

I believe that I have    (1) propositions for relief from the conviction and sentence described in **PART A.**

**FIRST PROPOSITION:**

1. Of what legal right or privilege do you believe you were deprived in your case? _____
   ACTUAL INNOCENCE
   _____
   _____
   _____

2. In the facts of your case, what happened to deprive you of that legal right or privilege
   and who made the error of which you complain? _____
   _See Brief_____
   _____
   _____

3. List by name and citation any case or cases that are very close factually and legally to
   yours as examples of the error you believe occurred in your case. _____
   See Brief_____
   _____
   _____

4. How do you think you could now prove the facts you have stated in answer to
   Question No. 2, above? (ATTACH SUPPORTING DOCUMENTATION.) _____
   See Brief_____
   _____
   _____

5. If you did not timely appeal the original conviction, set forth facts showing how you
   were denied a direct appeal through no fault of your own. _____
   See Brief_____
   _____
   _____

6. Is this a proposition that could have been raised on Direct Appeal?  Yes ( )  No (X)
   Explain: _Due to ineffective assistance of appellate Counsel
   The argument was not filed._____
   _____
   _____

## PART C

I understand that I have an absolute right to appeal to the Court of Criminal Appeals from the trial court's order entered in this case, but unless I do so within thirty (30) days after the entry of the trial judge's order. I will have waived my right to appeal as provided by Section 1087 of Title 22.

## PART D

I hereby apply to have counsel appointed to represent me. I believe I am entitled to relief. I do not possess any money or property.

_07-26-16_
Date

_(signature)_
(Signature or Petitioner/Appellant)

STATE OF OKLAHOMA        )
                        ) SS.
COUNTY OF COMANCHE       )

I DeAndre Bethel, being first sworn under oath, states that he signed the above application and that the statements therein are true to the best of my knowledge and belief.

_(signature)_
(Signature of Petitioner/Appellant)

Subscribed and sworn to before me this _26th_ day of _September_ 2016.

_(signature)_
NOTARY PUBLIC

NOTARY PUBLIC State of OK
C. TOPPING
Comm. # 13011277
Expires 12-16-2017

My Commission Number is: _13011277_
My Commission Expires  : _12/16/2017_