

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA



SEP 1 8 2017

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

DEANDRE BETHEL, )
      Petitioner, )
)
v. )     Case No. 17-CV-397-JHP-FHM
)
JOE ALLBAUGH, DIRECTOR )
      Respondent. )
)

## REPLY TO RESPONDENT'S HABEAS RESPONSE

Petitioner is a pro se prisoner and request the Court to review his motion liberally in accordance with *Haines v. Kerner*, 404 U.S. 519, 520-521, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972) and *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

**PROPOSITION I. UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW AS ESTABLISHED BY THE SUPREME COURT IN *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1933, 185 L.Ed.2d 1019 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1985)**

Respondent acknowledges Petitioner's actual innocence claim attached to the constitutional error of ineffective assistance of counsel. *Id. Resp.* at 26. Respondent further acknowledges that the affidavits submitted with the petition are subject to review. *Id. Resp.* at 32.

Petitioner claimed that the states review of actual innocence is an unreasonable application of clearly established federal law as established by the Supreme Court in *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1933, 185 L.Ed.2d 1019 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1985).

> To make a credible showing of actual innocence, a "petitioner must 'support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial.'" ( Schlup, 513 U.S. at 324, 115 S. Ct. 851). This new evidence "must be sufficient to 'show that it is more likely than not that no reasonable juror would have convicted the petitioner in the light of the new evidence.'" *Id*. (quoting Schlup, 513 U.S. at 327, 115 S. Ct. 851); accord House, 547 U.S. at 539-40, 126 S. Ct. 2064 (reaffirming the Schlup test after AEDPA).



___ Mail   ___No Cert Svc   ___No Orig Sign

___ C/J  ___C/MJ  ___C/Ret'd  ___No Env

___No Cpys___No Env/Cpys___O/J  ___O/MJ

1

The state failed to respond to **PROPOSITION I.** and continues to unreasonably apply clearly established federal law in the case pertaining to Petitioner's actual innocence.

## A.    NEWLY DISCOVERED EVIDENCE

In Respondent's Reply, the Respondent asserts that Petitioner's evidence does not meet the criteria of "*newly discovered evidence*" and should be excluded. *Id. Resp.* at 34, 35, citing the OCCA Opinion, *Resp.* **Ex. 8** at 7-9. The Respondent cites the standard for meeting "newly discovered evidence" requires "that the evidence be material, *that it could not have been discovered at trial with due diligence*, it cannot be cumulative, and it must create a reasonable probability of changing the outcome of the trial." (emphasis added). The Respondent specifically focuses on that Petitioner's evidence *could have been discovered at trial with due diligence*.

This is contrary to clearly established federal law. Under the Supreme Court decisions *Schlup* and *McQuiggins supra.*, the evidence is only required to be new evidence missing from the trial.

The United States District Court for the Western District of Oklahoma previously ruled upon the unreasonable standard applied by the state. See *Moore v. Newton-Embry*, 2011 U.S. Dist. Lexis 128383 W.D., in which the Court opined that such a standard of not allowing evidence because *it could not have been discovered at trial with due diligence* is "nonsensical" or under the AEDPA standard, "unreasonable." The state's review meets the standard for granting a habeas petition for the application of clearly established federal law was unreasonable.

As established above and in *Doc.* #1, **Proposition I.**, the state unreasonably applied clearly established federal law in the review of the actual innocence claim, wherefore the Court must make a de novo decision, whether the new evidence absent from trial satisfies *Schlup* and *McQuiggins*.

In administering the *Schlup Test* the evidence at trial must be weighed against the new evidence to determine whether there is confidence in the jury's verdict.

## B.    SCHLUP TEST:

## 1.    EVIDENCE PRESENTED AT TRIAL

    i.      Petitioner was found asleep at the wheel the next morning with the gun used in the crime.

    ii.     A Telephone call was presented at trial, where Petitioner talks with his father and tells him he was at *a club*.[1]

---

[1]    The incident occurred in Club Pink's parking lot. Petitioner did not identify a specific club.

iii.   Petitioner testified, he was not at Club Pink; that he was with a female friend; and left her to go and purchase the gun from a Mr. Laharry Myers a/k/a/ L.J..

## 2.   CRITICAL EVIDENCE *NOT* PRESENTED AT TRIAL

i.   <u>Absent critical witness #1:</u> testifying before the jury: "Yes, I was at the scene of the crime, it was an ongoing altercation between two (2) men that took place (Laharry Myers and Bryon Ivory). Mr. Bethel was not present." *Doc.* #1 at **Ex. 2**.

ii.   <u>Absent critical witness #2:</u> testifying before the jury: "Mr. Bethel was with me at the time of the incident, then he left to go purchase a gun from Laharry Myers." *Doc.* #1 at **Ex. 3**.

iii.   <u>Absent critical witness #3:</u> testifying before the jury: "I was with Laharry Myers when he sold Mr. Bethel the gun after the crime." *Doc.* #1 at **Ex. 4**.

iv.   <u>Absent critical evidence:</u> Detective White testified that he tricks suspects into believing they were at the crime scene, "Like for instance, I've got video, when in fact we may not have them on video." (Tr. 819). Petitioner immediately told his mother that the police were lying about him on video at the club, because he was not there. (Tr. 861). Petitioner told Detective White that the night was a blur, but he was not at the club. (TR. 822). In response to Petitioner's fathers irate demands, Petitioner repeated to his father what Detective White told him, that he was at the club.

## 3.   WEIGH ING THE EVIDENCE

To administer the *Schlup Test* the evidence at trial must be weighed against the new evidence to determine whether there is confidence in the jury's verdict. The Court should approach this test de novo, because the state is silent on whether they performed the test.

When witnesses are "crucial" to the defense, failure to secure those witnesses is often both unreasonable and prejudicial. This is especially true when the witness is an alibi witness or a disinterested bystander with exculpatory information, or when the government's case rests primarily on eyewitness testimony that would have been directly refuted by the witness's own testimony. See *Hodgson v. Warren*, 622 F.3d 591, 600-01 (6th Cir. 2010); *Adams v. Bertrand*, 453 F.3d 428, 437-38 (7th Cir. 2006); *Goodman v. Bertrand*, 467 F.3d 1022, 1030-31 (7th Cir. 2006); *United States v. Andrews*, 953 F.2d 1312, 1327 (11th Cir. 1992); *Coleman v. Brown*, 802 F.2d 1227, 1233-34 (10th Cir. 1986).

This is especially true in the instant matter, Petitioner's counsel failed to call crucial witnesses that were alibi and disinterested bystanders with exculpatory information that refuted state's case of primarily

circumstantial evidence. The absent evidence *not* presented far outweighs the evidence presented at trial. No reasonable juror would convict when a disinterested bystander with exculpatory information comes forward and testifies that he witnessed the crime and Petitioner was not present. *Id.*; No reasonable juror would convict when an alibi witness testifies that the Petitioner was with them and not at the scene of the crime and later left to purchase a gun. *Id.*; No reasonable juror would convict when a witness testifies that I was with the guy that committed the crime and watched him sell the gun to Mr. Bethel. *Id.* The evidence of innocence is so strong that a court cannot have confidence in the verdict.

Respondent did not respond to the claim and thereby the argument must be conceded. Petitioner has satisfied *Schlup* and *McQuiggins* with a claim of actual innocence attached to the constitutional error of ineffective assistance of counsel. The state unreasonably applied the *Schlup Test* and excluded new evidence not present at trial. The state specifically violated *Schlup* and *McQuiggins* by barring the new evidence, when there is no bar to evidence upon a claim of miscarriage of justice. *Id. McQuiggins,* 185 L.Ed. at 1025. Wherefore, Petitioner request the petition be granted and immediate release ordered.

## PROPOSITION II. ACTUAL INNOCENCE ATTACHED TO THE SIXTH AMENDMENT CONSTITUTIONAL CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSELS

Petitioner does not make a free standing claim of actual innocence, but attaches and supports the claim with sub-propositions A, B, C, & D.

### A. ACTUAL INNOCENCE ATTACHED TO THE SIXTH AMENDMENT CONSTITUTIONAL CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner claimed that he is factually innocent of the charges in which he was convicted and his trial attorney was ineffective for failing to call several critical witnesses that would testify to his innocence. Likewise, Petitioner demonstrates that the OCCA's conclusion was contrary to and was an unreasonable application of *Strickland* and the state's procedure for determining ineffective assistance for appellate counsel was inadequate.

### 1. DEFICIENT PERFORMANCE OF TRIAL COUNSEL BY FAILURE TO CALL CRITICAL DEFENSE WITNESSES TO TESTIFY

Defense counsel failed to present the testimony of three (3) critical witnesses. One an alibi witness, who would testify that Mr. Bethel was with her during the time of the crime. Another eyewitness, who would testify that he was present at the scene and witnessed the crime and that Mr. Bethel was not present,

4

and another eyewitness, who would testify that he was present at the crime, was convicted as an accessory after the fact and witnessed Mr. Bethel buy the handgun used in the crime after the fact. These witnesses would have corroborated Mr. Bethel's testimony during trial that he was not involved in the crime and bought the weapon in the early morning hours before he was arrested. Trial counsel failed to present this evidence of actual innocence to the jury. "When witnesses are 'crucial' to the defense, failure to secure those witnesses is often both unreasonable and prejudicial." *Id.*

### i.     CORROBORATING EVIDENCE

Respondent proffers that because Mr. Bethel made his defense at trial without corroborating evidence, it was thereby sufficient and trial counsel was not ineffective for failing to present the supporting witnesses to corroborate Petitioner's explanation. "The affidavits which Petitioner presented on direct appeal and supplemented on post-conviction review were largely cumulative of the defense which Petitioner's jury considered and rejected at trial." *Id. Resp.* at 33, 35.

There is a fatal flaw in Respondent's reasoning. The jury did not accept or believe Petitioner's explanation, because he did not have supporting or corroborating evidence. This is the crux of Petitioner's claim, had the supporting evidence been presented then the jury would have believed Petitioner and he would not have been found guilty of the charges. Whereby, counsel's failure to call the crucial witnesses was  both unreasonable and prejudicial.

Respondent's claim that the evidence submitted in the affidavits are cumulative and therefore insufficient must fail, because this exactly the evidence Petitioner needed to corroborate his innocence that he testified to at trial.

### 2.     NEWLY DISCOVERED EVIDENCE

Respondent again proffers that the affidavits presented are not *newly discovered evidence*, suggesting that the state made the proper decision in denying Petitioner relief. *Id. Resp.* at 36. Yet, Respondent's argument makes the fatal flaw of omitting the affidavits because they were not *newly discovered evidence*, when Petitioner has established that such a standard is contrary to clearly established federal law under *Schlup* and *McQuiggins*. See **Proposition I.**

Respondent also proffers that the affidavits were "*vigorously*" presented by appellate counsel on direct appeal. *Id. Resp.* at 35. Respondent is the same attorney that responded to Petitioner's *direct appeal,* the same attorney who *vigorously* argued that appellate counsel was ineffective for improperly submitting the affidavits in violation of **Court Rules 3.5(A)(5)** and **C(6)** and that the affidavits should

be excluded. See *Resp.* **Ex. 3.** at 43-44. The OCCA did not make a determination on whether the affidavits were admissible or not. The affidavits where not mentioned in the opinion. See *Resp.* **Ex. 2.** at 13-14.

This forced Petitioner to resubmit the affidavits on post-conviction, because the affidavits demonstrate Petitioner's innocence and the ineffectiveness of trial counsel and such explosive evidence must have been overlooked for the state to make such an unreasonable determination in light of the proffered affidavits. The OCCA did not reference the affidavits on direct appeal, whereby, due to Respondent's (Mr. Peeper's) argument on direct appeal that the affidavits should be excluded because of appellate court rule violations, Petitioner could not take the chance that the affidavits were improperly submitted by appellate counsel *as Respondent argued.* Otherwise Respondent would now be arguing that the affidavits were improperly submitted on direct appeal and should be excluded.

Petitioner's claim that the evidence is not newly discovered evidence must fail, because it is contrary to clearly established federal law as established in *Schlup* and *McQuiggins.*

**B.      ACTUAL INNOCENCE ATTACHED TO APPELLATE COUNSEL WAS INEFFECTIVE IN VIOLATION OF THE SIXTH AMENDMENT FOR FAILING TO FILE TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO SUBJECT THE PROSECUTION'S CASE OF ROBBERY WITH A FIREARM TO ADVERSARIAL TESTING AND CONCEDED THE ROBBERY CHARGE BY CONFESSING GUILT WITHOUT PERMISSION OF APPELLANT**

Respondent argues that because "...trial counsel's decision to concede that which could not be denied (...the fact that a robbery had occurred) was [not] an unreasonable trial strategy." *Resp.* at 37.

Respondent acknowledges that trail counsel conceded the robbery and did not subject the prosecution's case of Robbery With a Firearm to adversarial testing. The Respondent state's that because the robbery could not be denied, whereby, counsel's actions were proper, therefore, the OCCA did not make an unreasonable application of clearly established federal law. However, Respondent does not consider that the actions taken by the robbery victim of volunteering his property does not meet the required elements of robbery or implicate that the unknowing co-defendants were aware that there was going to be a robbery. The state's adjudication of the argument was unreasonable. This was ineffective assistance of counsel and prejudiced Petitioner. See, *Doc. #1.*

**C.      ACTUAL INNOCENCE ATTACHED TO INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILURE TO OBJECT TO IMPROPER JURY INSTRUCTION**

Respondent properly recognizes Petitioner's argument that the OCCA failed to review the claim under ineffective assistance of trial counsel on direct appeal. The court established that the issue was settled previously in **Proposition IV.**[2] The OCCA ruled that since Petitioner's counsel sanctioned the erroneous instruction, Petitioner could not claim error.

However, the answer to **Proposition IV.** does not answer the issue that trial counsel was ineffective for granting the court permission to give the erroneous instruction. Petitioner prays that the court will properly review the claim de novo, because it was not answered by the state, contrary to Respondent's assertions. The Court does not owe deference to the state for this claim, because it was not answered on the merits. Counsel's action was ineffective and prejudiced Petitioner and the state made an unreasonable application of *Strickland* in its decision.

## D.    ACTUAL INNOCENCE ATTACHED TO INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILURE TO ESTABLISH THE PROPER CONTEXT OF CULPABLE TELEPHONE CALL

Respondent misinterprets Petitioner's claim on this argument. Petitioner did not want the call suppressed, but wanted the call put into the proper context. The context the trial counsel failed to establish, due to his ineffectiveness.

The state heavily relied upon the admission of Petitioner being at *a club* during a phone call to his father. Petitioner did not say he was at Club Pink. And trial counsel never presented the defense that the police was attempting to trick Petitioner into thinking that he was at the crime scene by misleading him into believing that they had Petitioner on video at Club Pink. This influenced his conversation with his father and counsel failed to pose the proper defense establishing this fact.

Petitioner attempted to explain the telephone call while on the witness stand during the prosecution's cross-examination (Tr. 987-990). This is not a new concept or argument. Petitioner made this argument on the witness stand and trial counsel had the opportunity to establish the defense, but failed (Tr. 987-988). The court would not allow the explanation on cross-examination and instructed Petitioner that "That's a yes or no question. If he [Defense Counsel] wants to follow up with the explanation, Mr. Vincent, that will be your pleasure." (Tr. 987-988).

---

2    Direct Appeal, **Proposition IV.** The trial *court* erred in failing to comply with the law governing contact with jurors during deliberations and by and by failing to advise deadlocked jurors not to surrender their honest convictions concerning the weight of the evidence in order to reach a verdict, in violation of Okla. Stat. Tit. 22, § 894 and Mr. Bethel's rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article II, §§ 7, 19 and 20 of the Oklahoma Constitution.

Mr. Vincent failed to follow up on the explanation of the telephone call. The explanation of the telephone call was crucial to Petitioner's defense. Specifically, when Petitioner attempted to explain it on cross-examination:

(Tr. 980)

Q. Okay, sir, would you agree with me that it looks bad that you put yourself at the club the night of the murder?

A. I didn't put myself there.

Q. You told your dad you did.

A. No, I wasn't telling I was. He asked me – as he was restating after I was telling him what the police officers were saying, he was just restating, as I took, that like the police officers was like, you were at the club. That's how I took it, so I was saying, yes, that's what they were saying. I wasn't actually – he wasn't actually asking the question – as I took it. It was just him restating, thinking out loud, hey, this is what they're saying. I took it as that's what he was saying, so I said yes, that's what they were saying.

Q. So, sir, when your dad just flat-out asked you, "Son, were you at the club?" and you said, "Yes." that wasn't it?

A. Well, at the time I was interpreting it –

Q. Yes or no, sir?

A. I have to explain. I can't say yes or no to that question, Ma'am.

The admission of a child to an irate father of what was told by a deceptive detective is not a reliable confession of being at the scene. The district court's reliance upon disputable evidence to establish guilt is unfounded and without merit. Wherefore, due to the consideration of the proper context of the alleged admission. Petitioner requests the phone call be deemed unreliable due to ineffective assistance of trial counsel or the call be considered in the context in which it was recorded.

Furthermore, Petitioner did not confess to being at Club Pink. His father told him to stay out the clubs, not to stay out of Club Pink. There is no evidence anyone indicated Club Pink. Wherefore, trial counsel was ineffective for failing to put the recorded call into the proper context and it definitely prejudiced Petitioner, because this is what the state relies upon to deny Petitioner relief.

Mr. Bethel has met both prongs of *Strickland* in establishing his ineffective assistance claim in all four (4) sub-propositions: A. See *Rompilla v. Beard,* 545 U.S. 374, 390, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005) Counsels' failures to investigate, interview, or call Williams, Riley and Smith as witnesses satisfies the first prong of *Strickland* and the deficient performance cannot be considered

reasonable. **B.** Defense counsel was ineffective for failing to subjecting the prosecution's case of First Degree Robbery with a Firearm to adversarial testing and conceding that there was a robbery. The concession allowed the jury to agree with counsel that a robbery had occurred and convicted Petitioner of First Degree Robbery with a Firearm and Felony Murder, demonstrating prejudice. **C.** Defense counsel's lack of knowledge of the law and the proper instruction for a deadlocked jury was deficient performance. Allowing the court to give the erroneous instruction that improperly coerced a jury verdict. Due to defense counsel's deficient performance, the judge was allowed to coerce the holdout jurors into giving up there honest convictions concerning the weight of the evidence in order to reach a verdict. This caused Petitioner prejudice. **D.** Petitioner attempted to explain the telephone call while on the witness stand, during the prosecution's cross-examination. However, due to the ineffectiveness of his counsel the defense was not presented. This prejudiced Petitioner by allowing the jury to believe that he put himself at the scene of the crime.

Mr. Bethel presented evidence of innocence so strong that a court cannot have confidence in the outcome of the trial. *Id. Schlup*, 513 U.S. at 316. The new evidence shows '*it is more likely than not* that no reasonable juror would have convicted Petitioner. *Id. McQuiggin*, 133 S. Ct. at 1936.

For the aforementioned reasons of counsel's deficient performance that certainly caused prejudice. Petitioner request that the petition be granted and he be immediately released, because the OCCA's unreasonably applied *Strickland.*

**PROPOSITION III. THE STATE'S EVIDENCE WAS ILLEGALLY INSUFFICIENT TO PROVE ALL THE ELEMENTS OF ROBBERY WITH A FIREARM THE UNDERLYING FELONY AND THEREFORE ALSO INSUFFICIENT TO SUPPORT THE CONVICTION FOR FIRST DEGREE FELONY MURDER IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION**

The state's ruling that the evidence was sufficient to convict Mr. Bethel of the elements of Felony Murder is contrary to clearly established Federal Law resulting in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court.

**a.    INSUFFICIENT EVIDENCE TO SUPPORT ROBBERY WITH A FIREARM**

The Respondent acknowledges that the robbery victim volunteered up his property. *Resp. at 50.* When the victim volunteered his property to the person holding the gun on him. A person that was 5'5" (Tr. 441) a person that could not possibly be Petitioner, who is 6'6" 240 lbs. (Tr. 739). There is no

evidence that anyone in the suspect vehicle knew that the 5'5" person would rob the victim. Specifically, when the robbery was spontaneous; the victim's property volunteered; the victim's property partly left at the scene; and the other person that was shot was not robbed or missing any property. The robber walked up to the victim and stated, "Do I know you?" He did not say, "This is a robbery."

There is a large gap in proving that anyone else involved in the crime planned a robbery. There is no evidence or testimony that these men conspired to rob anyone. See *Rosemond v. United States,* 134 S.Ct. 1240, 188L.Ed.2d 248 (2014), the Supreme Court held, in order to aid and abet, a defendant must have advance knowledge that a crime will be committed. One of the "basics" of aiding and abetting robbery [in addition to taking away is the requisite act of intent] when he intends to facilitate that offense's commission." See also *Williams v. Trammell,* 782 F.3d 1184 (10th Cir. 2015), citing *Rosemond,* "Some mutual state beyond "mere assent" or "acquiescence" is also required. *Id. Wingfeild v. Massie,* 122 F.3d 1329, 1332 (10th Cir. 1997). There is no evidence that the other people with the 5'5" robber had prior knowledge that the Mr. Robert's would volunteer his property causing a robbery.

## b.    INSUFFICIENT EVIDENCE TO SUPPORT FELONY MURDER

The Respondent cites *Parker v. Martin,* 14-6111, 14-617, 589 Fed. Appx. 866, 869 (10th Cir. Oct. 29, 2014) (unpublished). Petitioner cannot research the unpublished case, but in Respondent's pleading citing *Parker v. Martin,* Respondent demonstrates the fatal flaw of his argument. "(considering the fact that Parker had the same physical characteristics as the murderer and was found hiding the murder weapon *in concluding that witness Briggs' testimony at trial* was not false)." (emphasis added). *Id. Resp.* at 51.

In *Parker v. Martin* there was direct testimony from a witness Briggs that Parker committed the murder. In the instant matter there is no evidence, testimony or communication between Petitioner or anyone else that connects Petitioner to committing murder or the underlying felony. Unlike *Parker,* the state failed to discover testimony linking Petitioner to the murder or the underlying felony. See *United States v. Starnes,* 109 F.3d 648, 650 (10th Cir. 1997); and *United States v. Espinosa,* 771 F.2d 1382, 1392 (10th Cir. 1985), although the jury might have inferred Petitioner's presence at the club prior to the murder, there was simply no evidence to link Petitioner to the shooting or activities therein. Mere possession of the weapon or association with a white car is insufficient to support a felony murder conviction.

10

In *Parker,* Mr. Briggs testified that he witnessed Mr. Parker participate in the crime. There is no such testimony against Petitioner, "An inference is reasonable if it 'flows from logical and probabilistic reasoning,' i.e., with experience serving as the touchstone, a jury's inference is permissible where there is a reasonable probability that the conclusion flows from the facts in evidence." *Id.* (internal citations omitted). Or, put slightly differently, "an inference must be more than speculation . . . to be reasonable . . . . A jury will not be allowed to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility. Such [an inference] is infirm because it is not based on the evidence." *United States v. Jones,* 44 F.3d 860, 865 (10th Cir.1995) (citation and quotation marks omitted). We will not uphold a conviction, however, that was obtained by nothing more than "piling inference upon inference," *United States v. Fox,* 902 F.2d 1508, 1513 (10th Cir. 1990), or where the evidence raises no more "than a mere suspicion of guilt," *United States v. Smith,* 133 F.3d 737, 742 (10th Cir. 1997). "the chance of error or speculation increases in proportion to the width of the gap between underlying fact and ultimate conclusion where the gap is bridged by a succession of inferences, each based upon the preceding one." *United States v. Shahane,* 517 F.2d 1173, 1178 (8th Cir. 1975). "'A jury will not be allowed to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility. Such [an inference] is infirm because it is not based on the evidence.'" *Id.* (quoting *Sunward Corp. v. Dun & Bradstreet, Inc.,* 811 F.2d 511, 521 (10th Cir. 1987)).

Respondent infers that since there was more than one gun used in the murder that Petitioner is automatically one of the suspects or "in concert" with the suspects and states "even if it does not affirmatively appear in the record, that the trier of fact resolved any such conflicts..." *Id, Resp.* at 53. Respondent clearly demonstrates the unreasonableness of the states decision in this case, too much inferring. There is a big gap of being caught with a gun and inferring that since there were three (3) people involved in the murder that Petitioner was one of them, with nothing more. The width of the gap between underlying fact and ultimate conclusion of where the gap is bridged by a succession of inferences, each based upon the preceding one is too great. Thus, the jury needed to take *at the least* seven (7) inferential steps based upon the other inferential step to determine Petitioner's guilt by:

Inference #1, Inferring that Petitioner planned the murder/robbery. There is no evidence of this.

Inference #2, Inferring that Petitioner was at the Club Pink. The state relies upon the phone call between Petitioner and his father to put him at Club Pink. There is no evidence of this. See above.

Inference #3,   Inferring that the club Petitioner mentioned in the phone call was Club Pink. There is no evidence of this.

Inference #4,   Inferring that Petitioner left the club then drove back to the club parking lot, when the club was closing. (Testimony was that the suspect vehicle drove into the parking lot and parked behind Mr. Ivory's vehicle.) There is no evidence of Petitioner doing this.

Inference #5,   Inferring that the white car identified at the scene was Petitioner's car. There is no evidence of this.

Inference #6,   Inferring that Petitioner walked up to the victim's car and shot the victim, since there were "multiple individuals" involved, Petitioner did the shooting, as Respondent infers at *Resp.* 53. There is no evidence of this.

Inference #7   Inferring that since Petitioner was in possession of the gun, he committed the crime. There is no evidence of this.

The width of the gap between underlying fact and ultimate conclusion is too large. This is inference upon inference. The evidence presented at trial is that Petitioner was found asleep with a gun in a white car matching the description of a car being at the crime scene. Everything else is inferred and is the piling of inference upon inference, which the Court said it would not uphold a conviction under. *Id. Fox,* 902 F.2d at1513. "[t]he chance of error or speculation increases in proportion to the width of the gap between underlying fact and ultimate conclusion where the gap is bridged by a succession of inferences, each based upon the preceding one." *Shahane,* 517 F.2d at 1178. "[a] conviction must be grounded in more than a mere suspicion of guilt when viewing the evidence in its entirety. *Id. United States v. Summers,* 414 F.3d 1287, 1294 (10th Cir. 2005). "Such [an inference] is infirm because it is not based on the evidence." *United States v. Jones,* 44 F.3d 860, 865 (10th Cir.1995) (citation and quotation marks omitted).

The pieces of the state's evidence does not conclusively establish that Petitioner was the murderer or participated in the underlying felony. There was simply no evidence to link Petitioner to the shooting or an underlying felony therein. The jury essentially was asked to take it on faith that because Petitioner was caught with the gun that he committed or participated in the crime. *Id. Summers,* 414 F.3d at 1296. The numerous factual deficiencies in the state's case should result in the Court's conclusion that the state presented insufficient evidence to sustain Petitioner's conviction.

Whereby, the state made an unreasonable application of *Jackson v. Virginia* in denying Petitioner relief.

**PROPOSITION IV. THE STATE MADE AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW BY DENYING THAT PETITIONER WAS DENIED A FAIR TRIAL BY THE ADMISSION OF IMPROPER LAW ENFORCEMENT OPINION TESTIMONY THAT INVADED THE PROVINCE OF THE JURY IN VIOLATION OF DUE PROCESS OF THE FOURTEENTH AMENDMENT**

The state court erred in permitting Detective White to provide expert opinion testimony as to Petitioner's credibility.

The Respondent centers his response upon the cross-examination of Detective White, this has no bearing on Detective White providing expert opinion testimony as to Petitioner's credibility.

Further Respondent states that Petitioner argues a state rule. This is not accurate, See *Doc. #1.* at 37-42. "The reason the issue of credibility 'belongs to the jury' is that jurors 'are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88, 11 S. Ct. 720, 35 L. Ed. 371 (1891)." *Id. Doc. #1* at 39. The Respondent fails to respond to Petitioner's argument that law enforcement gave opinion testimony that invaded the province of the jury that resulted in an unfair trial for Petitioner and the state's determination that it did not was an unreasonable application of clearly established federal law.

See *United States v. Hill*, 749 F.3d 1250 (10th Cir. 2014), in which the Court reversed a conviction on plain-error review. This case bears a strong resemblance to *Hill*. The Court's reversal in that case was based on the improper admission of expert testimony by a law-enforcement officer regarding the defendant's credibility when interviewed by the officer. In the instant matter the evidence of guilt is much weaker; the allegedly improper opinion testimony was ongoing; and elaborated sentences and extensive analysis duplicating *Hill*.

In *Hill*, Agent Jones stated that he was trained in "special tactics and ways to identify [] deception in statements and truths in statements" and that in his opinion, many of Stanley's answers were not worthy of credence and "[did] not make sense." Jones claimed that Stanley displayed evasive behaviors "common among the criminal element to keep law enforcement at bay" during an interrogation. When asked about Stanley's statement that he would rather die than face charges, Jones testified, "Never in my career have I seen that with an innocent person." And when the prosecutor asked about Stanley's repeated invocations of God in support of his truthfulness, Jones stated, "My training has shown me, and more[ ]so my experience in all these interviews, when people start bringing faith into validating [] their statements, that they're deceptive. Those are deceptive statements."

13

In the instant matter Detective White duplicated *Hill*, he sought to burnish his credentials. He told the jury that he had attended "specialized courses" including "the Reid school, which is a higher-level school of interrogation and interviewing." He stated that the Reid school trained him in "special tactics and ways to identify on deception in statements and truths in statements" and that the training was "sought-after . . . because of the caliber of that training you do get towards that endeavor." Detective White testified that he received information that Petitioner was at Club Pink that night, even though there was no evidence of this in the record (Tr. 810). He told the jury that he did not believe the stories Petitioner told him were consistent with each other and recounted these alleged inconsistencies to the jury (Tr. 817-25).

Detective White was asked to comment on what concerned him about Petitioner's story in the interview. He claimed Petitioner was unable to provide him with details he could corroborate. He said the time frames Petitioner provided raised "red flags" to him (Tr. 824). Detective White was asked to identify other red flags raised during the interview. He recounted a portion of the interview where he had asked Petitioner about the gun and how he obtained it. He gave the jury details about how he did not find Petitioner's explanation plausible (Tr. 825).

Detective White continued to recount the questions he asked Petitioner and his opinion that Petitioner was being evasive and deceptive in his answers (Tr. 825). He gave commentary on the jail telephone recording and was asked to identify red flags (Tr. 842, 843). In the phone call to his mother Petitioner denied being at the club and being involved in the crime. Detective White was concerned that Petitioner "*was not telling the truth*" (Tr. 859).

Detective White's testimony was full of personal opinions requiring no specialized knowledge and merely told the jury what result to reach. This improper testimony denied the jury its fact finding function. Detective White's opinion that Petitioner was not telling the truth was particularly harmful (Tr. 825, 859). White identified as indicators of mendacity Petitioner's attempt to steer the conversation away from questions he did not want to answer and the changing of his story during the course of the interview. The reason the issue of credibility "belongs to the jury" is that jurors "are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men." *Id. Aetna Life Ins. Co. v. Ward*, 140 U.S. at 88. "A jury does not need an expert to inform it that a witness who changes his story may be less than truthful." *Id. Hill*, 749 F.3d at 1262.

White's testimony plainly fell into the category of impermissibility "'encroache[d] upon the jury's vital and exclusive function to make credibility determinations.'" *Id.* (quoting *United States v.*

14

*Charley*, 189 F.3d 1251, 1267 (10ᵗʰ Cir. 1999). After being asked what he drew from the interview "as to [Petitioners] red flags," White stated that Petitioner provided "partial truths" and continually sought to "avoid the question[s]" asked of him. The prosecutor followed with a clearly inappropriate question, inquiring, "In reference to the substance of responses that were provided . . . how does that factor into your observation of whether he's being truthful or not?" White then summarized the story Petitioner provided and stated: "he did not find Petitioner's explanation plausible." (Tr. 825).

This testimony plainly violated Rule 702 and the Court's case law interpreting the rule. Even if Detective White arguably had "specialized knowledge," Fed. R. Evid. 702(a), on the subject of interrogations, his testimony on Petitioner's credibility fails under Rule 702 because it "encroache[d] upon the jury's vital and exclusive function to make credibility determinations, and therefore [did] not assist the trier of fact." *Charley*, 189 F.3d at 1267 (quotation omitted). He simply informed the jury that Petitioner's version of events was unworthy of belief based on his opinion of what is generally "reasonable." The Court cannot excuse his statement as a witness veering into non-responsive commentary; the prosecutor specifically asked about the effect the "substance" of Petitioner's responses had on White's "observation of whether [Petitioner was] being truthful or not."

Moreover, this exchange was not an isolated aside. White's testimony as to Petitioner's credibility continued with White claiming that Petitioner's references to his subjective knowledge "he did not believe the stories Petitioner told him were consistent with each other and recounted these alleged inconsistencies.

Contrary to the state's claim, White testified flatly and repeatedly that, in his expert opinion, Petitioner was dishonest during his interview and telephone calls. Because the Court has clearly held that "credibility [i]s for determination by the jury," and "[a]n expert may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility," *United States v. Samara*, 643 F.2d 701, 705 (10ᵗʰ Cir. 1981) (quotation omitted), the admission of this testimony meets the stringent standard of plain error. See *United States v. Toro-Pelaez*, 107 F.3d 819, 827 (10th Cir. 1997) (holding that "only a particularly egregious and obvious and substantial error" qualifies as plain (quotation omitted)).

Wherefore, due to denial of Petitioner's Fourteenth Amendment right to due process, and the unreasonable application of clearly established federal, Petitioner requests the petition be granted and the Court order his immediate release.

## V.     MOTION FOR EVIDENTIARY HEARING

Petitioner request that the motion Petitioner requested for an Evidentiary Hearing be granted. The state failed to respond to the motion and the motion should be considered conceded. Petitioner has met all the criteria for **28 U.S.C. (e)(2)(B)**, whereby, with the evidence he now presents no reasonable juror would have convicted him. Petitioner has diligently sought to establish the basis of his claim and the state has blocked the additional evidence from being reviewed, even after Petitioner made a colorable showing of ineffective assistance of counsels. "If the prisoner did not fail to develop the factual basis of his claim in State court, § 2254(e)(2) is not applicable and a federal habeas court should proceed to analyze whether an evidentiary hearing is appropriate or required under pre-AEDPA standards." *Cannon v. Mullin*, 383 F.3d 1152, 1176 (10th Cir. 2004) (citations and quotations omitted).

Wherefore, Petitioner request that the motion for an evidentiary hearing be granted.

## CONCLUSION

Petitioner has demonstrated that the state had insufficient evidence to support a conviction. He has further demonstrated that he is factually innocent of the crime in which he was convicted. Specifically, if the Court keeps in mind the sufficiency of the evidence presented at trial compared to the new evidence Petitioner submitted after trial in support of his innocence and ineffective assistance of trial counsel. Wherefore, Petition request the writ be granted.

RESPECTFULLY SUBMITTED

DeAndre Bethel, pro se
#690424
Lawton Correctional Facility
8607 SE Flowermound Rd.
Lawton, OK 73501

## CERTIFICATE OF SERVICE

This is to certify that the original true and correct copy of the foregoing was caused to be mailed this _13th_ day of _September_, 2017, via the LCF-Lawton Prison Legal Mail, postage prepaid to:

United States District Court Clerk
of the Northern District of Oklahoma
333 W. 4th Street
Tulsa, Oklahoma 74103

Deandre Bethell
#6904424
JCF-Lawton
8607 SE Flowermound Rd.
Lawton OK 73501

**LEGAL MAIL**

93.78

17-CV-367-JHP-FHM



UNITED STATES POSTAGE
$ 001.610
PITNEY BOWES
02 1P
0003179975
SEP 14 2017
MAILED FROM ZIP CODE 73501

Post Marked 9/14/17

**RECEIVED**

SEP 18 2017

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

Clerk of the Court
United States District Court for
the Northern District of Oklahoma
333 West 4th Street
Tulsa OK 74103

**LEGAL MAIL**

"This correspondence is from an inmate under the custody of the Oklahoma Department of Corrections WCC/LCF. For specific information about the inmate sending this correspondence, such as; projected release date, photo, etc., refer to our website at www.doc.state.ok.us. Click on the "Offender Information" link then the "Offender Lookup" link or contact WCC/LCF at 580-351-2778. Further, the facility is not responsible for the substance or content. Objectionable material may be returned to the facility head at WCC/LCF."